IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation

Plaintiff,

v.

BRANDON BYRD,

Defendant.

## REPLY BRIEF
## TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Defendant, Brandon Byrd, respectfully submits this Reply Brief to the Plaintiff's Response to Defendant's Motion to Dismiss and shows this Court the following:

I.  Standard on Motion to Dismiss

The Court does not accept every allegation in a plaintiff's complaint as true when considering a motion to dismiss. Rather, the Court must accept allegations of FACT as true, so long as they are not controverted by affidavit. In its response, the plaintiff restates many allegations in its complaint as support for its position, but to a large degree, the plaintiff restates its subjective conclusions, which the Court need not, and should not, accept as true. See ***Aulson v. Blanchard, 83 F.3d 1, 3*** (1st Cir. 1996) (citations omitted) wherein it was noted that

> "We hasten to add, however, that this deferential standard does not force an appellate court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like

Page 1 of  7

need not be credited."

Specifically, plaintiff' has used terms such as "attack," "sabotage," "undermine," and "disruption" in its complaint. None of the phrases or terms allege any facts, but merely represent the plaintiff's opinions and conclusions which are not relevant to the Court's review of the instant motion.

II. Plaintiff's Unintentional Allegations

The plaintiff does not dispute that Netquote's website is properly before the Court. (See Plaintiff's Response Page 15 FN2).

Plaintiff states in its motion that in support of its claims that it relies upon the veracity of the insurance leads that were submitted by the plaintiff. While the plaintiff alleges that it relies upon the veracity of the generated leads, and no doubt its sales force puffs on that issue, Netquote quietly talks out of the other side of its mouth by disclosing on its website that

(1) consumers who complete the lead submission form will submit inaccurate information[1]

(2) there are good leads and bad leads[2]

(3) even good leads don't equal a sale.[3]

---

[1] From http://insurance-lead.netquote.com/insurance-agent-lead.aspx
Now many people who log in actually punch in inaccurate information like in the field of name they just put in 'ABC' or for phone number may be '1231234'. Attached hereto as Exhibit "A"

[2] See title of article at http://insurance-lead.netquote.com/insurance-agent-lead.aspx
Attached hereto as Exhibit "A"

[3] From http://insurance-lead.netquote.com/exclusive-insurance-lead.aspx
Do keep in mind that an exclusive insurance lead will not necessarily turn into a client. There will be rejections. However good your policy may be and however hard you tried, some people would refuse to do business with you.

In addition, the plaintiff refutes the defendant's assertion that Netquote passes the information to its customers. Yet again, Netquote itself is the source of this statement. See http://insurance-lead.netquote.com/online-insurance-leads.aspx wherein they describe how internet generated leads are handled. (See Exhibit "C")

*Once he has filled up the form the next thing that happens is the online insurance lead generation service passes on the information to interested agents for them to follow up.*

It is axiomatic that "a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." See ***Centers v. Centennial Mortg., Inc.***, 398 F.3d 930, 933 (7th Cir. 2005) (internal citations omitted).

III.  Fraud Claim

Without rehashing the previous arguments asserted by the defendant, the plaintiff has not addressed the fundamental obstacle that stands in the way of its fraud claim. Its own website acts as an admission that

(1)     Netquote sells leads and not insurance

(2)     Netquote never sees or hears the alleged misrepresentations.  (This is also tacitly admitted by the plaintiff when it asserts that it "filters" and "monitors" submissions through computer systems.)

(3)     Netquote in fact immediately passes on the lead electronically (defendant's counsel is not able to "attach" the movie located at http://www.impactmovie.com/netquote/ which is accessed at http://insurance-lead.netquote.com/

(4)     Netquote knows that it gets bad leads

(5)     Netquote's customers are told that they are not guaranteed a sale.

The plaintiff has not cited any authority that would support a claim for fraud based on automated filtering of the submissions made by the defendant, and cannot therefore, as a matter of law, justifiably rely upon those representations that it never sees or hears.

Fundamentally, "a defendant may not have the right to rely on a misrepresentation when 'he could have learned the truth by reasonable inquiry' " **M.D.C./Wood, Inc. v. Mortimer**, 866 P.2d 1380, 1382 (Colo. 1994). In this case, in light of the contents and admissions on the Netquote website, there is no ability to make a reasonable inquiry, which precludes the plaintiff from even alleging justifiable reliance. As demonstrated from the web pages cited above, Netquote is well aware that it receives leads that contain inaccurate information. In light of these circumstances, where a mere phone call to the number contained in the false submission would have revealed that the submission was not legitimate, as a matter of law, the plaintiff cannot show justifiable reliance, because reasonable inquiry would have revealed the submission as false.

