IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge David M. Ebel

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

        Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and
64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

        Defendants.

---

## ORDER ON MOTION TO DISMISS

---

Pending before the Court is a motion filed on May 4, 2007, by Defendants
Brandon Byrd and MostChoice.Com, Inc., to dismiss this case pursuant to Fed. R. Civ.
P. 12(b)(2) and 12(b)(6). (Dkt. # 16.) The motion requests that this Court dismiss all
claims against Defendant Byrd based on a lack of personal jurisdiction, and the fraud
claim against both Defendants for failure to state a claim upon which relief can be
granted. NetQuote responded to Defendants' motion on May 23, 2007 (Dkt. # 23), and
Defendants replied on June 6, 2007 (Dkt. # 26). Therefore, the motion is ripe for
determination. For the reasons that follow, this Court DENIES the motion.

## I. BACKGROUND

Plaintiff NetQuote, Inc., is a Colorado-based company that sells insurance
referrals. NetQuote operates a web site that offers individuals a way to submit

1

Dockets.Justia.com

information about themselves and their insurance needs, and NetQuote sells that information to its clients – insurance brokers and agents – who then contact the individuals with an insurance quote.  NetQuote has brought suit against Defendants MostChoice, a Georgia-based competitor that also collects and sells insurance referrals through a web site, and Brandon Byrd, an individual of Georgia who was employed by MostChoice at the time of the events in question.  NetQuote alleges that MostChoice hired Byrd for the purpose of pretending to be individuals interested in insurance quotes and submitting hundreds of false inquiries to NetQuote's web site, knowing that NetQuote's clients would receive bad information that could not lead to an insurance purchase.  NetQuote alleges that its clients complained about the inaccurate information and some terminated their business with NetQuote.  NetQuote also claims that, as a result of the false submissions, MostChoice promoted itself to potential clients as having superior accuracy and reliability in insurance referrals compared to NetQuote.

NetQuote's amended complaint asserts claims as follows: fraud (against all Defendants); tortious interference with business relations (against all Defendants); common law unfair competition (against MostChoice); false advertising under the Lanham Act (against MostChoice); and deceptive trade practices under the Colorado Consumer Protection Act (against MostChoice).  (Dkt. # 13.)

We continue to have jurisdiction over this matter on the basis of complete diversity, 28 U.S.C. § 1332, because the Plaintiff is a citizen of Colorado and both Defendants are citizens of Georgia, and the amount in controversy is greater than $75,000.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Byrd argues that this court lacks personal jurisdiction over him because (1) his sole connection with the forum state was through the internet, (2) he did not know NetQuote was in Colorado when he submitted the false information, (3) he has never been to Colorado, (4) his contact with NetQuote was limited to informational submissions and automated responses from NetQuote's web site, (5) it would be a burden on him to litigate in the forum state.  (Def.'s Mot. to Dismiss at 1-2, 5, 7.)

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citation omitted). "Colorado's long arm statute," Colo. Rev. Stat. § 13-1-124, "is coextensive with constitutional limitations imposed by the due process clause. Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant." Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (quotation omitted).

The plaintiff has the burden of proving that this court has personal jurisdiction over the defendants before it. Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted).  "In the preliminary stages of litigation, however, the plaintiff's burden is light." Id. (citation omitted). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor." Id. (quotations, citations omitted.)

3

## A. Requirements for Specific Jurisdiction

The requirements for specific personal jurisdiction[1] are by now well-known:

> The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant "so long as there exist minimum contacts between the defendant and the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) (quotation omitted). . . . [A] court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) (quotations and citations omitted).

Intercon, Inc., 205 F.3d at 1247. The "minimum contacts" inquiry is met if the defendant "should reasonably anticipate being haled into court" in the forum state. OMI Holdings v. Royal Ins. Co. of Can., 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting World-Wide Volkswagen, 444 U.S. at 297). The "purposeful availment" standard looks to whether "the plaintiff's claim arises out of or results from 'actions by the defendant himself that create a substantial connection with the forum state.'" Id. (quoting Asahi Metal Indus. Co. v. Superior Court of Calif., 480 U.S. 102, 109 (1987)). "Consistent with our established practice, we evaluate not just the quantity of [a defendant's] contacts with [the forum state], but also the quality of those contacts." Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d 1270, 1278 n.5 (10th Cir. 2005).

