IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

**NETQUOTE INC**, a Colorado corporation,

    Plaintiff,

v.

**BRANDON BYRD**, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

**MOSTCHOICE.COM, Inc.**, a Georgia corporation

    Defendants.

**DEFENDANT MOSTCHOICE.COM'S MOTION TO DISMISS
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Comes now, Defendant Mostchoice.com, Inc. and herein files this Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted and shows this Court the following:

**Argument and Citation to Authority**

I.  Standard

"When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), [the Court] must determine whether the allegations of the complaint, if true, are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). [The Court] must accept all well-pleaded allegations of the complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will

not suffice to prevent a motion to dismiss." ***Fernandez-Montes v. Allied Pilots Association***, 987 F.2d 278, 284 (5th Cir. 1993); see also ***Ruiz v. McDonnell***, 299 F.3d 1173, 1181 (10th Cir. 2002). . . Thus, Rule 12(b)(6) requires dismissal if, taking all well-pleaded facts as true and construing them in the light most favorable to plaintiff, it is clear that it can prove no set of facts entitling it to relief." See ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); ***Rocky Mountain Helicopters v. Bell Helicopters Textron***, 24 F.3d 125, 128 (10th Cir. 1994) as cited in ***Perkins v. Johnson***, 2007 U.S. Dist. LEXIS 10799, 1-2 (D. Colo. 2007)

II. Fraud

The Court has denied defendant Byrd's Motion to Dismiss the Plaintiff's Fraud Claim, and Byrd is the agent alleged to have committed the tort of fraud on behalf of defendant Mostchoice. In order to preserve the issue, as a matter of judicial economy, Mostchoice Mostchoice adopts and incorporates herein by reference the arguments set forth in Defendant Byrd's Motion to Dismiss the Plaintiff's Claim for Fraud, except as discussed below.

In the order denying defendant Byrd's motion to dismiss the plaintiff's fraud claim, the Court found that Byrd failed to assert a "cogent argument" as to why the plaintiff should not be allowed to rely on a computer system, and cited to ***Thrifty-Tel, Inc. v. Bezenek***, 46 Cal. App. 4th 1559 (Cal. Ct. App. 1996), wherein a California court treated the plaintiff's computer as an agent and applied the concept of "indirect reliance."

In ***Behunin v. Dow Chem. Co.***, 650 F. Supp. 1387, 1391 (D. Colo. 1986) it was noted that "one may not claim to have relied upon misrepresentations contained in a report when he was not aware of the existence of the report at the time he suffered injury." ***Strong v. Retail Credit Company***, 38 Colo.App. 125, 552 P.2d 1025, 1028 (1976). While ***Strong*** was decided

about twenty years before the advent of the modern internet, it reveals that Colorado has thus far not allowed a plaintiff to bring a claim for fraud where the recipient of the misrepresentation never sees it.

Colorado has not adopted the theory of indirect reliance, and "a federal court [should be] reluctant to expand the law of a state in a manner that, while perhaps logical, is not clearly in line with the state's existing thinking on the subject." ***Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.***, 185 F.3d 732, 750 (7th Cir. 1999).

II.  Unfair Competition

Plaintiff alleges in its complaint that all of the conduct alleged in its complaint constitutes unfair competition under common law.  However, a plaintiff seeking to recover based upon common law unfair competition can only state a claim for relief if it is alleged that the public is likely to be deceived by the conduct.  See ***Swart v. Mid-Continent Refrigerator Co.***, 145 Colo. 600, 604 (Colo. 1961) ("Unfair competition is a question of fact and no inflexible rule can be stated as to what conduct will constitute unfair competition. <u>The universal test is whether the public is likely to be deceived</u>.").

While the claims as alleged, when read and taken as true for purposes of this motion, may lead the Court to believe that defendant Mostchoice actually engaged in unfair business practices, there is no legal authority that would support a claim for unfair competition unrelated to claims relating to deceiving the public.  Indeed, the only claims that could be reasonably construed as alleging claims for unfair competition that is recognized by law is the claim that Mostchoice asserted on its website that its leads are better than Netquote's leads.

However,

"at common law, [a] competitor is conditionally privileged to make an unduly favorable comparison of the quality of his own land, chattels or other things, with the quality of the competing land, chattels or other things of a rival competitor, although he does not believe that his own things are superior to those of the rival competitor."

Restatement (Second) of Torts § 649 (1977). *Full Draw Prods. v. Easton Sports*, 85 F. Supp. 2d 1001, 1006 (D. Colo. 2000) . This assumes that the "offending" competitor's things are actually inferior, which Mostchoice would obviously dispute in this case.

IV.  False Advertising

Plaintiff claims that defendant Mostchoice has engaged in False Advertising under the Lanham Act.  The basis for this allegation is referred to in the plaintiff's complaint (See Exhibit "C[1]" and Paragraph 21 of Plaintiff's 3rd Amended Complaint).

