# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

     Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

     Defendants.

---

## NETQUOTE'S RESPONSE TO DEFENDANT MOSTCHOICE.COM'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

---

Plaintiff NetQuote, Inc. ("NetQuote"), through undersigned counsel, responds to

Defendant MostChoice.com, Inc.'s Motion To Dismiss for Failure To State a Claim Upon Which

Relief can be Granted ("Motion" or "Mot.") as follows:

## BACKGROUND

NetQuote filed its Third Amended Complaint on April 16, 2007. Defendants Brandon

Byrd and MostChoice moved to dismiss on May 4, 2007 for lack of personal jurisdiction over

Byrd and for failure to state a claim for fraud. *See* Dkt. # 16.[1] The Court issued an opinion and

order denying the Motion to Dismiss on June 13, 2007. *See* Dkt. # 31. That ruling sets forth the

factual background of this matter, and Plaintiff does not repeat that factual background here.

---

[1] MostChoice now contends that the May 4, 2007 Motion to Dismiss was submitted only on Byrd's behalf.

On June 15, 2007, MostChoice filed its Answer to Plaintiff's complaint. *See* Dkt. # 33. Simultaneously with filing its Answer, MostChoice purported to file a Motion To Dismiss [for] Failure To State a Claim Upon Which Relief Can Be Granted. *See* Dkt. # 32. In its Motion, MostChoice asserts that this Court has no personal jurisdiction over it and it renews its challenge to the fraud claim. *See* Mot. 1-3. Further, MostChoice argues that NetQuote fails to state a claim for unfair competition, false advertising, and deceptive trade practices. *See* Mot. 3-7.

**ARGUMENT**

**I.    The Legal Standard Applicable To Defendant's Motion.**

MostChoice purports to move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), but its attempt to do so is improper for two reasons. First, Rule 12(b)(6) motions are an alternative to answering the complaint, but MostChoice filed its Answer simultaneously with the filing of its motion. *See* Fed. R. Civ. P. 12(b) (providing defendants the option of asserting defenses by motion **instead** of including them in a responsive pleading). Second, MostChoice has already moved to dismiss under Fed. R. Civ. P. 12(b)(6) once, and the Court denied that motion. *See* Motion to Dismiss (Dkt. # 16 at 1) (motion brought by "Defendants"); Order Denying Motion (Dkt. # 31) (prior motion brought by "Defendants Brandon Byrd and MostChoice.Com, Inc.").

When an Answer has been filed, a motion to dismiss for failure to state a claim should be treated as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1140 (10th Cir. 1005). The legal standard when considering a Rule 12(c) motion for judgment on the pleadings is the same

standard as that governing motions to dismiss for failure to state a claim. *See Ramirez v. Dep't of Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000).

"[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Cottrell, Ltd. v. Biotrol Int'l*, 191, F.3d 1248, 1251 (10th Cir. 1999) (internal quotations and citations omitted). When determining the sufficiency of a complaint, the Court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002) (quotations omitted). It may dismiss only if the well-pleaded allegations, if true, would not entitle the plaintiff to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (U.S. 2007).

## II.    The Exercise of Personal Jurisdiction Over MostChoice Is Proper.

MostChoice contest personal jurisdiction in the first sentence of its Motion, but it declines to provide argument to support its position. *See* Mot. 1. MostChoice admits that Byrd's acts or omissions were committed as an agent or employee of MostChoice and were within the scope of Byrd's agency or employment. *See* Answer ¶ 8 (Dkt. # 33). Therefore, for the same reasons that this Court has jurisdiction over Byrd, it has jurisdiction over MostChoice. *See* Order on Mot. 5-7.

