IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

**NETQUOTE INC**, a Colorado corporation,

    Plaintiff,

v.

**BRANDON BYRD**, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

**MOSTCHOICE.COM, Inc.**, a Georgia corporation

    Defendants.

---

**DEFENDANT MOSTCHOICE.COM'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM**

---

Comes now, Defendant Mostchoice.com, Inc. and herein files this Response to Plaintiff's Motion to Dismiss Counterclaims for Failure to State a Claim Upon Which Relief Can be Granted and shows this Court the following:

**Introduction**

Netquote represents in its motion that the Court's previous ruling on a Motion to Dismiss[1] sets forth the factual background for this case. While some of the specific allegations of Netquote's complaint have been admitted, the factual construction of Netquote's pleadings

---

[1] This issue will be addressed further in the Reply Brief to Netquote's Response to Mostchoice's Motion to Dismiss, but the original Motion to Dismiss filed in this action, as drafted by the undersigned was only as to Brandon Byrd. Mostchoice local counsel was going to make some stylistic changes, and assumed incorrectly that the motion was not properly styled. It wasn't until I reviewed the Court's order that I became aware that it was filed on behalf of both Byrd and Mostchoice.

Dockets.Justia.com

does not set the factual background in this case. Rather, it demonstrates all of the facts that Netquote alleges to be true, which for purposes of the motion to dismiss, the Court was required to accept as "factual.

At this stage, with the Court having received no evidence, it is irresponsible to even suggest that the factual findings in order denying a motion under FRCP § 12 have any resemblance to facts that may be established, rather than those that are merely alleged. Mostchoice vehemently denies that it intended to cause any harm to the plaintiff (much less maximize it), that Byrd intended to "sabotage" Netquote, that its conduct was wrongful, or that Netquote was damaged by any alleged harm. However, none of these facts are relevant to the analysis of the instant motion because the only facts at issue are those alleged by Mostchoice.

**Argument and Citation to Authority**

I.  Click Fraud Claim

Mostchoice alleges that an employee of the Netquote engaged in "click fraud" (See Mostchoice Counterclaim Paragraph 7).  Click fraud has been defined for purposes of the complaint ((See Mostchoice Counterclaim Paragraph 6) as follow:

> For purposes of this complaint, and without limiting its definition, "click fraud" occurs in pay per click online advertising when a person imitates a legitimate user of a web browser clicking on an ad, for the purpose of generating a charge per click without having actual interest in the target of the ad's link.
>
> (http://en.wikipedia.org/wiki/Click_fraud)

(See Mostchoice Counterclaim Paragraph 6).

Netquote analyzes these claims as common law fraud claims and then has the temerity to

assert that "at a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." (See Netquote Motion to Dismiss Brief Page 3).

Netquote filed the instant action as a state court complaint against an unknown individual styled Netquote versus John Doe.

> 5. Defendant John Doe No. 1 is an internet user who true identity is currently not yet known but who has accessed the internet through the internet service provider Juno Online Services, Inc., with whom he has used the Internet Protocol address 64.136.27.226. At such time as NetQuote learns the true identity of John Doe No. 1, his name will be substituted herein.

Netquote alleged only that the fraud consisted of individuals who "allegedly" wanted to receive price quotations from them, and that it began in October, 2006.

> 22. Beginning sometime in October 2006, the defendants have submitted false and misleading information to NetQuote through NetQuote's website at www.netquote.com concerning persons, both real and fictitious, who allegedly wish to receive price quotations from NetQuote's insurance affiliates on various forms of insurance, but who in reality do not wish to receive any such contact from NetQuote or NetQuote's insurance affiliates.

(See Dkt. # 2)

Mostchoice is not able to identify the fraudster upon the filing of the complaint, just as Netquote wasn't. Mostchoice can only allege that the fraud began in October, 2004, just as Nequote was only able to alleged that fraud began in October, 2006. Likewise, Mostchoice is only able to allege generally that someone who worked for Netquote was imitating a legitimate user, which is no different than Netquote's allegation that John Doe was acting like a legitimate user seeking an insurance quote.

