IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

**NETQUOTE INC, a Colorado corporation,**

    Plaintiff,

v.

**BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and**

**MOSTCHOICE.COM, Inc., a Georgia corporation**

    Defendants.

---

### RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

---

COMES NOW, Mostchoice.com, Inc., and files this its Response to Plaintiff's Motion for Protective Order and shows this Court the following:

### Introduction

The parties are indeed competitors in the internet based lead generation business. Plaintiff's claims arise of fictitious submissions made to Netquote (directly or though its affiliate localinsurance.com) that purported to request insurance quotes. Netquote claims that it has been damaged because its customers received false submissions from Brandon Byrd. As an example, a submission made to Netquote for auto insurance in Colorado Springs yielded the information in Exhibit "A."

In its initial disclosures, plaintiff estimated its damages at a staggering $2,000,000.00. According to plaintiff's website,[1] it receives 7,000 requests for insurance quotes per day. Netquote has identified its highest lead price at $15.00 per lead. Hypothetically, if every request was a $15.00 lead, then for a period of nine (9) months (from October through July) Netquote's gross revenue would have been roughly $28.7 Million on 1.9+ Million leads generated. Mostchoice has produced a copy of its submissions which number approximately 2,000.[2] This represents 1/10 of 1 percent (0.10%) of the leads generated. Yet, even assuming Netquote generates 70% profit from its revenue, its claimed damages would represent 10% of its net profit. The suggestion that such a small event caused Netquote to lose 10.00% of its net profits is highly suspicious, and forms the basis for Mostchoice seeking the information sought in its discovery.[3]

I.  Mostchoice General Concerns

Netquote claims that it is surprising that Mostchoice would not agree to a general protective order in this case because most cases involving any complexity have stipulated protective orders in place. However, Mostchoice does not object to the entry of a protective order that does not shift the burden to demonstrate good cause so long as it only prohibits the

---

[1][plaintiff has previously acknowledged that its website is incorporated into its pleadings] http://www.impactmovie.com/netquote (movie accessed through http://insurance-lead.netquote.com/)

[2]The information was produced in a format that has not been translated for Mostchoice's counsel as to the number of actual submissions.

[3]It is fully acknowledge that these calculations are unlikely to resemble Netquote's financial structure or business model, as all leads are not likely to have been the most expensive, and leads are likely sold to more than one agent, however, as no financial information has been provided, I am forced to play a chicken and egg game and make estimations so the point can be demonstrated, which is that the number of submissions that were made by Mostchoice were extremely small compared to Netquote's gross lead receipts.

dissemination to third parties of the information obtained in discovery. In *Gillard v. Boulder Valley Sch. Dist. Re-2*, 196 F.R.D. 382, 387 (D. Colo. 2000) cited by Netquote, it is said that a "protective order, of course, prevents only the disclosure of information obtained solely as the result of court sanctioned discovery."

Netquote does not seek to merely prohibit disclosure of information to third parties. Rather, as discussed in more detail below, Netquote seeks the ability to litigate its case without having to produce information in its control that would prove facts contrary to its allegations, and seeks to produce information that may otherwise be discovered outside the context of this litigation, or the Byrd submissions, by Mostchoice and then subsequently seek to hold Mostchoice liable for "using" information obtained in discovery.

II.  Computer systems and internal procedures

Netquote's claim that it has developed highly sophisticated computer systems to detect false submissions is at best an exaggeration, not supported by the declaration of Craig Shine. First, it doesn't take an astrophysicist to figure out generally that the lead comes in, is parsed, and information such as the area code and zip code are bounced against a database to determine that the two are consistent. Perhaps Netquote has something more sophisticated than this, but the odds are against it considering the relatively small amount of information contained in the lead request form, and the ease by which Brandon Byrd was able to evade the system.[4] Further, the only thing that Netquote appears to have done to "filter" defendant Byrd's false submissions was to identify the IP address of his computer and create a firewall rule blocking that particular IP

---

[4]Byrd has been described by Neqtuote as a hardly employed part-time yoga instructor. (See Third Amended Complaint Pargraph 23).

address. While my five year old may not have been able to do that without help, this is hardly a highly sophisticated network protection worthy of a protective order, and Netquote hasn't submitted anything to this Court, other than bald conclusions by its accounting vice president, that the system is worth of protection.

