IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 07-cv-00630-DME-MEH**

**NETQUOTE INC, a Colorado corporation,**

    Plaintiff,

**v.**

**BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and**

**MOSTCHOICE.COM, Inc., a Georgia corporation**

    Defendants.

---

**DEFENDANT MOSTCHOICE.COM'S PROPOSED
SECOND AMENDED COUNTERCLAIM**

---

Comes now, Defendant Mostchoice.com, Inc. and herein files this its Amended Counterclaim and shows this Court the following:

**Jurisdictional Allegations**

1. Plaintiff is a Colorado Corporation, with its principal place of business in Colorado.

2. Defendant Mostchoice is a Georgia Corporation, with its only office in the State of Georgia.

3. Defendant Mostchoice seeks damages in excess of $75,000.00.

4. This case was filed in the Colorado State courts and removed to this Court.

5. By virtue of the above, jurisdiction and venue are proper.

6. This Court has subject matter jurisdiction over the claims set forth below pursuant to 28

U.S.C. § 1332.

7. To the extent that Mostchoice has been injured as result of the allegations set forth below, that injury occurred in the State of Georgia.

8. Applying the Colorado choice of law rules in cases arising out of tort, Georgia law should be applied to the claims raised herein.

## Click Fraud

9. All computers that send information through the internet have an assigned internet protocol (IP) address.

10. "Pay per click" ("PPC") is a method of internet advertising where the advertiser pays each time an internet user "clicks" on the advertiser's ad and is taken to a page on the advertiser's website

11. Mostchoice has at all times relevant to this complaint, utilized PPC advertising.

12. Netquote has at all times relevant to this complaint been aware that Mostchoice utilizes PPC advertising.

13. When an internet user reaches Mostchoice by virtue of Mostchoice PPC advertising, Mostchoice is able to capture the internet protocol address of that user.

14. An internet protocol address is "a unique string of numbers that identifies a computer on the Internet." (http://web.mit.edu/ist/topics/network/glossary.html)

15. For purposes of this complaint, and without limiting its definition, "click fraud" occurs in PPC advertising when a person imitates a legitimate user of a web browser clicking on an ad, for the purpose of generating a charge per click without having actual interest in the target of the ad's link. (http://en.wikipedia.org/wiki/Click_fraud)

16. From October 22, 2004 through August 3, 2005 an internet user with an IP address of 216.150.195.4 clicked through to the Mostchoice website at least twenty-five (25) times without completing an application. The date of each click, the number of visits, the date and time of the last visit, and the "hit count" (or number of times that user visited the site before deleting cookies) were recorded along with other information identifying the source of the click was captured by Mostchoice and set forth in Exhibit "A," which is incorporated herein by reference.

17. From January 11, 2007 through September 7, 2007 an internet user with an IP address of 208.49.110.34 clicked through to the Mostchoice website at least twenty-seven (27) times without completing an application. The date of each click, the number of visits, the date and time of the last visit, and the "hit count" (or number of times that user visited the site before deleting cookies) were recorded along with other information identifying the source of the click was captured by Mostchoice and set forth in Exhibit "B," which is incorporated herein by reference.

18. Erik Jensen and Daniel Wilkie are or were employees of Netquote who have submitted false leads, as that term has been used by Netquote in its Complaint, to Mostchoice using as an IP address 208.49.110.34. These false leads were captured by Mostchoice and attached hereto as Exhibit "C."

19. The clicks referred to in paragraphs 17 and 18 above were illegitimate and constitute click fraud as defined herein.

20. Mostchoice estimates that its approximate average conversion rates for PPC advertising vary from fifteen percent (15%) to thirty percent (30%) meaning that 15%- 30% of the

        internet users who click through to the Mostchoice site as a result of its PPC advertising complete an application.

21. Of the 25 "clicks" identified in exhibit "A," no applications were completed which demonstrates that these clicks were not legitimate internet users. Further evidence that these clicks were not legitimate internet users are the number of hits on each click as demonstrated by Exhibit "A," and certain of the clicks were done multiple times by the same computer.

22. Websites such as http://remote.12dt.com/ provide reverse domain name system ("DNS") directory searching, which allows a user to identify the domain name associated with a particular IP address.

