IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

**NETQUOTE INC, a Colorado corporation,**

    Plaintiff,

v.

**BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and**

**MOSTCHOICE.COM, Inc., a Georgia corporation**

    Defendants.

---

**DEFENDANT MOSTCHOICE.COM'S MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS, FOR ADDITIONAL TIME TO COMPLETE WRITTEN DISCOVERY, AND TO MODIFY THE SCHEDULING ORDER ACCORDINGLY**

---

Comes now, Defendant Mostchoice.com, Inc. and herein files this its to Motion for Leave to Take Additional Depositions, for Additional Time to Complete Written Discovery, and to Modify the Scheduling Order Accordingly and shows this Court the following:

**Introduction**

The Court is no doubt familiar with many of the issues in this case at this point during the litigation. The parties are competitors in the online insurance lead generation business. The plaintiff claims, and to a large degree the defendant has admitted, that Brandon Byrd as an employee of the defendant submitted numerous[1] fictitious insurance quote requests. Netquote

---

[1] Though not admitted, the plaintiff claims to have received just over 3,500 requests between October, 2006 and July, 2007. For purposes of this motion only, Mostchoice will accept this number, though contends it is roughly 1,800.

claims that as a consequence that it has sustained substantial damage and seeks to recover based on its claims of fraud and tortious interference. Specifically, Netquote claims to have lost 159 customers, and further claims that the total value of the loss of this business approximates to between $2.1 Million and $2.6 Million.

Mostchoice has filed as counterclaim alleging Netquote employees have engaged in click fraud, and has identified limited activity.[2]

### Argument and Citation to Authority

> "In considering plaintiff's request for leave to take more than ten depositions, the court must examine the request and consider the asserted need for additional discovery in light of the stated principles of Fed. R. Civ. P. 26(b)(2). **Siegel v. Truett-McConnell College, Inc.**, 13 F. Supp. 2d 1335, 1337 (N.D. Ga. 1994) (citation omitted). Specifically, the court must consider whether (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive; (2) the party seeking discovery has ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, and the importance of the proposed discovery in resolving the issues."

*Andamiro U.S.A. v. Konami Amusement of Am.*, 2001 U.S. Dist. LEXIS 11168 (D. Cal. 2001)

According to the comments to 1993 amendment to FRCP § 30 limiting the number of depositions in a case, it is said that

> One aim of this revision is to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions in a case without agreement of the other parties. A second objective is to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case. Leave to take additional depositions should be granted when consistent with the principles of Rule 26(b)(2), and in some cases the ten-per-side limit should be reduced in accordance with those same principles.

---

[2] Mostchoice has only in the past week or so obtained a list of IP addresses from Netquote that it needs to analyze its claim.

Further, the comments to FRCP 26(b)(2)(b) suggest that "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."

In addition to the above, because the claims the plaintiff is making are for damages under Colorado tort law, which prohibits the recovery of "speculative damages," Mostchoice should be entitled to obtain the evidence necessary to support a motion under FRCP § 56 to demonstrate that there is no relationship between the alleged harm and the plaintiff's claimed damages, and that the damages claimed are speculative.

## Disclosures and Depositions

The scheduling order in place [See Dkt. #26 ] incorporates the FRCP § 30 subsection limiting the number of depositions per party. In its initial disclosures, served on May 7, 2007, Netquote identified fourteen (14) employees as individuals with relevant knowledge. Subsequently, Netquote has supplemented its disclosures to identify a total of seventeen (17) individuals. Further, during depositions of Netquote employees other individuals were identified as having knowledge not previously known to the plaintiff.

In addition to Netquote's employees, as noted above, plaintiff has just recently identified 159 customers that it claims were lost as a result of the plaintiff's conduct. Netquote has identified two (2) large national accounts it claims to have lost, and 157 local accounts. The documents that identify these companies do not any contain contact information.

Finally, depositions of the Netquote employees revealed additional documents and information that is properly available in response to additional written discovery.

**Discovery to Date**

The parties have been diligent in pursuing discovery.[3] To date, Netquote has served three sets of interrogatories and four sets of requests for documents upon the plaintiff. Mostchoice has served two sets of written discovery, one of which was served on October 3, 2007 after receiving the expert's report, and after having concluded the scheduled depositions of Netquote and its employees. Netquote has indicated that because the discovery was served some four days after the date for completion of written discovery passed, that it would simply ignore that discovery.

