IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and
MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

_____

## ORDER
_____

Before the Court is Plaintiff's Motion to Maintain Highly Confidential - Attorneys' Eyes Only Designation for Documents NQ000160-NQ000204 [doc #90]. The matter is briefed and has been referred to this Court for resolution [doc #92]. Oral argument would not materially assist the Court in adjudicating this Motion. For the reasons stated below, the Court **grants** Plaintiff's Motion.

### BACKGROUND

Plaintiff and Defendant Mostchoice.com are competitors in the business of generating online sales leads for insurance agents. The websites of both companies allow consumers to enter their information online and receive insurance quotes on a variety of products from local insurance agents. Plaintiff filed this action against Defendants alleging that Defendant Byrd was hired by Defendant Mostchoice.com to submit false leads to Plaintiff's website. Plaintiff alleges that the false leads allowed Defendants to obtain Plaintiff's list of agents (customers) so that Defendants could solicit business from them, that the false leads damaged the quality of Plaintiff's leads, and that Defendant Mostchoice.com falsely advertises that its leads are of a higher quality than Plaintiff's leads, which

Plaintiff alleges is a result of Defendants' own conduct.

Plaintiff filed the instant Motion seeking to enforce the Protective Order re: Documents and Deposition Transcripts with respect to certain documents Plaintiff has designated Highly Confidential - Attorneys Eyes Only. Motion at 1. Plaintiff contends that these documents constitute portions of its customer lists, and contain confidential information regarding the names, locations, contact information and agency information of its former customers. *Id.* at 2. In addition, the documents consist of internal logs detailing customer concerns that identify each customer, Plaintiff's efforts to resolve outstanding issues, and the outcome of the issues. *Id.* at 2-3. Plaintiff argues that disclosure of this information to Defendant Mostchoice.com, as a direct competitor of Plaintiff, would allow Mostchoice.com access to information regarding former customers lost as a result of Mostchoice.com's alleged improper conduct, and give Mostchoice.com an unfair competitive advantage over Plaintiff. *Id.* at 3.

Defendants object to Plaintiff's designation of these documents stating that such heightened protection should not be afforded information regarding "non-customers." Response at 3. In pertinent part, Defendants assert that Plaintiff, who retains the burden of demonstrating good cause under the Protective Order, has failed to do so, and has offered no evidence "how it could possibly damage Netquote to allow Mostchoice to see the identities of non-customers." *Id.*

## DISCUSSION

Certain non-disclosure of information or documents is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and can include an order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P.

26(c) & (c)(7). The burden is on the party resisting discovery or dissemination to establish that the information sought should be subject to additional protection. *Reed v. Nellcor Puritan Bennett & Mallinckrodt*, 193 F.R.D. 689, 690 (D. Kan. 2000). To meet this burden, the moving party must set forth specific facts showing good cause, not simply conclusory statements. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Thus, Plaintiff must do more than simply allege that the documents are proprietary and confidential. *Reed*, 193 F.R.D. at 691.

In determining the proper level of protection, the Court must balance the requesting party's need for the discovery against the resisting party's claimed harm that will result from disclosure. *See Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981). With regard to an attorney's-eyes-only provision, confidential information that may be used against the company by a direct competitor in the lawsuit is generally afforded more protection. *See A/R Roofing, L.L.C. v. Certainteed Corp.*, No. 05-1158, 2005 U.S. Dist. LEXIS 31145 (D. Kan. Dec. 5, 2005) (finding that disclosure of information that could place one party at a disadvantage in the marketplace supported an attorney-eyes-only provision); *see also Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp. 866 (E.D. Pa. 1981) ("[c]ompetitive disadvantage is a type of harm cognizable under Rule 26").

Here, the governing Protective Order re: Documents and Deposition Transcripts defines Highly Confidential - Attorneys' Eyes Only information as that which "would create a substantial risk of serious injury that could not be avoided by less restrictive means, including those things of a proprietary business or technical nature that might be of value to a competitor or potential customer or vendor of the Party, and must be protected from disclosure to the opposing Party. *This [information] is limited to proprietary computer systems and internal procedures, customer lists,*

3

*and pricing options, forecasts, and related financial information.*" *See* Protective Order at ¶ 2.5 (emphasis added). Thus, the Court must determine whether the information contained in the documents at issue fits within the limitation of the Order's definition.

