#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

---

### NETQUOTE'S RESPONSE TO MOSTCHOICE'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND TO EXTEND THE DISCOVERY DEADLINES

---

    Plaintiff NetQuote, Inc. ("NetQuote"), through undersigned counsel, responds to the motion of Defendant MostChoice.com, Inc. ("MostChoice") to take additional discovery and to extend the deadlines for completion of discovery (Dkt. # 93) as follows:

#### INTRODUCTION

    After having taken nine of its ten allotted depositions very late in the discovery period, and after choosing not to retain an expert witness notwithstanding being on notice since the beginning of this case that NetQuote would be offering a damages expert, MostChoice now appears to be reconsidering its litigation strategy. MostChoice requests a sweeping modification to the Scheduling Order to: (1) extend the discovery cut-off date more than seven months–from November 20, 2007 to June 30, 2008; (2) allow MostChoice to ignore deadlines that have already expired for completion of written discovery; and (3) authorize MostChoice to take 150

hours of additional depositions of scores of witnesses throughout the United States. MostChoice's change of strategic direction does not qualify as "good cause" sufficient to justify this eleventh-hour request to amend the Scheduling Order.

MostChoice's proposal would cause a lengthy delay in bringing this case to trial and would greatly increase the costs of this litigation as both sides would take significant additional discovery. The purpose of discovery planning at the beginning of the case, including submitting a jointly proposed scheduling order and participating in a scheduling conference, is to prevent just the sort of extensive delays and increased costs that MostChoice proposes. This Court has explained that the "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Hannah v. Roadway Express, Inc.*, 200 F.R.D. 651, 654 (D. Colo. 2001). NetQuote requests that the parties be held to their agreed upon discovery plan, with only the limited modifications to which the parties previously stipulated.

## ARGUMENT

**I.   THE LEGAL STANDARD GOVERNING AMENDMENTS TO THE SCHEDULING ORDER.**

The Scheduling Order in this action provides that it may be amended "only upon a showing of good cause." Scheduling Order ¶ 13 (Dkt. # 26); *accord* Fed. R. Civ. P. 16(b) (order shall not be modified "except upon a showing of good cause"). To meet the "good cause" standard for extending discovery deadlines, the moving party must "demonstrate that the deadline cannot be met with due diligence." *Treat v. Am. Furniture Warehouse, Co.*, 2007 WL 2175186 at *2 (D. Colo. Jul. 26, 2007); *accord Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

## II. THE SCHEDULING ORDER DEADLINES SHOULD NOT BE EXTENDED.

### A. MostChoice Does Not Show Good Cause To Extend the Fact Discovery Cut-Off Date or Summary Judgment Deadline.

MostChoice asks to extend the discovery cut-off date from November 20, 2007 to June 2008 with a concomitant extension to the deadline to submit summary judgment motions. Mot. 8. This requested seven-month extension is completely unwarranted, and MostChoice presents no reason why, with the exercise of "due diligence," it could not have complied with the current schedule. *Treat*, *supra*; *Medtronic*, *supra*. MostChoice claims that this lengthy extension is necessary for it to take additional depositions. This is largely a self-inflicted injury, because MostChoice waited until September 25, 2007 – almost four months after the scheduling conference in this matter and well after discovery was authorized to commence – before it took its first deposition in this case.[1]

Moreover, the delay MostChoice requests would severely prejudice NetQuote. This is not a case in which the damage inflicted is complete and the only issues for the Court are to determine liability and to set a damages award. NetQuote also seeks injunctive relief to prohibit conduct that MostChoice refuses to stop. NetQuote has sent MostChoice formal demands that it cease and desist from sending false insurance quotation requests to NetQuote, and that it cease

---

[1] When it did finally start taking depositions at the end of September, it chose to depose nine NetQuote employees about NetQuote's business operations and techniques. The day after it completed these depositions, on September 28, 2007, MostChoice served on NetQuote a new lawsuit that MostChoice had just filed against NetQuote in the Northern District of Georgia accusing NetQuote of wrongful business practices. *See MostChoice v. Doe, et al.*, Civ. No. 1:07-cv-02309-ODE (N.D. Ga. filed Sep. 21, 2007). This new lawsuit appears to be nothing more than retaliation for NetQuote having sued MostChoice and having questioned MostChoice's Chairman, Michael Levy, at his deposition about MostChoice's business practices. It now appears that MostChoice used its depositions in this matter to attempt to gain support for its new lawsuit and to gain business intelligence on NetQuote. Having chosen to use its allotment of discovery to seek business intelligence and to try to support its new lawsuit, MostChoice's claim that it needs more time for discovery in this matter rings hollow.

3

and desist from marketing to the NetQuote customers whose identities it discovered through its fraud. *See* Ex. A, B. Notwithstanding this Court's ruling on MostChoice's motion to dismiss making clear that the conduct alleged, if true, is fraud, *see* Dkt. # 68, MostChoice nevertheless refused both requests. *See* Ex. C, D. NetQuote is working diligently to get this case to trial as quickly as possible so that MostChoice and Byrd's wrongful conduct can be enjoined and MostChoice will stop profiting from its deceptive tactics by marketing to the NetQuote customer list it procured through surreptitious means. The delay MostChoice seeks would impose a grossly unfair burden on NetQuote in getting justice in this matter.

### B. The Expert Discovery Deadlines Should Not Be Extended.

MostChoice further requests an extension, from October 1, 2007 for expert reports and November 1, 2007 for rebuttal reports, Order (Dkt. # 79), to an indefinite time in the future for it "to identify experts, both rebuttal and for its [counter]claims." Mot. 8. Importantly, MostChoice has yet to decide even *whether* it will retain any affirmative or rebuttal experts in this matter. *See* Mot. 9 ("***should MostChoice choose*** to retain an expert" (emphasis added)); *accord* Scheduling Order ¶ 8(d)(1) ("Defendants . . . are unable to presently anticipate the need for an expert witness."). At the outset of this case, NetQuote stated clearly that it anticipated designating an expert "on economic damages." Proposed Scheduling Order ¶ 8(d)(1) (Dkt. # 24). MostChoice filed its counterclaims on June 15, 2007 (Dkt. # 33). There is simply no excuse for MostChoice to have not yet decided whether it will retain any experts to defend against NetQuote's claims or to support its counterclaims in this matter. Having let the deadlines for expert disclosures pass without making any expert disclosures at all, there is no good cause for any extensions to the expert disclosure deadlines.

### III. MOSTCHOICE SHOULD NOT BE PERMITTED MORE THAN TEN DEPOSITIONS.

MostChoice provides no explanation for its failure to plan for its claimed need to take depositions of non-parties concerning damages issues. Even at this late date, and well after the parties agreed to a discovery plan limiting the number of authorized depositions to ten, MostChoice does not claim to have any plan as to how many depositions of non-parties it wants to take. Rather, it states only that there is a universe of 159 companies NetQuote identified that stopped doing business with NetQuote after receiving the bogus insurance leads MostChoice put into NetQuote's system, some of which it wants to depose, and it claims additionally that it wants to take the depositions of "a small random sampling" of current NetQuote customers. *See* Mot. 4, 6. Having not yet decided who among this group it actually wishes to depose, MostChoice proposes that it be granted leave to take "150 additional hours of deposition." Mot. 7.

There is no excuse for MostChoice to have failed to develop a discovery plan at the beginning of this case to address whatever need it perceives for the depositions of current and former NetQuote customers. The Proposed Scheduling Order in this case makes clear that NetQuote's alleged damages arose from "lost revenues from departed clients." *See* Proposed Scheduling Order ¶ 5. If MostChoice believed a deposition of each of the departed clients was necessary, it should have raised that issue at the scheduling conference in this matter. MostChoice relies on the comments to the 1993 revision to Rule 30, which describe the presumptive limit on the number of depositions and state that the rule is designed "to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case." Fed. R. Civ. P. 30(a)(2)(A) Cmt. to 1993 amendment. What MostChoice ignores is that the parties went through exactly that process at the outset of this case and jointly proposed to

the Court the limitations that are contained in the Scheduling Order. *See* Proposed Scheduling Order ¶ 8(h)(1) ("The limit on the number of depositions set in [Rule 30] applies to this case."). This Court accepted the parties' recommendations. *See* Scheduling Order (Dkt. # 26). Having gone through that process, there is no basis for MostChoice's complaints about the limits on the number of depositions now.

MostChoice's claim that it is hampered from taking informal discovery or securing depositions from NetQuote's current or former customers because of the Protective Order in this case permitting the customers' identities to be designated "Attorneys' Eyes Only" also is without merit. Mot. 4-5. The Protective Order allowed not only outside counsel for MostChoice to seek affidavits or informal discovery from these NetQuote customers, but also outside counsel's paraprofessional staff and professional vendors counsel retained. *See* Protective Order ¶ 5.1(a), 5.2. MostChoice's Motion does not explain why no such steps were undertaken.

Additionally, MostChoice claims that NetQuote identified fourteen individuals in its initial disclosures, three of whom were identified in an amendment to the initial disclosures. Mot. 3. But MostChoice concedes that the initial disclosures identifying fourteen of these individuals were served on May 7, 2007, which was <u>prior</u> to the parties' May 25, 2007 submission of a Proposed Scheduling Order limiting the number of depositions to ten. *See id.* Accordingly, MostChoice has no basis to claim surprise that the number of persons identified in NetQuote's initial disclosures exceeds the number of depositions permitted in this action.

In any event, it is generally the case in commercial litigation that a party could imagine deposing more of the opposing party's employees than the discovery limits allow. NetQuote, when confronted with this same issue, developed a discovery plan to select the most relevant

MostChoice employees for deposition while reserving other depositions to preserve testimony for trial on damages issues. There is no reason MostChoice could not have done the same.

MostChoice further contends that, during depositions, "other individuals were identified" not previously known to MostChoice. In fact, at the depositions, MostChoice's counsel asked for the identities of all employees in various groups at NetQuote even though many members of those groups have no knowledge concerning the facts in dispute in this litigation.[2]

Finally, MostChoice contends that it "cannot be prohibited" from taking a limitless number of additional depositions if the purpose of those depositions is to preserve testimony for trial. Mot. 8. MostChoice includes this contention in its brief, but it does not specifically ask the Court for any relief with respect to this theory. The case MostChoice offers to support its theory that it can take such depositions regardless of the Scheduling Order arises not from this Court, but from the District of Minnesota. *See id.* (discussing *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 587 n.4 (D. Minn. 1999)). The Scheduling Order used by this Court, and Rule 30 itself, make no distinction between "discovery" depositions and "trial" depositions. When this Court has allowed depositions to preserve testimony at trial outside of the limitations set forth in a Scheduling Order, it has done so only in response to a demonstrated need set forth in a motion. *See, e.g.*, *Estenfelder v. Gates Corp.*, 199 F.R.D. 351 (D. Colo. 2001); *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, 2007 WL 2935818 (D. Colo. Oct. 5, 2007). This Court has never embraced the principle that a party could take an indefinite number

---

[2] MostChoice peppers its motion with gratuitous claims that NetQuote somehow has not complied with its discovery duties, including by claiming that NetQuote has not responded adequately to Defendant Byrd's discovery requests, and for that reason, the extensions sought should be granted. *See, e.g.*, Mot. 4 (suggesting, wrongly, that NetQuote did not identify the customers affected by MostChoice's bogus insurance quotation requests prior to making its expert disclosures). NetQuote does not undertake here to debunk each of these misstatements but rather focuses only on the most significant of them.

7

of such depositions as a matter of right. Indeed, so as to supervise the process and prevent a party from misusing such a deposition for discovery purposes, this Court specifically considers four factors before granting such relief, including the reason the witness cannot be compelled to appear at trial, how important the testimony would be, any prejudice to the opposing party, and the constraints to be imposed on the deposition. *See, e.g.*, *Vaughn v. Stevenson*, 2007 WL 460959 (D. Colo. Feb. 7, 2007). MostChoice provides none of these specifics – indeed it does not even identify the witnesses that it claims it needs to depose in lieu of trial testimony. Having failed to do so, it is not entitled to any relief from the Scheduling Order.

### IV. MOSTCHOICE SHOULD NOT BE EXCUSED FROM THE DEADLINES FOR SERVICE OF WRITTEN DISCOVERY.

Early in the discovery process, in May 2007, Defendant Byrd served fourteen document requests and sixteen interrogatories on NetQuote. Defendant MostChoice now seeks permission to serve additional document requests and interrogatories on NetQuote after the September 29, 2007 deadline for such discovery requests. *See* Scheduling Order ¶ 8(f), (g). MostChoice has not demonstrated good cause for this request.

MostChoice claims that NetQuote employees identified documents in their depositions "that [are] properly available in response to additional written discovery." Mot. 3, 7 (documents "arise out of information obtained at deposition"). Its motion does not claim that these documents were called for by previous document requests Defendant Byrd issued in the case. The most MostChoice offers is that the depositions provided ideas for possible additional document requests or interrogatories. MostChoice provides no reason why it could not have served additional written discovery requests by the cut-off date, September 29, 2007, when it completed these depositions on September 27, 2007. Alternatively, MostChoice was free to schedule its depositions of NetQuote witnesses earlier in discovery as part of a discovery plan

8

that would have complied with the Scheduling Order.  Its failure to have done so shows that it did not act with "due diligence."  *Treat*, WL 2175186 at *2.  Having "waited until the eleventh hour to seek this discovery, in direct contravention of the Scheduling Order," MostChoice has no valid basis to ask for the deadline to issue document requests and interrogatories to be excused.  *Id.* at *3.[3]

## CONCLUSION

For the foregoing reasons, MostChoice's motion to extend deadlines and to authorize additional discovery should be denied.

Dated:  November 7, 2007                                    Respectfully submitted,


                                             */s David W. Stark*_____
                                                                      David W. Stark
                                                                      Heather Carson Perkins
                                                                      FAEGRE & BENSON LLP
                                                                      3200 Wells Fargo Center
                                                                      1700 Lincoln Street
                                                                      Denver, Colorado 80203
                                                                      Tel:  (303) 607-3500 / Fax:  (303) 607-3600
                                                                      E-mail:  dstark@faegre.com

---

[3] MostChoice concludes its brief with an appeal based on the unsupported contention that the outcome of this case could render MostChoice "immediately insolvent."  Mot. 9.  That statement seems to be premised on MostChoice's fallacious claim that NetQuote is demanding "roughly $20 Million" in damages.  *Id.* 7.  NetQuote's demand in this action is for less than $3 million, plus attorneys' fees and exemplary or treble damages.  In any event, MostChoice does not explain why, if it truly believed that the outcome of this case could render it insolvent, it failed to pursue discovery in a diligent manner that would have allowed it to comply with this Court's orders.

9

Daniel D. Williams
Teresa Taylor Tate
FAEGRE & BENSON LLP
1900 Fifteenth Street
Boulder, Colorado 80302
Tel: (303) 447-7700 / Fax: (303) 447-7800
E-mail:  dwilliams@faegre.com

**Attorneys for Plaintiff NetQuote Inc.**

# CERTIFICATE OF SERVICE

I certify that on this 7th day of November, 2007, I electronically filed the accompanying **NETQUOTE'S RESPONSE TO MOSTCHOICE'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND TO EXTEND THE DISCOVERY DEADLINES** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Ryan L. Isenberg, Esq.
ISENBERG & HEWITT, P.C.
7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
Atlanta, GA 30328
ryan@isenberg-hewitt.com




　　　　　　　　　　　　　　　　　　　　　　　　*/s Daniel D. Williams*

fb.us.2394306.03