# EXHIBIT C

**ISENBERG & HEWITT, P.C.**
ATTORNEYS AT LAW
BUILDING 15, SUITE 100
7000 PEACHTREE-DUNWOODY ROAD
ATLANTA, GEORGIA 30328
www.isenberg-hewitt.com

TELEPHONE: (770) 351-4400                                      FACSIMILE: (770) 828-0100

May 31, 2007

Daniel D. Williams, Esq.
Faegre & Benson
1900 Fifth Street
Boulder, CO 80302

Re:   Netquote v. Brandon Byrd and Mostchoice.com

Dear Dan:

I am in receipt of your correspondence dated May 30, to which this letter will serve as a response.

With respect to claims that Mr. Byrd has been using the identities of other people, I have been informed that such is not the case, but that he has been making up the names of the people contained, I believe going so far as to use names from television shows in some of the submissions.

So far as the substantive claims are concerned, Mostchoice's assessment of the claims of fraud and tortious interference is obviously not consistent with that of Netquote. However, as noted in our motion to dismiss the fraud complaint against Mr. Byrd, in order to claim fraud, "the claimant must have relied upon the misrepresentation, and that reliance must have been justified given the circumstances." *See Black v. First Federal Savings & Loan*, 830 P.2d 1103 (Colo. App. 1992). *Robert K. Schader, P.C. v. Etta Indus.*, 892 P.2d 363, 366 (Colo. Ct. App. 1994). Your client never hears or sees any of the alleged misrepresentations, and therefore cannot under any circumstance justifiably rely upon them. Further, "a defendant may not have the right to rely on a misrepresentation when 'he could have learned the truth by reasonable inquiry' "
*M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994). All Netquote had to do was pick up the phone and call the submitted number to determine the lead was false.

In addition, Netquote is well aware that a lot of people will actually put "inaccurate" information into the submission form,[1] and that even good leads don't are not going to necessarily turn into a

---

[1] From http://insurance-lead.netquote.com/insurance-agent-lead.aspx

Now many people who log in actually punch in inaccurate information like in the field of name they just put in 'ABC' or for phone number may be '1231234'.

client.[2]

With respect to the claim for fraud, the damages must result from the reliance. The only plausible direct damage is minimal. The larger claim, the speculative nature of which I will address below, is not the result of the reliance, but rather alleged to be the damage to its reputation within the industry, and the concurrent loss of business from a lost agent.

Because our clients are competitors, a claim for tortious interference will not lie where

> "(1) it concerns a matter of competition between the defendant and plaintiff; (2) the defendant does not employ wrongful means; (3) the action does not amount to an unlawful restraint of trade; and (4) the defendant's purpose is, at least in part, to advance its own interest. <u>Wrongful means' include physical violence, fraud, civil suits, and criminal prosecutions</u>."

***Nobody in Particular Presents, Inc. v. Clear Channel Communs., Inc.***, 311 F. Supp. 2d 1048, 1115-1116 (D. Colo. 2004) (internal citations omitted).

Absent the availability of the claim for fraud, there has obviously been no violence, criminal prosecutions, or civil suits, and therefore no "wrongful means." As should be obvious by this point, the purpose of the conduct of Mr. Byrd was to ascertain the names of insurance agents who purchase leads from Mostchoice competitors. That is most certainly a competitive purpose, and is not in restraint of trade.

With respect to the claim for damages, the $2,000,000 claim asserted in your client's disclosures is nothing more than rank speculation regardless of the theory of recovery. Mostchoice believes this will be born out by the production of the information sought in its discovery to Netquote, but the bottom line is that agents come and go and have various reasons for leaving. Quite frankly, the suggestion that an agent stopped doing business with your client because of the receipt of even a few (though I believe it be less) bad leads from Mr. Byrd is highly unlikely to be supported by the evidence.

---

[2]From http://insurance-lead.netquote.com/exclusive-insurance-lead.aspx

Do keep in mind that an exclusive insurance lead will not necessarily turn into a client. There will be rejections. However good your policy may be and however hard you tried, some people would refuse to do business with you.

---

Like your letter, this is not an attempt to exhaustively detail all of the legal and factual positions that my client will assert, and does not address certain of the other claims raised in the most recent complaint, which Mostchoice also believes to lack merit. It serves merely as a response to your demand.

I look forward to meeting you on Monday.

Sincerely,

Ryan L. Isenberg