# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

## NETQUOTE'S RESPONSE TO DEFENDANTS' OBJECTION TO MAGISTRATE'S ORDER UPHOLDING ATTORNEYS' EYES ONLY DESIGNATION

Plaintiff NetQuote, Inc. ("NetQuote"), through undersigned counsel, responds to the Objection to Magistrate's Order Upholding Attorneys Eyes Only Designation (the "Objection") of Defendants MostChoice.com, Inc. and Brandon Byrd (collectively "MostChoice") as follows:

### INTRODUCTION

MostChoice has opposed the entry of any Protective Order at all in this case from the start. It is thus not surprising that MostChoice objects to the October 31, 2007 Order by Magistrate Judge Hegarty (the "Order") holding that the 44 pages of documents that are the

subject of MostChoice's Objection were appropriately designated "Highly Confidential – Attorneys' Eyes Only" by NetQuote.[1] (Order, Dkt. # 97.)

The current Protective Order allows access to protected material by MostChoice's attorneys, counsel's paraprofessionals and staff, as well as retained expert witnesses and litigation support vendors. Thus, the only issue in dispute here is whether corporate representatives of MostChoice itself should be permitted to review the highly confidential business records that NetQuote has designated "attorneys eyes' only." The Magistrate Judge correctly found that such access should not be permitted and did not abuse his discretion or commit error in reaching that conclusion. Accordingly, the Order should be accepted by the Court.

## STANDARD OF REVIEW

MostChoice challenges the Order under Fed. R. Civ. P. 72(a), which permits a district court to review a magistrate judge's ruling in non-dispositive pretrial matters. In reviewing the Magistrate Judge's decision, this Court is required to "defer to the magistrate judge's ruling unless it [was] clearly erroneous or contrary to law." *Hutchinson v. Pfeil,* 105 F.3d 562, 566 (10th Cir.1997) (citing 28 U.S.C. § 636(b)(1)(A)); Fed. R. Civ. P. 72(a); *Grimes v. San Francisco,* 951 F.2d 236, 240 (9th Cir.1991)). Under the clearly erroneous standard, this Court must accept the decision unless "on the entire evidence [one] is left with the definite and firm conviction that a mistake has been made." *Qualmark Corp. v. Hobbs*, 2007 WL 2461646, at *1 (D. Colo. Aug. 27, 2007) (citing *Hirschfeld v. New Mexico Corr. Dept.*, 916 F.2d 572, 580 (10th

---

[1] While MostChoice makes much of the total number of pages designated Highly Confidential—Attorneys' Eyes Only, it challenges that designation as to only 44 pages of documents (NQ000160-NQ000203) in its Objection. With respect to the other confidential or attorneys' eyes only documents, for many the parties have worked together to find compromises to allow MostChoice access to redacted versions of them, and for others MostChoice concedes that the documents have no value for its defense of this case.

2

Cir. 1990); *In re Davidovich*, 901 F.2d 1533, 1536 (10th Cir. 1990); *Cook v. Rockwell Intern. Corp.*, 147 F.R.D. 237, 243 (D. Colo. 1993)). *Accord Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988). "Because a magistrate judge is afforded broad discretion in the resolution of non-dispositive discovery disputes, the court will overrule the magistrate's determination only if his discretion is abused." *Ariza v. U.S. West Comm'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996) (internal citation and quotation omitted).

## ARGUMENT

MostChoice asserts that "there is no evidence in the record" upon which the Magistrate Judge could have made a determination that the documents at issue were appropriately designated attorneys' eyes only. (Objection at 2.) MostChoice also argues that the Court improperly shifted the burden of demonstrating that the documents met the criteria for an attorneys' eyes only designation from NetQuote to MostChoice. (*Id.*) Finally, MostChoice contends that the Magistrate Judge erroneously concluded that the documents contain information protectible as a trade secret. (*Id.*) As discussed below, these arguments are without merit.

**I.    THERE IS NO DISPUTE AS TO THE EVIDENCE BEFORE THE COURT.**

MostChoice first criticizes the Magistrate Judge for deciding Plaintiffs' Motion to Maintain Highly Confidential – Attorneys' Eyes Only Designation for Documents NQ000160-NQ000204 (the "Motion") without conducting some evidentiary proceeding. There was no need for the Magistrate Judge to conduct an evidentiary proceeding, however, because the facts regarding documents NQ000160-NQ000203 are not in dispute. Requiring the Magistrate Judge to take evidence under such circumstances, therefore, would have been a pointless formality.

There is no dispute that:

- NetQuote and MostChoice are direct business competitors in the small field of on-line insurance lead aggregation. (*See* Mot. at 2 (Dkt. # 90); Objection at 1; Third Amended Complaint ¶¶ 9, 18, 75 (Dkt. # 13); Answer ¶¶ 9, 18, 75 (Dkt. # 33).)

- The documents identify former NetQuote customers. (Mot. at 2; Defendants' Resp. to Pl.'s Mot. to Maintain Highly Confidential Designation of Documents NQ000160-NQ000204 ("Defs.' Resp.") at 3.)

- The documents are internal logs/notes detailing customer concerns. (Mot. at 2; Defs.' Resp. at 3.)

Moreover, NetQuote described the content of the documents with specificity, stating that they detail "customer concerns" and that they "identify the name and contact information of the customer, NetQuote's efforts to resolve the issue and retain the customers, and the outcome," and MostChoice does not disagree with that characterization in any respect, (Mot. at 2-3).

MostChoice cites no authority for the proposition that the Magistrate Judge was required to conduct an evidentiary proceeding where there is no factual dispute as to the nature and content of the documents. Indeed, NetQuote offered to produce the documents to the Magistrate Judge if he determined that a review would assist in resolving the matter. (Mot. at 3.) The Magistrate Judge properly determined that, based on the undisputed record before it, a review of the documents was unnecessary. Likewise, the Magistrate Judge found that "[o]ral argument would not materially assist the Court in adjudicating this Motion." (Order 1.) The Magistrate Judge's conclusions on these points is entitled to deference, and provide no basis for overturning the Order.

## II. THE COURT DID NOT SHIFT BURDENS OF PROOF.

MostChoice also contends that the Magistrate Judge improperly shifted the burden to show good cause for maintaining the "attorneys' eyes only" designation from NetQuote and

4

effectively required MostChoice to disprove the appropriateness of the designation. (Objection at 3.) To the contrary, the Order clearly states that NetQuote "retains the burden of demonstrating good cause under the Protective Order," (Order at 2), and that as the party resisting dissemination, NetQuote bears the burden to set forth specific facts showing good cause, and not simply conclusive statements. (*Id.* at 3.) The Magistrate Judge concluded that NetQuote "sufficiently described the harm that might result from disclosure of the information." (*Id.* at 6.)

As the Magistrate Judge noted in the Order, NetQuote identified specific continuing harm that would result from dissemination beyond counsel, staff, and litigation vendors of the 44 pages that it marked "attorneys' eyes only." Specifically, NetQuote would suffer a competitive disadvantage if MostChoice personnel are given access to this information. (Mot. at 2, 3.)

"Competitive disadvantage is a type of harm cognizable under Rule 26." (Order at 3 (citing *Zenith Radio Corp. v. Matusushita Elec. Indus. Co.*, 529 F. Supp. 866 (E.D. Pa. 1981)).) Here, MostChoice has admitted to submitting false applications for the purpose of learning the identity of NetQuote's customer base. (Objection at 1.) Making the documents available to MostChoice personnel would provide a tool for it to focus its sales efforts specifically on the relationships most impacted by the false submissions and would reward it for the conduct. (Mot. at 3.) These are not speculative sales efforts. Rather, MostChoice has admitted that it continues to market to the NetQuote insurance agents whose identities it discovered through the false submissions. While NetQuote has demanded that MostChoice cease and desist from marketing to these agents (Ex. A), MostChoice has flatly refused to cease its marketing and sales efforts to NetQuote customers identified through the false submissions, (Ex. B).

5

A specific and significant harm to NetQuote would result from the dissemination of these documents to MostChoice because it would allow MostChoice to target the most vulnerable NetQuote customers – the ones who had informed NetQuote that, because of the false insurance leads that MostChoice had pumped through NetQuote's computer system, they are stopping their purchases from NetQuote. Additionally, NetQuote made clear that it intends to make efforts to regain these agents. NetQuote still considers the agents customers and includes them in NetQuote's customer list. (Mot. at 3.)

The Court then turned to the second step of the analysis: balancing the potential harm with MostChoice's need for the information. (Order at 6 (citing *Centurion Indus., Inc.*, 665 F.2d at 325).) In balancing the interests, the Magistrate Judge concluded that MostChoice "proffered no legitimate reason for their need for the information to be designated differently, other than a conclusory statement that Defendants 'ha[ve] been precluded from access to the information necessary to adequately defend itself in this litigation." (*Id.*) Indeed, nothing prevents MostChoice's counsel, his litigation support staff and retained vendors from reviewing the documents to conduct the investigation MostChoice contends is necessary. Thus, the Court properly concluded that the potential harm to NetQuote "outweighs any need the Defendants may have for disclosure of this particular information to anyone other than attorneys." (*Id.*)

### III. THE MAGISTRATE JUDGE PROPERLY CONCLUDED THAT THE DOCUMENTS SHOULD BE PROTECTED.

"The customer lists and sales leads of a competitor represent a classic example of information most often subject to attorney's eyes only." (Order at 4 (citing *Quickpen Int'l, Inc. v. Bittinger*, 2007 WL 1686723, *1 (D. Colo., June 8, 2007).)

6

MostChoice objects to the Magistrate Judge's Order on the basis that "the documents at issue are not trade secrets." (Objection at 2.) As the Magistrate Judge noted,

> [c]ertain non-disclosure of information or documents is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and can include an order "that a trade secret **or other confidential research development, or commercial information not be revealed or be revealed only in a designated way**."

(Order at 2 (citing Fed. R. Civ. P. 26(c)(7) (emphasis added).)

As an initial matter, protection under Rule 26(c) extends beyond trade secrets to "other confidential . . . commercial information." Moreover, while the Protective Order did not define what constitutes a "customer list," the Magistrate Judge properly looked to Colorado law to determine the scope of that term. (Order at 4 (citing Colo. Rev. Stat. § 7-74-102(4)).) The Magistrate Judge set forth a clearly reasoned analysis, applying the relevant factors to the undisputed facts presented by the parties. (*Id.* at 4-5.) In fact, when applying the factors, the Magistrate Judge used the language MostChoice employed to describe the documents. (*Id.* at 5 (citing Defs.' Resp. at 3).) The Magistrate Judge found that the information contained in the documents constituted trade secrets under Colorado law. (*Id.* at 5-6.) The Court further concluded that NetQuote "sufficiently described the harm that might result from disclosure of the information" and thus, he was required to balance the potential harm with MostChoice's need for the information. (*Id.* at 6 (citing *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981)).) Ultimately, the Magistrate Judge found that "the information at issue falls within the definition of 'customer lists' in the Protective Order, and constitutes trade secrets protected from disclosure pursuant to Colorado law." (*Id.*) This finding was not clearly erroneous and, thus, should be accepted on review.

7

## CONCLUSION

For the foregoing reasons, NetQuote requests that Defendants' Objection to Magistrate's Order Upholding Attorneys Eyes Only Designation be denied.

Dated: November 16, 2007　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*s/ Heather Carson Perkins*
　　　　　　　　　　　　　　　　　　　　David W. Stark
　　　　　　　　　　　　　　　　　　　　Heather Carson Perkins
　　　　　　　　　　　　　　　　　　　　FAEGRE & BENSON LLP
　　　　　　　　　　　　　　　　　　　　3200 Wells Fargo Center
　　　　　　　　　　　　　　　　　　　　1700 Lincoln Street
　　　　　　　　　　　　　　　　　　　　Denver, Colorado 80203
　　　　　　　　　　　　　　　　　　　　Tel: (303) 607-3500 / Fax: (303) 607-3600
　　　　　　　　　　　　　　　　　　　　E-mail:　　dstark@faegre.com
　　　　　　　　　　　　　　　　　　　　　　　　　hperkins@faegre.com

　　　　　　　　　　　　　　　　　　　　Daniel D. Williams
　　　　　　　　　　　　　　　　　　　　Teresa Taylor Tate
　　　　　　　　　　　　　　　　　　　　FAEGRE & BENSON LLP
　　　　　　　　　　　　　　　　　　　　1900 Fifteenth Street
　　　　　　　　　　　　　　　　　　　　Boulder, Colorado 80302
　　　　　　　　　　　　　　　　　　　　Tel: (303) 447-7700 / Fax: (303) 447-7800
　　　　　　　　　　　　　　　　　　　　E-mail:　　dwilliams@faegre.com
　　　　　　　　　　　　　　　　　　　　　　　　　ttate@faegre.com

　　　　　　　　　　　　　　　　　　　　**Attorneys for Plaintiff NetQuote, Inc.**

# **CERTIFICATE OF SERVICE**

I certify that on this 16th day of November, 2007, I electronically filed the accompanying **NETQUOTE'S RESPONSE TO DEFENDANTS' OBJECTION TO MAGISTRATE'S ORDER UPHOLDING ATTORNEYS EYES ONLY DESIGNATION** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

    Ryan L. Isenberg, Esq.
    ISENBERG & HEWITT, P.C.
    7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
    Atlanta, GA 30328
    ryan@isenberg-hewitt.com

                                                *s/ Heather Carson Perkins*

fb.us.2417065.08