Consistent with the above, the plaintiff has not alleged with particularity as required pursuant to FRCP § 8, any facts that would demonstrate that it justifiably relied upon the false submissions. Finally, plaintiff's allegation that it suffered damages to its reputation as a result of its agents receiving the leads submitted by defendant Byrd are inconsistent with the allegations that the agents know they are buying leads, and only leads, which may be bad or good and still not sell. As a consequence, the claim for fraud fails to state a claim upon which relief is available.

IV.  Personal Jurisdiction Authorities

Plaintiff cites various cases in support of its position, some of which are addressed below, and others of which are duplicative of the principles set forth in the cases discussed herein.

Plaintiff cites **Wein Air Alaska, Inc.v. Brandt**, 195 F.3d 208 (5th Cir. 1999).  This case is easily distinguishable factually, and legally in that no communications were sent to Netquote.  Byrd completed an online form that was submitted and automatically transmitted to independent insurance agents outside of Colorado.  To the extent this constitutes a communication, the plaintiff's exhibit to its complaint reveals that the submissions were aimed at zip codes outside of Colorado and not at Netquote.

In **Verizon Online Servs. V. Ralsky**, 203 F.Supp.2d 601 (E.D. VA 2002) the underlying factual allegations were that the plaintiff complained that its computer network itself was harmed by the defendant's conduct, where he sent millions of e-mail transmissions through the plaintiff's network.  While the plaintiff alleges that it has expended resources to prevent further submissions from the defendant, that is entirely distinguishable from an allegation that Netquote's operations (rather than its equipment) harmed by the receipt of the 394 documented submissions.

Plaintiff also relies upon **Intercon, Inc. v. Bell Atl. Internet Solutions, Inc**. 205 F.3d 1244 (10th Cir. 2000).  In **Intercon**, the Court of Appeals in weighed the first three factors stated in Burger King, and found that it was significant that the defendant was "large interstate company accustomed to conducting business and litigation in multiple states." and that the "plaintiff is a small local company with limited resources, whose involvement in the underlying

events has been totally involuntary." The defendant at issue in this motion is defendant Byrd, not a corporation, but an individual alleged to have been paid $300 per week.

V.  Due Process Factors

The plaintiff's allegations are that Byrd earns $300 per week for the work. There are no allegations in the plaintiff's complaint that Byrd is being indemnified by Mostchoice, and any assertion or inference along those lines are barred.

The plaintiff apparently is seeking to create a rule that mere alleged tortious conduct within the scope of employment is sufficient to ignore the due process analysis to which defendant Byrd is entitled. However, there is no authority that would support such a proposition. In considering ***Intercon***, where the factors were a small plaintiff versus large defendant, the corollary to such a factual circumstance should be equally dispositive here, where there is a large company in the forum suing an individual of limited means who resides away from the forum.

VI.  Miscellaneous

Plaintiff notes at the beginning of its "argument" section that Mostchoice itself has not objected to personal jurisdiction, and that the other alleged theories of recovery have not been subjected to a motion to dismiss. The plaintiff then attempts to rely upon these assertions, as apparent support for its other theories of recovery. While this assertion is not relevant to any issue before the Court, a response is nonetheless compelled. Simply stated, Mostchoice's response to the plaintiff's complaint is not due until June 15, and will likely contain motions to dismiss where legally supportable. Otherwise, theories of recovery that state a claim, where the allegations are accepted as true, do not merit a motion to dismiss, which would waste the Court's

time and resources. That does not mean those same theories will survive summary judgment, or are in any way legitimate.

## Conclusion

Based upon the foregoing, and the defendant's previously filed motion, defendant Byrd respectfully requests that this Court grant his motion to dismiss for lack of personal jurisdiction, or in the alternative, failure to state a claim for fraud.

Dated this 6th day of June, 2007.

>  s/ Ryan Isenberg
> Ryan L. Isenberg, Esq.
> Isenberg & Hewitt, P.C.
> 7000 Peachtree Dunwoody Road
> Building 15, Suite 100
> Atlanta, Georgia 30328
> Telephone: 770-351-4400
> Facsimile: 770-828-0100 (Fax)
> Email: ryan@isenberg-hewitt.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2007, I served the foregoingMostchoice.com, Inc.'s Corporate Disclosure Statement by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Daniel D. Williams
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
cbeall@faegre.com

>  s/ Ryan Isenberg