Even if we determine that the plaintiff has demonstrated the defendant "purposefully directed its activities" at residents of forum state, we also apply a separate reasonableness inquiry in ascertaining personal jurisdiction. "[W]here a defendant

---

[1] Because Defendant Byrd has stated that he has no business contacts with Colorado outside the conduct alleged here, this Court does not have general personal jurisdiction over him. See Intercon, Inc., 205 F.3d at 1247.

4

seeks to defeat jurisdiction, it must present a compelling case that the presence of

some other considerations would render jurisdiction unreasonable." Pro Axess, Inc.,

428 F.3d at 1280 (quoting Burger King, 471 U.S. at 477, alterations omitted).  This is an

"exacting standard."  Id.

> Even if defendant's actions created sufficient minimum contacts, we must still consider whether the exercise of personal jurisdiction over defendant would offend traditional notions of "fair play and substantial justice." Burger King Corp., 471 U.S. at 476 (quotation omitted). This inquiry requires a determination of whether the district court's exercise of personal jurisdiction over defendant is reasonable in light of the circumstances surrounding the case.  See id. at 477-78.
>
> * * *
>
> We consider the following factors in deciding whether the exercise of jurisdiction is reasonable: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  See Burger King Corp., 471 U.S. at 477.

Intercon, Inc., 205 F.3d at 1247, 1249.

## B.  Analysis

In this case, NetQuote alleges that Byrd "transmitted at least 394 false

submissions requesting life insurance quotations to NetQuote's web site" and an

"untold" number of false submissions to NetQuote's other web site at

www.localinsurance.com.  (Dkt. #13.)  (Compl. at ¶¶ 33-34 and Exh. D.)

The "nature and quality," Burger King, 471 U.S. at 476 (quotation omitted), of

hundreds of deliberate and false submissions over a period of time, is hardly "random,

fortuitous, or attenuated contact," id. at 475, with NetQuote.   Here, Byrd's alleged

"conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there."  World-Wide Volkswagen Corp., 444 U.S. at 297

(citations omitted).  NetQuote's web site stated that NetQuote was based in Colorado.
(Pl.'s Resp. at 3.)  Even if Byrd had not observed as much from NetQuote's web site, it
is clear that he "purposefully directed his activities at <u>residents</u> of the forum, and the
litigation results from alleged injuries that arise out of or relate to those activities."
<u>Intercon, Inc.</u>, 205 F.3d at 1247 (quotation omitted, emphasis added).  NetQuote easily
satisfies its burden of proving that Byrd's conduct meets the "minimum contacts"
standard for personal jurisdiction in Colorado.

In addition, this Court's exercise of jurisdiction over Byrd comports with "fair play
and substantial justice."  <u>OMI Holdings</u>, 149 F.3d at 1095.  Of the five factors this Court
considers in whether jurisdiction is reasonable, Byrd complains only about the burden
on him to litigate in the forum state.  (Def.'s Mot. to Dismiss at 7.)  But because Byrd's
alleged volume of contacts with the forum state is significant, the "burden" factor weighs
less heavily in our due process analysis.  <u>See</u> <u>OMI Holdings</u>, 149 F.3d at 1091-92
(referring to the "reasonableness prong of the due process inquiry" as "a sliding scale"
depending on the strength of the showing of "minimal contacts" (quotation omitted)).
Moreover, NetQuote points out that Byrd is represented by the same counsel as
MostChoice, which should reduce the burden on Byrd to defend himself here.  (Pl.'s
Resp. at 12.)  Because NetQuote is based in Colorado and has brought claims under
Colorado law, two other factors support jurisdiction in Colorado: "the forum state's
interest in resolving the dispute," and "the plaintiff's interest in receiving convenient and
effective relief."  <u>Intercon</u>, 205 F.3d at 1249.  The remaining two reasonableness factors
pertaining to interstate resolution of disputes are neutral, since witnesses will be in both
Georgia and Colorado, and the dispute presents no "substantive social policies" shared

6

by the states.

Therefore, this Court concludes that it is fair and reasonable to exercise personal jurisdiction over Defendant Byrd.

## III.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants Byrd and MostChoice move to dismiss NetQuote's claim of fraud for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  Defendants argue that NetQuote has not pled its claim of fraud with particularity as required by Fed. R. Civ. P. 9(b).  They also point to the fact that NetQuote's computer system forwards information submitted on its web site directly to insurance brokers without any person at NetQuote actually reviewing or acting on the information.  Defendants argue, therefore, that NetQuote cannot plead that NetQuote has relied on any false information.  (Def.'s Mot. to Dismiss at 9.)

Fed. R. Civ. P. 12(b)(6) permits a defendant to move for dismissal due to a plaintiff's "failure to state a claim upon which relief can be granted."  We should dismiss under Rule 12(b)(6) "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief."  McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002) (quotation omitted).  We "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  Id. (quotation omitted).

Plaintiffs have an additional burden with respect to pleading fraud.  "Rule 9(b) provides, 'In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.'"  Koch v. Koch Indus., 203

7

F.3d 1202, 1236 (10th Cir. 2000) (quoting Fed. R. Civ. P. 9(b)).  The Tenth Circuit

"requires a complaint alleging fraud to set forth the time, place and contents of the false

representation, the identity of the party making the false statements and the

consequences thereof."  Id. (quotation omitted); see also United States ex rel. Sikkenga

v. Regence Bluecross Blueshield, 472 F.3d 702, 726-727 (10th Cir. 2006) ("[a]t a

minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and

how of the alleged fraud." (quotation omitted)).

### A.  Required Elements for Pleading Fraud

The elements of fraud in Colorado are that "the defendant made a false

representation of a material fact, knowing that representation to be false; that the

person to whom the representation was made was ignorant of the falsity; that the

representation was made with the intention that it be acted upon; and, that the reliance

resulted in damage to the plaintiff."  Coors v. Security Life of Denver Ins. Co., 112 P.3d

59, 66 (Colo. 2005).[2]  The Defendants cite to no current controlling authority that

Colorado requires a plaintiff to plead "justifiable" reliance in stating a claim for fraud.

However, some earlier cases have stated that a plaintiff must establish that he justifiably

relied on the misrepresentation.  See, e.g., M.D.C./Wood, Inc. v. Mortimer, 866 P.2d

---

[2] Coors appears to be the most recent binding precedent setting forth Colorado's formulation of the elements of civil fraud.  However, Colorado cases have been inconsistent as to whether the plaintiff needs to allege "reliance."  Many cases have not expressly required such a showing.  See, e.g., Brody v. Bock, 897 P.2d 769, 775-76 (Colo. 1995) ("To establish a prima facie case of fraud, a plaintiff must present evidence that the defendant made a false representation of a material fact; that the party making the representation knew it was false; that the party to whom the representation was made did not know of the falsity; that the representation was made with the intent that it be acted upon; and that the representation resulted in damages.").  Indeed, the formulation of the elements of fraud in Coors, which requires a plaintiff to establish reliance, cites to Brody, which does not actually refer to reliance.

1380, 1382 (Colo. 1994). This Court does not decide at this time what exactly NetQuote must prove to establish fraud, but assumes for the purposes of disposing of the Rule 12(b)(6) motion that Colorado requires NetQuote to meet the more stringent standard of establishing justifiable reliance.

### B. Analysis

Defendants contend that NetQuote has not pled with particularity, and therefore has not stated a claim of fraud under Fed. R. Civ. P. 9(b) and 12(b)(6). (Def.'s Mot. to Dismiss at 9.) However, this Court concludes that NetQuote has sufficiently pled its claim of fraud.

NetQuote alleged in its Complaint that Byrd "falsely indicated that certain persons identified in Byrd's submissions were interested in receiving price quotes from NetQuote's insurance brokers and agents." (Dkt. # 13.) (Compl. ¶ 32.) NetQuote claimed that Byrd was paid commissions by MostChoice for the purpose of submitting false information, and that "[o]n various occasions, Byrd spent several hours each day making submissions for life insurance quotations using the personal information of third parties from all across the United States." (Id. ¶ 33.) NetQuote stated that it had a "lack of knowledge" of the falsity of the submissions, and that "unbeknownst" to NetQuote, the information was "either fictitious or related to real persons who had no interest" in receiving an insurance referral. (Id. ¶¶ 39-40.) NetQuote states that its business "depends on the reliability and accuracy of the information" it receives from its web site and forwards to insurance brokers. (Id. ¶ 16.) NetQuote has alleged that the misrepresentations were made with the intent that NetQuote act on them and that the actions would "sabotage" NetQuote's business. (Id. ¶¶ 35-38.) Finally, NetQuote

9

claims it was damaged by these actions, due to lost business with insurance brokers and injury to NetQuote's reputation.  (Id. ¶¶ 42-44.)  Therefore, NetQuote has pled that Defendants knowingly made false representations of material facts, NetQuote was ignorant of their falsity, Defendants intended that NetQuote act on the misrepresentations, NetQuote did rely upon and act on the misrepresentations, and as a result, NetQuote suffered damage.  Therefore, NetQuote has pled all of the required elements of fraud.  See Coors, 112 P.3d at 66.

Moreover, NetQuote has pled fraud with particularity by attaching to the Complaint an itemized chart of hundreds of contacts that Byrd made with www.netquote.com.  (Compl. Exh. D.)  The chart lists each submission by date and time and IP address of the computer making the submission, and then for each allegedly false representation, lists product type requested, and the email address, first and last name, street address, city, state, zip code and phone number for each of the individuals that Byrd misrepresented as being interested in an insurance quote.  The allegations in the Complaint combined with this chart of submissions easily satisfies the Tenth Circuit requirement that the plaintiff's complaint "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  Koch, 203 F.3d at 1236.

Defendants also argue that NetQuote has not alleged justifiable reliance on the submissions, and that it cannot do so given that a computer automatically forwards the information on to insurance agents.  (Def.'s Mot. to Dismiss at 9-10; Def's Reply at 4.)  Even if Colorado law requires justifiable reliance as an element of fraud, NetQuote's complaint satisfies such a rule.  NetQuote explained its business model in its Complaint,

10

specifically that it derives its revenues from insurance agents and brokers, and that

"NetQuote's business depends on the reliability and accuracy of the information it

provides to its base of insurance agents and brokers who contract with NetQuote for

sales leads." (Compl. ¶¶ 14-16.)  NetQuote states that:

> As a result, and at significant expense to NetQuote, NetQuote has developed
> proprietary filtering and monitoring systems that ensure the accuracy and
> quality of the information NetQuote collects through its websites, and thus the
> information that it passes along to its brokers and agents. These systems
> review each and every submission made to NetQuote through its websites.
> These systems can be evaded only through intentional effort by a person
> with direct knowledge of the lead-generation industry and the criteria used by
> the industry to filter false submissions.

(Compl. ¶ 17, emphasis added.)

The parties have not referred the Court to any Colorado authority addressing

whether a computer can "rely" on representations.  But Defendants provide no authority

for the theory that a corporate party can rely on representations only if human eyes first

review the information.  Defendants also make no cogent argument as to why a

corporation is not entitled to rely on information provided to it through the use of

computer systems.  At least one court in another jurisdiction has found that a company's

computer system can act as the company's agent in relying on information received.

See Thrifty-Tel, Inc. v. Bezenek, 54 Cal. Rptr. 2d 468, 474 (Cal. Ct. App. 1996).

More importantly, the question pending is on a Rule 12(b)(6) motion to dismiss,

so the Court need not examine how rigorous NetQuote's computer system is in

discerning the quality of the information submitted to it.  Assuming all of NetQuote's

allegations are true and construing them in the light most favorable to NetQuote,

McDonald, 287 F.3d at 997, NetQuote set up a sophisticated computer system that is

designed to process correctly submissions that are reasonably accurate.  NetQuote

alleges that it relied on the validity of the purported consumer inquiries through a filter

capable of "ensur[ing] the accuracy and quality of the information" as long as any false

submissions are not due to an "intentional effort" to deceive.

On such factual allegations, NetQuote's pleadings demonstrate that it justifiably

relied on the quality of the information that the computer system deemed accurate

enough to forward to NetQuote's clients.  NetQuote has stated a claim of fraud.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' "Motion to Dismiss" (Dkt. # 16) filed May 7, 2007, is

DENIED.

DATED at Denver, Colorado, this ___13th___ day of June, 2007.

> BY THE COURT:
>
> *s/ David M. Ebel*
> _____
> David M. Ebel
> United States Circuit Judge