As the Court can see, the page is "titled" BETTER THAN NETQUOTE LEADS.  This is a subjective expression of opinion and is not actionable.  See *Presidio Enterprises, Inc. v. Warner Bros. Distributing Corp.*, 784 F.2d 674 (5th Cir. 1986); *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) ("Subjective claims about products, which cannot be proven either true or false, are not actionable; they are mere "puffing.") Ironically, the plaintiff in its agent pages, contains a frequently ask question relating to why Netquote Insurance is Better? (See Exhibit "B")

IV.  Deceptive Trade Practices

To prove a private cause of action under the CCPA, a plaintiff must show:

---

[1] Attached hereto as Exhibit "A" for the Court's convenience.

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

*(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property*;

(4) that the plaintiff suffered injury in fact to a legally protected interest; and

(5) that the challenged practice caused the plaintiff's injury.

**Hall v. Walter**, 969 P.2d 224, 235 (Colo. 1998) (emphasis added).

The **Hall Court**, in discussing the third prong above relating to the public interest, expressed the following:

> "While the public interest component is longstanding, we now recognize that a more precise reading of the statute's function requires an impact on the public as consumers of the defendant's "goods, services, or property." 6-1-105(a). This understanding is consistent with the statute's title. See **People v. Zapotocky**, 869 P.2d 1234, 1239 (Colo. 1994) (considering legislation's title in determining legislative intent). It also comports with our consistent characterization of the CCPA as addressing consumer concerns. See **Western Food Plan, Inc. v. District Court**, 198 Colo. 251, 256, 598 P.2d 1038, 1041 (1979) (noting legislative purpose to prevent or remedy consumer fraud); Dunbar, 177 Colo. at 113, 493 P.2d at 668 (finding that state may enjoin deceptive practices "that have a tendency or capacity to attract customers" as a valid exercise of police power). Therefore, the challenged practice must significantly impact the public as actual or

potential consumers of the defendant's goods, services, or property. *Hall* at 234.

In applying *Hall*, the Colorado Supreme Court later, and perhaps more succinctly, stated that the CCPA

"was enacted to regulate commercial activities and practices which, 'because of their nature, may prove injurious, offensive, or dangerous to the public.'" ***Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.***, 62 P.3d 142, 146 (Colo. 2003) *(quoting People ex rel. Dunbar v. Gym of America, Inc.*, 177 Colo. 97, 112, 493 P.2d 660, 667 (1972)) (finding no significant public impact in franchise dispute that affected only 3 of 550 dealers of polyurethane truckbed and industrial linings). The Act "deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." *Id*.

In ***Rhino Linings***, the Court held there are

"at least three factors to consider in determining whether a challenged practice impacts the public under the CCPA: (1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted the other consumers or has the significant potential to do so in the future. The CCPA can not be used to remedy a purely private wrong.

***Crowe v. Tull***, 126 P.3d 196, 208 (Colo. 2006) (internal citations omitted).

In the case at bar, ordinary consumers do not purchase goods or services from either of

the parties, and the submissions from consumers generate leads, which are then sold to insurance agents. (See 3rd Amended Complaint Paragraphs 13-14). It is clear then that the number of consumers affected by the "challenged practice" is zero. Further, the plaintiff's claims for damages arise out of the internal costs alleged to have resulted from attempting to block the submissions, and Netquote's other claims for damages arise out of the alleged consequences the false leads had on the agents themselves. All of this suggests that the public has no interest in the outcome of this case, that the wrongs alleged are purely private, and that there is no claim as a matter of law under the deceptive trade practices act.

V.  Tortitious Interference

While defendant Mostchoice does not believe that plaintiff can prevail as a matter of law on its claim for tortious interference, Mostchoice does not believe that the claim as pleaded in the plaintiff's complaint is subject to dismissal under the standard applied in FRCP § 12(b)(6).

**Conclusion**

For the foregoing reasons, defendant Mostchoice.com, Inc. respectfully requests that this Court grant this Motion and Dismiss the Plaintiff's Claims for Fraud, Unfair Competition, and Deceptive Trade Practices.

Dated this 13th day of June, 2007.

                                                  **s/ Ryan Isenberg**
Ryan L. Isenberg, Esq.
Isenberg & Hewitt, P.C.
7000 Peachtree Dunwoody Road
Building 15, Suite 100
Atlanta, Georgia 30328
Telephone: 770-351-4400
Facsimile: 770-828-0100 (Fax)
Email: ryan@isenberg-hewitt.com

### CERTIFICATE OF SERVICE

      I hereby certify that on this 13th day of June, 2007, I served the foregoingMostchoice.com, Inc.'s Corporate Disclosure Statement by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Daniel D. Williams
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
cbeall@faegre.com

                                                         **s/ Ryan Isenberg**