Further, MostChoice has continuous and systematic contacts with Colorado such that the exercise of general jurisdiction is proper and comports with traditional notions of fair play and substantial justice. *See OMI Holdings v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998). MostChoice conducts business throughout the United States and specifically advertises that its customers may receive leads from "all states." *See* Leads - Frequently Asked Questions

(attached hereto as Exhibit A).   MostChoice's homepage includes a testimonial from "Cathy P." of Denver, Colorado.  *See* MostChoice Homepage (attached hereto as Exhibit B).   Its interactive website invites users from Colorado to enter personal information into the system which is then transmitted to agents.  Thus, MostChoice actually and deliberately uses its website to conduct commercial transactions with residents of Colorado.  *See Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  These continuous and systematic contacts allow this Court properly to exercise general personal jurisdiction over MostChoice.

**III.    The Complaint States a Claim for Fraud.**

MostChoice moves for a second time to dismiss NetQuote's fraud count for failure to state a claim, having lost that same argument in its prior motion to dismiss.  When ruling on MostChoice's first motion to dismiss, this Court found that NetQuote sufficiently pleaded its claim for fraud.  *See* Order on Mot. 9-10.  MostChoice's additional argument in its present motion does not change the analysis.

MostChoice cites two cases in an attempt to convince this Court to reconsider its prior ruling.  *See* Mot. 2.  But the cases it cites are irrelevant.  Both of them hold that, when pleading fraud, a party may not rely on representations made within a report **if the claimant was not aware of the representation and did not actually take any action based on the representation**.  *Behunin v. Dow Chem. Co.*, 650 F. Supp. 1387, 1391 (D. Colo. 1986), *aff'd in part, rev'd in part sub nom. by Chase v. Dow Chemical Co.*, 875 F.2d 278 (10th Cir. 1989) (denying a motion to dismiss for failure to state a claim for fraud, noting that a misrepresentation contained in a report cannot be the basis for reliance when a claimant is not aware of the report); *Strong v. Retail Credit Co.*, 552 P.2d 1025, 1028 (Colo. App. 1976) (holding that a third party

may not base a fraud claim on a confidential report when the third party was not aware of the existence of the report).

That is not the situation here. NetQuote has pleaded that it took action based on the false information provided, "review[ing] each and every submission made to NetQuote" through its "filtering and monitoring systems," and then selling the information to insurance brokers and agents. *See* Compl. ¶¶ 14, 17. The issue in this case is whether the fact that NetQuote received and relied on submissions through an automated process, rather than by having an employee review the false submissions with "human eyes," prohibits a fraud claim. Order on Mot. 11 ("Defendants make no cogent argument as to why a corporation is not entitled to rely on information provided to it through the use of computer systems."). Neither *Behunin* nor *Strong* discuss that separate and distinct question – they concern the situation where the statement did not reach the plaintiff in any manner whatsoever prior to the injury alleged. MostChoice presents no authority that should cause this Court to reconsider its prior ruling that NetQuote's fraud count states a claim under Colorado law.[2]

## IV. The Complaint States a Claim for Common Law Unfair Competition.

MostChoice misconstrues the breadth of the tort of unfair competition. It argues that the tort applies only in the trademark context. *See* Mot. 3 (citing *Swart v. Mid-Continent Refrigerator Co.*, 360 P.2d 440, 442 (Colo. 1961) (referring to unfair competition in the trademark context as marked by name confusion)). But the tort is not so narrow.

NetQuote does not assert a trademark name confusion claim against MostChoice. Rather, NetQuote asserts a claim for common law unfair competition based on MostChoice's deliberate

---

[2]  Further, it remains unclear whether reliance must be shown in Colorado for a fraud claim to lie. *See* Order on Mot. 8-9.

actions to damage NetQuote's business reputation and good will. *See* Compl. ¶¶ 74-80.

MostChoice did so by sending false leads to NetQuote with the willful and malicious intent to

evade NetQuote's filtering system and to sabotage NetQuote's reputation as a reliable provider

of insurance leads. *See* Compl. ¶¶ 16, 17. Such conduct caused NetQuote to sell useless leads to

its customers, thereby damaging NetQuote's business reputation and goodwill in the industry by

casting a cloud over the reliability of NetQuote's services. *See* Compl. ¶¶ 42-45, 53. Such

conduct falls within the scope of the tort of unfair competition. *See Colorado Nat'l Co. v.*

*Colorado Nat'l Bank of Denver*, 36 P.2d 454 (Colo. 1934) (tort of common law unfair

competition reaches beyond name confusion); *Am. Television & Commc'ns Corp. v. Manning*,

651 P.2d 440 (Colo. App. 1982) (same).

**V.  The Complaint States a Claim for False Advertising.**

MostChoice claims that its "**Better Than NetQuote.com Leads**" campaign is a

subjective expression of opinion and is not actionable. *See* Mot. 4. In its attempt to paint the

"**Better Than Netquote.com Leads**" advertisement as mere puffery, MostChoice fails to

mention the statements it lists on its website that describe why it asserts its leads are better than

NetQuote's. MostChoice states that its leads are "customer requested. All leads have asked for a

quote." *See* Compl. Ex. C (Dkt. # 13). Further, MostChoice boasts that it "prides itself on the

fact that its only leads are from people who visit its site." *Id.*

Puffery encompasses sales talk such as praise in general terms, without specific content

or reference to facts. *See Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674,

683 (5th Cir. 1986). A statement concerning the superiority or quality of a product goes beyond

mere puffing if it purports to have some objective or factual basis, or if the defendant's product is

6

claimed to be superior for specific objective reasons. *Full Draw Prods. v. Easton Sports, Inc.*, 85 F. Supp. 2d 1001, 1006 (D. Colo. 2000).

MostChoice's statements are not a prediction, a hope, or a mere opinion. Rather, MostChoice makes false factual statements with specific comparisons between NetQuote and MostChoice. These statements are designed to exploit the exact problem that MostChoice has created for NetQuote by submitting false leads to it. *See* Compl. ¶¶ 21-22, 37-38 & Ex. C. They imply that NetQuote's leads are not customer requested, and that the leads are not generated from visits to the site. The claims and misrepresentations made by MostChoice deceive existing and potential customers by contending that NetQuote sells an inferior product based in large part on bad leads.

MostChoice argues that the claim should be dismissed because its website statement was subjective. But the fact that MostChoice has not provided its website readers with a detailed explanation of its false claim to have superior leads does not bar NetQuotes' claim. *See Cottrell*, 191 F.3d at1252 ("Section 43(a) of the Lanham Act encompasses more than literal falsehoods, because otherwise, clever use of innuendo, indirect intimations, and ambiguous suggestions could shield the advertisement from scrutiny precisely when protection against such sophisticated deception is most needed." (citation and internal quotation omitted)). MostChoice's claim to have better leads, and its explanation as to why its leads are superior, are false statements of fact prohibited by the Lanham Act.

## VI. The Complaint States a Claim Under the Colorado Consumer Protection Act.

MostChoice argues that NetQuote's Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et. seq.* ("CCPA"), claim fails because MostChoice's deceptive conduct had no significant

7

impact on the public. Mot. 6-7. Its argument hinges on the premise that "ordinary consumers do not purchase goods or services from either of the parties." Mot. 6-7 (MostChoice's conduct affects "zero" consumers). But that premise is incorrect.

The CCPA must be construed liberally in light of the broad purpose and scope of the Act. *See Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998). In determining whether conduct falls within the purview of the CCPA, a court should ordinarily assume that the CCPA does apply because of the strong and sweeping remedial purposes of the Act. *Crowe v. Tull*, 126 P.3d 196, 202 (Colo. 2006) (citation omitted). The CCPA was enacted to protect both vulnerable consumers and the consuming public as a whole. *Id.* at 209. "[I]t is in the public interest to invoke the state's police power to prevent the use of methods that have a **tendency or capacity to attract customers** through deceptive trade practices." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) (internal quotations and citations omitted) (emphasis in original).

The CCPA protects actual and potential consumers from deceptive trade practices. *Hall*, 969 P.2d at 231. However, a plaintiff need not be a consumer to bring an action under the CCPA. A non-consumer may bring a CCPA action if the harm alleged is caused by a deceptive trade practice harming consumers and the plaintiff is damaged by the practice. *Id.* at 238.

Courts consider the following factors to determine whether a challenged practice impacts the public for purposes of the CCPA: (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future. *Crowe*, 126 P.3d at

8

208 (citing *Rhino*, 62 P.3d at 146).

MostChoice's actions have significantly impacted a broad group of insurance agents and brokers, who are members of the public and consumers of the information NetQuote sells. MostChoice actively solicited these insurance agent and broker customers based on false claims about the superiority of its service as compared to NetQuote's. Compl. ¶¶ 21-22. As a result of MostChoice's conduct, some agents have become distrustful of NetQuote's leads and have terminated their business with NetQuote. Compl. ¶¶ 43, 44.

Moreover, consumers' bargaining power has been damaged by MostChoice's deceptive trade practices. The insurance buying public seeks out internet insurance quotations through NetQuote's website as a means to get competitive insurance bids from several different insurance agents interested in their business. Compl. ¶ 13. By connecting insurance consumers with multiple agents, NetQuote's service promotes competition and assists consumers in finding the best insurance coverage at the best price.

MostChoice's campaign undermines this consumer service by narrowing the market. As part of its sabotage campaign, MostChoice targeted specific regions and discrete subsets of NetQuote's brokers and agents. Compl. ¶¶ 34-37. Its actions caused some of NetQuote's brokers and agents to stop using NetQuote's services. *Id.* ¶ 44. After these brokers and agents terminated, when consumers submitted requests to NetQuote, they were provided with a smaller pool of insurance agents and brokers competing for their business, which reduced the amount of competition for the insurance customers' business. Thus MostChoice's conduct has indeed harmed the insurance-buying public.

Finally, MostChoice argues that the case does not fall within the CCPA because the

9

damages alleged arise from NetQuote's efforts to stop MostChoice's sabotage campaign and from lost revenue from insurance agents and brokers that stopped using NetQuote's services. Mot. 7.  Its attempt to limit the scope of the CCPA in this manner has been rejected by the Colorado Supreme Court as "inoperable."  *Hall*, 969 P.2d at 236.  Damages under the CCPA are not limited to recovery based on the harm suffered by the consumer.  *See id.*  Because NetQuote suffered concrete injury based on MostChoice's deceptive trade practices, NetQuote's CCPA count states a claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

Dated: July 16, 2007                                  Respectfully submitted,


                                                      *s/Daniel D. Williams*
                                                      David W. Stark
                                                      FAEGRE & BENSON LLP
                                                      3200 Wells Fargo Center
                                                      1700 Lincoln Street
                                                      Denver, Colorado 80203
                                                      Tel:  (303) 607-3500 / Fax:  (303) 607-3600
                                                      E-mail:  dstark@faegre.com

                                                      Daniel D. Williams
                                                      Teresa Taylor Tate
                                                      FAEGRE & BENSON LLP
                                                      1900 Fifteenth Street
                                                      Boulder, Colorado 80302
                                                      Tel: (303) 447-7700 / Fax: (303) 447-7800
                                                      E-mail:  dwilliams@faegre.com

                                                      **Attorneys for Plaintiff NetQuote Inc.**

## CERTIFICATE OF SERVICE

I certify that on this 16th day of July, 2007, I electronically filed the foregoing **NETQUOTE'S RESPONSE TO DEFENDANT MOSTCHOICE.COM'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Ryan L. Isenberg, Esq.
ISENBERG & HEWITT, P.C.
7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
Atlanta, GA 30328
ryan@isenberg-hewitt.com

*s/Cecil A. Kennedy*