Before Netquote's lawsuit was served on any party that could assert that the pleadings failed to state a claim for relief,[2] it used the subpoena power of the state court to obtain the

---

[2] Colo. RPC 9(b) is identical to FRCP 9(b)

identity of the alleged fraudster (See Dkt. #3 - 26th of 27 pages). It then obtained ex parte permission from the state court to amend its complaint (not once, but twice) obtained an order allowing for discovery and out of state depositions, and only then was able to obtain the information that was finally contained in its third amended complaint.[3]

Dismissal of Mostchoice's nearly identical claims would lead to an absurd and patently unjust result where Netquote was allowed to utilize discovery and proceed because of a lack of opposition, and amend its complaint three times before it entered the form as analyzed by this Court. The Court, in its Order denying Mostchoice's Motion to Dismiss relied upon the inclusion of an exhibit that identified the time, submission date and IP address of Byrd's submissions. This exhibit was not included until Netquote filed its Third Amended Complaint, after a Rule 12 motion was filed. As a matter of equity, even if the Court believes the Mostchoice allegations as pleaded are deficient, Netquote's motion should be held in abeyance so that Mostchoice is afforded the same opportunities to use discovery to identify the individual(s), dates and times of the alleged conduct. Otherwise, it becomes nothing more than a game to file an action against a John Doe and serve subpoenas to obtain information that can be used to bootstrap an otherwise deficient complaint into one that passes muster under FRCP § 12.

However, Mostchoice's claims need not be analyzed under a theory of common law fraud. Mostchoice asserts that the allegations if true would support the same "broad theory of

---

[3]Netquote initially served Melissa Buschacher, ex-wife of Brandon Byrd with its complaint. At this time, Ms. Buschacher and Byrd were, and remain, in a child custody dispute, and Mostchoice believes that substantial portions of Netquote's complaint, as amended are the result of false information supplied by Ms. Buschacher.

unfair competition[4]" referred to by Netquote in its Response to Mostchoice's Motion to Dismiss (Dkt. #51 Page 5-6).

II.  Restatement § 870

In addition, Mostchoice asserts that the facts, if true, would give rise to a claim

"intentional" or "prima facie" tort as described in . . .Section 870 of the Restatement (Second) of Torts, which provides that "one who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances." Restatement (Second) of Torts § 870. Section 870 also states that such liability "may be imposed although the actor's conduct does not come within a traditional category of tort liability." *Id.* Thus, a claim for intentional tort, if recognized, would likely be appropriate where there is no other category of tort liability  within which a plaintiff's claim would fit.  **Marshall v. Fenstermacher**, 388 F. Supp. 2d 536, 558 (D. Pa. 2005).

Neither Colorado, nor Georgia has adopted Section § 870 of the Restatement (Second), but Colorado has adopted eleven (11) other sections of the Restatement according to a search of cases decided by the District of Colorado.[5]  Georgia Courts rarely expressly adopt restatement

---

[4]Mostchoice continues to contend, as will be discussed in its forthcoming reply brief that the unfair competition issue is always an issue of deception or confusion.  See ***Adolph Coors Co. v. A. Genderson & Sons, Inc.***, 486 F. Supp. 131, 136 (D. Colo. 1980) ("The most important consideration is whether defendant's conduct will confuse or deceive the public.")

[5]They are, in no particular order: 427, 552, 402A, 400, 324A, 46, 908, 766B-768, and 595.

sections, but have relied on as authority, or adopted at least nineteen (19).[6]

In ***Thrifty-Tel, Inc. v. Bezenek***, 46 Cal. App. 4th 1559, 1567 (1996), cited by the Court in support of the proposition that representations can be relied upon by a computer, the plaintiff alleged a "cyber-fraud cause of action" that attempted to apply a "hoary common law theory to computer-age facts." Mostchoice alleges it is the victim of "click fraud,[7]" a type of cyber-fraud that should support a cause of action in the same manner as that alleged by Netquote.[8]

III.  Relaxed Pleading Standard

Notwithstanding the above, to the extent the Court applies FRCP § 9(b) to Mostchoice's claim for click fraud, Mostchoice suggests that the pleading requirements should be relaxed because the "relevant facts are within the opposing party's knowledge as a result of the fraud being perpetrated on a third party." ***Dominicus Americana Bohio v. Gulf & Western Industries***,

---

[6] They are, in particular order: 908, 530, 409, 8, 324, 490, 402, 766, 466, 311, 895, 580, 768, 533, 623, 623, 565, 552, and 473.

[7] A Lexis search of the term "click fraud" in federal courts yields the following three cases, none of which appear to be claims made by an advertiser against a competitor.

Feldman v. Google, Inc., CIVIL ACTION NO. 06-2540 , UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2007 U.S. Dist. LEXIS 22996, March 28, 2007, Decided , March 29, 2007, Filed

In re Miva, Inc., Sec. Litig., Case No. 2:05-cv-201-FtM-29DNF , UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, FORT MYERS DIVISION, 2007 U.S. Dist. LEXIS 18313; Fed. Sec. L. Rep. (CCH) P94,174, March 15, 2007, Decided

Payday Advance Plus, Inc. v. Findwhat.com, Inc., 06 Civ. 1923 (JGK) , UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, 478 F. Supp. 2d 496; 2007 U.S. Dist. LEXIS 17369, March 11, 2007, Decided , March 12, 2007, Filed

[8] Mostchoice does not abandon its position that Netquote can neither rely, nor justifiably rely upon Byrd;s sbumissions, but what is good for the goose . . .

473 F. Supp. 680, 693 (S.D. N.Y. 1979).

In this case, Mostchoice is left in a catch 22 because it may not be able to plead with particularity factual allegations regarding the individual(s) involved without discovery because that information is within the control of Netquote.

Finally, in **Huntsman-Christensen Corp. v. Mountain Fuel Supply Co.,** 1986 U.S. Dist. LEXIS 17337 (D. Utah 1986) it was stated that in these circumstances, "dismissal without prejudice and with leave to amend, or provisional denial of a motion to strike with leave to renew is warranted until completion of discovery."

IV.  Mostchoice Seeks Leave to Amend

Mostchoice has concurrently filed a motion for leave to amend its complaint to include additional specific allegations, and additional theories of recover. Mostchoice only asks that the Court consider Netquote's use of the court system, the time it was allowed to obtain additional evidence to state its claim, and its previous willingness to consider that the conduct is actionable, even if it doesn't fit neatly into a traditional cause of action.

V.  Mostchoice Requests That Any Dismissal Be Without Prejudice

To the extent the Court finds that Mostchoice is not able to state a claim upon which relief can be granted as to any claim asserted, it has certainly articulated facts that, if assumed to be true demonstrate egregious conduct on the part of Netquote, and requests that any dismissal be made without prejudice to re-filing upon discovery of additional facts.

## Conclusion

For the reasons stated above, Mostchoice respectfully requests that the Court (1) deny Netquote's Motion to Dismiss (2) Grant Leave to Amend, or (3) that any dismissal be granted

without prejudice, and for such other and further relief deemed necessary and just by this Court.

Dated this 23rd day of July, 2007.

                                                                  **s/ Ryan Isenberg**
                                                                   Ryan L. Isenberg, Esq.
                                                                   Isenberg & Hewitt, P.C.
                                                                   7000 Peachtree Dunwoody Road
                                                                   Building 15, Suite 100
                                                                   Atlanta, Georgia 30328
                                                                   Telephone: 770-351-4400
                                                                   Facsimile: 770-828-0100 (Fax)
                                                                   Email: ryan@isenberg-hewitt.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 23rd day of July, 2007, I served the foregoing Response to Netquote's Motion to Dismiss Mostchoice's Counterclaims by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Daniel D. Williams
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
cbeall@faegre.com

                                                                       **s/ Ryan Isenberg**