While Mostchoice has zero interest in this high tech security that Netquote believes it has, Netquote asserted in its complaint that it has these systems, and will be required to prove at trial what these systems are and how they work since they rely upon these allegations to support elements of reliance, and justifiable reliance (Dkt. #31 Page 10-11). This is not an issue where there will be pre-trial production of material that is unlikely to be used at trial, but is something Netquote will have to establish at trial in factual detail in order to make out its prima facie case.

III. Customer List

In ***Colorado Supply Co. v. Stewart***, 797 P.2d 1303, 1306 (1990) the Colorado Court of Appeals affirmed a finding by the trial court that a customer list was not a trade secret because, among other reasons "the names on the list can be obtained fairly easily, by reading through the business section of the telephone directory and by asking prospective customers from whom they purchase certain products; and (3) there was no exclusivity as to customers, in that customers purchased the products from more than one vendor."

Netquote claims trade secret status for the identity of its customers. However, its customers are insurance agents and carriers. Insurance agents are licensed by each state, and license databases are easily obtainable. Mostchoice has attached hereto as Exhibit "B," web page screen prints from the states of California, Colorado, and Texas. In addition, insurance agents advertise in the yellow pages (See Exhibit "C"). Finally, the whole point of Byrd's submissions

was to obtain the identify of the recipients (Netquote's customer) whose identities were disclosed in the responsive e-mail, which demonstrates that the identity of its agents is certainly not a trade secret because the names are disclosed to the general public (See Exhibit "A"). Many consumers of internet generated leads purchase leads from multiple sources as they can, which would include lead buyers who prior to October, 2006 would have purchased leads from both Netquote and Mostchoice (See Declaration of Michael Levy).

Once again, Mostchoice has no interest in disseminating any private information to third parties, or the public at large. Rather Mostchoice is interested in protecting its ability to compete, and defend itself against Netquote's claim that its reputation suffered as a result of Byrd's submissions, and that any damage suffered was a result of these submissions. Netquote would have this Court only require it to identify what would amount to a handful of disgruntled customers and claim that they left because of Byrd's submissions. However, Mostchoice is entitled to demonstrate that Netquote regularly sells leads that are credited, that its reputation among its customers is not based on 0.10% of its leads for a 9 month period, and that there are other reasons why Netquote attracts and loses customers.

IV.  Financial Information

Netquote claims in its motion that Mostchoice seeks *"revenue projections, price forecasts, pricing options, and evaluations of proposed structures and analysis."* NOWHERE in Mostchoice's discovery is any of this particular information sought.[5] Mostchoice only seeks general financial data that would allow it to analyze trends in Netquote's earnings, which

---

[5] A copy of Mostchoice's Interrogatories and Request for Documents is filed herewith this Response as Exhibits "D" and "E."

Mostchoice contends will disprove Netquote's outrageous claim that 2,000 leads out of 1,900,000 caused such a substantial amount of harm when no individual agent would have received more than a few at most.

V.  Declaration of Craig Shine

As the Court is well aware, "good cause requires a showing that the disclosure will work a clearly defined and serious injury. **Zenith Radio Corp. v. Matsushita Elec. Indus.** Co., 529 F.Supp. 866 (E.D. Pa. 1981) as quoted in **Root v. Watkins**, 2006 U.S. Dist. LEXIS 78175 (D. Colo. 2006).   According to Netquote's website,[6] Mr. Shine is a Vice President that oversees accounting and finance, and has only been with Netquote since 2006.  He has not stated that he has personal knowledge or familiarity with the computer systems, how they were developed or work, or when they were even first implemented.  The fact is that his declaration contains nothing more than legal conclusions that support the generalization that Netquote would prefer not to have its "private" information made public, rather than specific facts that would support a finding of good cause.

VI.  Proposed Order

Mostchoice has three objections to the proposed order. First, courts can articulate a good faith requirement 'till blue in the face.  The reality is that when parties (especially those represented by large law firms)[7] are given free reign to designate information as confidential, they inevitably seek to claim everything not already in the public domain, including the location of the bathroom, is confidential.  As all litigation counsel are constantly reminded that the courts

---

[6] See Exhibit "F"

[7] I cast no aspersions, and make no representations, as to counsel in this case.

do not want to be involved in discovery disputes, the issuance of a blanket protective order effectively, if not technically, shifts the burden of demonstrating good cause to the receiving party because it must first challenge the designation, rather than defend against an asserted one, and must do so knowing that the court would prefer to not be involved.

Second, the amount of time allowed in the proposed order to object to a designation made by opposing counsel is arbitrary and likely insufficient. This is because the Court does not know the amount of information that will be produced, and while Netquote is represented by a large firm that has the resources to stick a lawyer or paralegal in a room with boxes of documents, or a computer in this case, Mostchoice's counsel will have to review produced information personally, and should not be held to such an arbitrary standard.

Third, Mostchoice objects to the designation of information as being "attorney eyes only." In this case, there is little doubt that Netquote is going to attempt to produce as little information as the Court requires, and will attempt to prevent Mostchoice was being able to use that information in its defense.

As acknowledged by Netquote in its motion, internet based insurance lead generation is a rather small industry[8] and there are no independent experts available to review the relevant data and could review the information and understand how it relates to the claims or defenses in this case. In fact, only the principals and employees of the respective parties would sufficiently understand and be capable of interpreting the data to be of assistance to counsel in preparing this

---

[8] See Netquote Motion Page 5 second to last sentence before Section B.

case for trial.[9]  All of the documents and information sought is necessary for the defense of this action.

As noted above, Mostchoice does not deny that it is likely that Netquote has information that should be protected from dissemination to third parties, but in light of the discovery sought, there is no reason that it can't be handled on an individual basis.

Should the Court be inclined to enter a blanket protective order, Mostchoice requests that it be substantially similar to the order entered in **135 Randomly Selected Class Claimants v. Denman Inv. Corp.** 05-CV-702-MSK-MEH, with two exceptions.  First, that the receiving party should only have the obligation to notify the producing party of an objection to designation, which would then require the producing party to seek an order continuing confidentiality, and second the prohibitions on use cannot apply to information that could be obtained from sources outside of litigation, or which the receiving party already has in its possession.

## Conclusion

Prohibiting Mostchoice from obtaining the information it seeks would not only create a handicap, but would constitute a deprivation of due process in that it will not be able to adequately demonstrate the damages claimed by Netquote are nothing more than its own self-inflicted financial woes resulting from its own poor judgment, its business model, and its internal practices.

[Signature on next page]

---

[9] I have been the primary legal counsel to Mostchoice over the past five years.  I have spent well over a thousand hours representing Mostchoice in both transactional issues and litigation. Despite having spent a significant amount of time working with the principals, without substantial guidance from them, I would not be able to interpret or analyze the data produced.

Dated this 27th day of July, 2007.

                              **s/ Ryan Isenberg**
                              Ryan L. Isenberg, Esq.
                              Isenberg & Hewitt, P.C.
                              7000 Peachtree Dunwoody Road
                              Building 15, Suite 100
                              Atlanta, Georgia 30328
                              Telephone: 770-351-4400
                              Facsimile: 770-828-0100 (Fax)
                              Email: ryan@isenberg-hewitt.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 27th day of July, 2007, I served the foregoing Response to Netquote's Motion for Protective Order by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Daniel D. Williams
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
cbeall@faegre.com

                              **s/ Ryan Isenberg**