23. A reverse DNS search of the 216.150.195.4 IP address identified netquote.com as the top level domain. (See Exhibit "D" attached hereto)

24. Based upon the foregoing allegations, Netquote engaged in click fraud at least 25 times causing harm to Mostchoice.

25. Netquote, through the use of other IP addresses not already identified herein, is believed to have engaged in click fraud in other instances, but Mostchoice has not been able to ascertain such other IP addresses used by Netquote, which would allow for the identification of other click fraud activity.

26. Upon information and belief, beginning sometime in 2004, at least one employee of Netquote engaged in click fraud that caused harm to defendant Mostchoice by clicking on paid advertisements that generated charges to Mostchoice.

27. Upon information and belief, Netquote was aware that Mostchoice had maximum pre-set

spending limits on its pay-per-click accounts, and further knew that once the limit was reached, that Mostchoice advertising would no longer appear.

28. As a consequence of the conduct described, Netquote was able to, and upon information and belief did, reduce its own costs on the same advertising channels, and cause Mostchoice advertisements to no longer appear thereby capturing traffic that would have otherwise been captured by Mostchoice.

29. As a consequence of the conduct described above, Mostchoice has been damaged in an amount to be determined with certainty at trial.

30. The conduct alleged herein was wilful, malicious, and made with an intent to harm Mostchoice, and as a result, Mostchoice is entitled to recover punitive damages.

31. As a consequence of the conduct alleged herein, Mostchoice is entitled to an award of its attorney's fees and expenses of litigation.

**General Allegations Regarding Defamation and Tortious Interference**

32. Upon information and belief, Netquote representatives made false and derogatory statements about Mostchoice to representatives of Bankrate.com.

33. At the time of the discussions alleged in paragraph 32 above, Bankrate and Mostchoice had been discussing a proposed sale of Mostchoice to Backdate.

34. Subsequent to the discussions referred to in paragraph 32 above, Bankrate decided not to move forward with an acquisition of Mostchoice.

35. Netquote was aware that a Bankrate acquisition of Mostchoice would substantially, and negatively, affect its own business, and it was in Netquote's interest to sabotage any proposed merger between Bankrate and Mostchoice.

**Defamation**

36. Mostchoice incorporates paragraphs 1-35 above as if fully re-alleged herein.

37. The communications, conversations, and discussions referred to in paragraphs 32-35 above were false, defamatory, not subject to any privilege, and resulted in damage to Mostchoice's business and reputation.

38. The conduct alleged herein was wilful, malicious, and made with an intent to harm Mostchoice, and as a result, Mostchoice is entitled to recover punitive damages.

39. As a consequence of the conduct alleged herein, Mostchoice is entitled to an award of its attorney's fees and expenses of litigation.

**Tortious Interference**

40. Mostchoice incorporates paragraphs 1-39 above as if fully re-alleged herein.

41. By virtue of the conduct described above, Netquote has intentionally and improperly interfered with Mostchoice's actual and prospective business and contractual relations.

42. The conduct described above caused and induced Bankrate to discontinue its prospective purchase of Mostchoice.

43. By virtue of the allegations set forth herein, Mostchoice has been damaged in an amount to be determined with certainty at trial.

WHEREFORE Mostchoice.com, Inc. prays for judgment in its favor

(a)  for actual damages in an amount to be determined with certainty at trial, and;

(b)  punitive damages, and;

(c)  attorney's fees and expenses of litigation, and'

(d)  for such other and further relief deemed necessary and just by this Court.

**Jury Trial Demanded**

Dated this 20th day of September, 2007.

                                              **s/ Ryan Isenberg**
                                              Ryan L. Isenberg, Esq.
                                              Isenberg & Hewitt, P.C.
                                              7000 Peachtree Dunwoody Road
                                              Building 15, Suite 100
                                              Atlanta, Georgia 30328
                                              Telephone: 770-351-4400
                                              Facsimile: 770-828-0100 (Fax)
                                              Email: ryan@isenberg-hewitt.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of September, 2007, I served the foregoing Second Amended Counterclaim by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Daniel D. Williams
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
cbeall@faegre.com

                                              **s/ Ryan Isenberg**