Mostchoice has taken nine (9) depositions, all of Netquote employees, and a tenth deposition that was noticed was not taken due to personal reasons of the deponent.

**Additional Discovery Needed**

I.  Non-Party Discovery

Plaintiff's expert witness has prepared a report that purports to quantify the value of 159 customers that Netquote claims it has lost as a result of the submissions by Brandon Byrd. It purportedly relies upon the testimony of Netquote employees alone to support this proposition as to 157 of these customers. (SD-16).[4] The complete identity and addresses of these customers has not been produced, and all of the attachments and supporting documents, other than those produced from Mostchoice, have been designated as attorney's eyes only under the protective order in place, which prohibits any informal attempt to obtain affidavits or informal discovery of

---

[3]It is of some import that plaintiff Netquote has now four (4) attorney's of record available to assist in the preparation and review of documents, and that Mostchoice should not be condemned or punished for choosing counsel that does not have the same resources as that of Netquote's counsel.

[4]Unless plaintiff disputes this assertion, Mostchoice has attempted to prepare this motion so that it would not need to be filed under seal.

these witnesses.[5]

Based upon the report, the 157 accounts are alleged to be valued at between $1Million and $1.5Million. Each customer represents its own separate claim for lost profit.[6] While Netquote may or may not be allowed to offer such evidence at trial, the highest and best evidence of whether a particular customer left is the testimony of that customer. Mostchoice merely seeks the ability to obtain such testimony.

In addition, to the extent that Mostchoice needs additional depositions to depose the two national accounts identified by the plaintiff in its expert's report as having terminated, Mostchoice seeks leave to depose the necessary representatives of those entities as well for the same reasons asserted above.

II.  Additional Party Discovery

A.   Discovery related to Netquote's Claims

   1.   Mostchoice seeks to depose the following Netquote employees and former employees relating to its claims:

      (a)   Cynthia Cappozzi - former Netquote Chief Information Officer - was employed as CIO at the time that Byrd's submissions were began and had strategic impact on how they were handled)

      (b)   Aaron Broome - Netquote Director of Local Sales and Service - Mr. Broome was directly involved in internal decisions that relate to issues of

---

[5] Informal discovery would not be admissible under FRCP § 56, or at trial.

[6] "Damages sustained by a business must relate to loss of net profits; they may not be speculative, remote, imaginary, or impossible of ascertainment." **Boyle v. Bay**, 81 Colo. 125, 254 Pac. 156; **Lee v. Durango Music**, 144 Colo. 270 (Colo. 1960)

    mitigation and how Netquote dealt with Byrd's Submissions

 (c) Jeff Coppock - Netquote Director of National Sales - Was responsible for one of two national accounts plaintiff claims to have lost as a result of Byrd's submissions.

 (d) The number of customers Netquote claims to have received false submissions from Byrd is far greater than the number it claims to have lost. It is therefore relevant to this case to inquire with current Netquote customers who received Byrd's fals submissions why they chose to continue to do business with Netquote. As a consequence, Mostchoice would seek to depose a small random sampling of Netquote's current customers who received false submissions from Byrd yet did not terminate its relationship with Netquote.

2. Mostchoice seeks additional written discovery as a more efficient way to follow up on information discovered at the depositions of its employees. Specifically, Netquote claims in its complaint that it had a sophisticated filtering system, and that it was harmed by the submissions. Responses to depositions of John Marosi and Qin Zhou, technical directors at Netquote, revealed additional relevant data that relates to a potential failure to mitigate damages, and that the system Netquote claims to have relied upon was not as sophisticated as pleaded in its complaint.

B. Discovery related to Mostchoice's Counterclaims

1. One Netquote employee admitted that it submitted a single insurance application

        to the Mostchoice website. Mostchoice has identified to date that it received seven applications, including one from another identified Netquote employee Danielle Wilkie.

2. Other false applications don't contain actual names of people, who are believed to be Netquote employees and as a consequence, these individuals should be identified, and made available to Mostchoice for deposition.

III. Suggestions for Reducing the Cost and Burden

Netquote seeks actual damages, punitive damages, and attorney's fees. That could amount to roughly $20 Million within constitutional limitations, and is obviously quite a substantial amount of money.[7] Nevertheless, Mostchoice is not seeking permission to take over 1,000 hours of depositions in this case, but because Mostchoice cannot determine from the documents produced whether a group of agents may represent a single deposition, Mostchoice requests that it be allowed to take 150 additional hours of deposition.

Further, Mostchoice believes that it can obtain much of the information it seeks through additional written discovery, including documents not known to be in existence until the depositions of the Netquote employees. A copy of the interrogatories and request for documents served on October 3rd are attached hereto as Exhibits "A" and "B." All of the information and documents requested arise out of information obtained at deposition, or which was unknown at deposition and is clearly within the scope of discovery. It may be of some import that the depositions were taken the last week of September, and the follow up discovery requests were

---

[7]Of course, if Netquote wants to withdraw certain of its claims, then Mostchoice will adjust its request for additional discovery.

prepared before the transcripts were received.

## Depositions for Purposes of Obtaining Evidence for Trial

Regardless of whether the depositions are allowed for purposes of discovery, Mostchoice contends that it cannot be prohibited from obtaining the deposition of any witness that is outside the Court's jurisdiction under FRCP § 45. There appears to be little authority for the proposition that a party may not, consistent with due process, be prohibited from obtaining the testimony of witnesses that is clearly relevant and material to the case, but at least one Court has clearly distinguished between trial depositions and discovery depositions. The Federal Rules of Civil Procedure don't distinguish these principals, but the availability of trial depositions was addressed in *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 587 (D. Minn. 1999) (Footnote 4) (We stated our view then, which we reiterate here, that Trial depositions are not governed by the limits set forth in our Pretrial Order, but any effort to conduct discovery, under the guise of taking "in lieu testimony," will not be condoned, and will be appropriately sanctioned. On this Record, we are unable to determine which depositions are intended for Trial purposes.).

## Amendments to the Scheduling Order

In order to accommodate the number of depositions and additional written discovery, Mostchoice proposes that the Court extend discovery through June, 2008, and extend the time to file dispositive motions through July, 2008.

Mostchoice further proposes that it be allowed additional time in relation to the relief sought to identify experts, both rebuttal and for its claims. In support of this particular issue, Mostchoice submits that the plaintiff's expert report was served on October 1, 2007, and version

that was somewhat redacted and designated only as confidential was provided on October 16, 2007. It contains and relies upon over 3,000 pages of documents, all of which have been designated as attorney's eyes only, and none of which have been produced in any sort of searchable or electronic format.[8] As a consequence, Mostchoice is burdened with having its counsel review each document, and then should Mostchoice choose to retain an expert, the expert must have sufficient time to review the documents and report to prepare a rebuttal.[9]

## Conclusion

Mostchoice does not take such an enormous request lightly. However, in light of the potential value of Netquote's claim, and the fact that such an outcome would render Mostchoice immediately insolvent, the additional discovery sought herein is necessary.[10] Therefore, Mostchoice respectfully requests that the Court grant this Motion, and for such other and further relief deemed necessary and just by this Court.

[Signature on next page]

---

[8] All documents have been provided in *.pdf, but a large number of the documents are either spreadsheets or database queries which could be produced in an easily searchable native format.

[9] Mostchoice consented to two requests by the plaintiff to extend the time within which it was required to serve its expert report.

[10] There can be no dispute as to the "relevance" of the additional discovery sought.

Dated this 18th day of October, 2007.

       **s/ Ryan Isenberg**
Ryan L. Isenberg, Esq.
Isenberg & Hewitt, P.C.
7000 Peachtree Dunwoody Road
Building 15, Suite 100
Atlanta, Georgia 30328
Telephone: 770-351-4400
Facsimile: 770-828-0100 (Fax)
Email: ryan@isenberg-hewitt.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of October, 2007, I served the foregoing Response to Netquote's Motion to Dismiss Mostchoice's Counterclaims by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Heather Carson Perkins
Daniel D. Williams
Theresa T. Tate
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
dwilliams@faegre.com

       **s/ Ryan Isenberg**