Neither party argues that the information contained in documents NQ000160-NQ000204 must be protected as "proprietary computer systems and internal procedures," or as "pricing options, forecasts, and related information." Instead, Plaintiff asserts that the information constitutes portions of its "customer lists" and consists of information the Plaintiff has gathered regarding customers' reasons for terminating their relationships with Plaintiff. Motion at 2. Plaintiff states that it intends to make efforts to re-establish relationships with these customers, and that disclosure of this information, especially to Defendant, a direct competitor, will harm its prospects for renewed sales attempts. *Id.* at 2-3.

This Court has recently found that "customer lists and sales leads of a competitor represent a classic example of information most often subject to attorneys' eyes only." *Quickpen Int'l, Inc. v. Bittinger*, 2007 WL 1686723 (D. Colo. June 8, 2007). Unfortunately, the Protective Order in this case does not define what may constitute a "customer list." Nevertheless, in Colorado, customer lists may be trade secrets entitled to protection from disclosure. Colo. Rev. Stat. § 7-74-102(4) (2007). A "trade secret" is defined as commercial information relating to business which is secret and of value, and which the owner has treated confidentially. *See* Colo. Rev. Stat. §§ 7-74-102(4) and 18-4-408(2)(d); *see also Network Telecommunications v. Boor-Crepeau*, 790 P.2d 901 (Colo. App. 1990); *Porter Indus., Inc. v. Higgins,* 680 P.2d 1339 (Colo. App. 1984).

The Tenth Circuit has also noted that a trade secret can consist of a number of different components, all of which are publicly known, so long as the specific combination of information could

4

lead to a competitive advantage. *Harvey Barnett, Inc. v. Shidler,* 338 F.3d 1125, 1130 (10th Cir.2003). "In short, a trade secret 'may consist of any formula, pattern, device, or compilation of information which is used in one's business, and which gives [the possessor] an opportunity to obtain an advantage over competitors who do not know or use it.'" *Gold Messenger, Inc. v. McGuay,* 937 P.2d 907, 911 (Colo. App. 1997) (quoting *Management Recruiters of Boulder, Inc. v. Miller,* 762 P.2d 763 (Colo. App. 1988)).

To determine whether the information at issue in this case serves as a trade secret, the Court may consider the following factors: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business; (3) precautions taken by the holder of the alleged confidential information to guard secrecy of the information; (4) the savings effected and value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *DDS, Inc. v. Lucas Aero. Power Transmission Corp.,* 182 F.R.D. 1, 5 (N.D. N.Y. 1998); *see also Colo. Supply Co. v. Stewart,* 797 P.2d 1303, 1306 (Colo. App. 1990).

Here, the information in the form of communications, email messages and notes (*see* Response at 3) reflecting the Plaintiff's customers' reasons for terminating their business, as well as Plaintiff's efforts made toward retaining or renewing customer relationships, is certainly not information readily accessible to the public. Plaintiff itself compiled this information, and considers the information valuable for purposes of attempting to re-establish customer relationships and for prohibiting its competitor from obtaining possible "negative" information about the company to use to its advantage. *See, e.g., Coca-Cola Bottling Co. v. Coca-Cola Co.,* 107 F.R.D. 288 (D. Del. 1985) (courts have

presumed that disclosure of a trade secret to a competitor is more harmful than disclosure to a noncompetitor).

Because the Court finds that Plaintiff has sufficiently described the harm that might result from disclosure of the information, the Court must balance the potential harm with the Defendants' need for the information. *See Centurion Indus., Inc.*, 665 F.2d at 325. Here, Defendants have proffered no legitimate reason for their need for the information to be designated differently, other than a conclusory statement that Defendants "ha[ve] been precluded from access to the information necessary to adequately defend itself in this litigation." Response at 2. Thus, the potential harm to the Plaintiff in this instance outweighs any need the Defendants may have for disclosure of this particular information to anyone other than attorneys. Therefore, the Court finds that the information at issue falls within the definition of "customer lists" in the Protective Order, and constitutes trade secrets protected from disclosure pursuant to Colorado law.

## **CONCLUSION**

Accordingly, for the reasons stated above, it is hereby ORDERED that Plaintiff's Motion to Maintain Highly Confidential - Attorneys' Eyes Only Designation for Documents NQ000160-NQ000204 [filed October 9, 2007; doc #90] is **granted**.

Dated at Denver, Colorado, this 31st day of October, 2007.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge