IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

**NETQUOTE INC**, a Colorado corporation,

    Plaintiff,

v.

**BRANDON BYRD**, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

**MOSTCHOICE.COM, Inc.**, a Georgia corporation

    Defendants.

## MOTION TO MODIFY PROTECTIVE ORDER, OR FOR RELIEF FROM PROTECTIVE ORDER

COMES NOW, Defendants in the above-styled action and herein file this Motion to Modify the Protective Order, or for Relief From the Protective Order as determined appropriate by the Court, and show this Court the following:

### Introduction

As the Court is well aware, Netquote and Mostchoice are competitors in the on-line insurance lead generation industry. Mostchoice employee Brandon Byrd submitted false submissions through the Netquote website, and one of its affiliates, and Netquote claims that it was harmed a result.

Over the objection of the defendants, the Court entered a protective order that allowed the parties to designate for themselves documents and deposition testimony as confidential, and

highly confidential- Attorney Eyes Only. Subsequently, the plaintiff has produced roughly 6,200 pages of documents, of which at least 5,200 and possibly more designated as Attorneys Eyes Only ("AEP").[1]

I. Due Process

"A party to litigation has a more fundamental interest in access to information than retained counsel or even an employee. [It has been previously] . . . suggested that the party's right to access might implicate due process considerations. The impingement on these rights is part of the consideration of hardship by restriction of access to information." ***Phillip M. Adams & Assocs. v. Dell, Inc.***, 2006 U.S. Dist. LEXIS 39173, 24-25 (D. Utah 2006). In the context of an Attorney Eyes Only provision contained in a protective order, "a party may not know all the facts in the case, but must rely on professional advisers outside the realm of competition with the producing party. However, that [approach] risks excluding the parties themselves from the litigation. The need for a party to effectively participate must be considered*. **ClearOne Communs., Inc. v. Chiang***, 2007 U.S. Dist. LEXIS 66133 (D. Utah 2007) (internal quotation omitted).

In ***Standard Space Platforms Corp. v. United States***, 35 Fed. Cl. 505, 509 (Ct. Cl. 1996), referred to in ***Dell***, in considering whether or not to prohibit disclosure of information deemed by the opposing party as highly confidential, it was found that a "to deny plaintiff the right to have its own president assist in its litigation, given defendant's flimsy showing, could well border on a denial of due process."

---

[1]This number is based on Neqtuote Bates numbers in the 2,500's and 3,700's of separate productions.

Finally, in discussing the ability to amend a complaint prior to trial, Courts have found that a party has the right to "know what is being tried, or at least have the means to find out. ***Power-One, Inc. v. Artesyn Techs., Inc.***, 2007 U.S. Dist. LEXIS 75685 (D. Tex. 2007) (citing ***Jimenez v. Tuna Vessel Granada***, 652 F.2d 415, 420 (5th Cir. 1981) ("noting that notice is a critical element of procedural due process, and denial of procedural due process is tantamount to "trial by ambush"").

II. Use of Attorneys Eyes Only Designation

There are largely two issues that need to be addressed. First, the mere production of thousands of pages of documents, which have been designated as attorney's eyes only has had the practical effect of shifting the burden to the defendant as to the issue of whether the documents have been properly, and in good faith, determined. This is so because, rather than having the plaintiff have to move the Court for an order protecting dissemination as to its documents, the plaintiff has in bulk just marked documents as attorneys eyes only without consideration as to whether they actually contained customer lists, proprietary computer information, or financial projections that served as the basis for the ability to make such a designation in the first place.

In support of this assertion, the defendant shows that plaintiff has improperly designated as highly confidential documents that contain no confidential information and copies of the same or similar documents with multiple designations.[2]

---

[2]<u>Filed Under Seal</u>
 See Exhibit "A" - Sample page of document marked as AEO and similar document marked as confidential.
 See Exhibit "B" - The same report with multiple designations.
 See Exhibit "C" - The same e-mails with multiple designations.
 See Exhibit "D" - Transcript of John Marosi (Page 24 Line 16 - Page 25 Line 21) indicating designation of AEO for publicly available information followed by publicly

In *THK Am. v. NSK Co.*, 157 F.R.D. 637, 645 (D. Ill. 1993) the Magistrate found that the designation of at least seventy-nine percent (79%) of the documents as "Attorney's Eyes Only" was "absurdly high," and that the overdesignation of documents restricts the ability of a party to prepare for trial.

III.  Mostchoice is not able to assist in its defense

As a consequence of the production of AEO designated documents, Mostchoice has been kept in the dark as to virtually every aspect of this case.  The plaintiff claims that it has been damaged, but has designated every document that would allow Mostchoice representatives to verify that contention as AEO.  The plaintiff claims to have lost customers, but has designated every document that identifies these customers as AEO.  The plaintiff produced a report with over 3,700 pages of documents from its expert, and other than a few pages that were produced by Mostchoice, designated the entire production as AEO.   The plaintiff has gone so far as to designate the identity of software run on its web server as AEO, even though this information is available to the general public, AND the plaintiff's own Director of Technology Development has requested assistance in a public forum identifying this software (See Exhibit "D")

Plaintiff has produced e-mails that are communications between it and the single largest customer it claims to have lost, and have designated those as AEO (Designated as SD507-SD576), even though the identify of that particular customer has already been disclosed to Mostchoice.  Certain documents that purport to support the plaintiff's claims were already ruled on as being properly designated as AEO [Dkt #97] , and as a consequence, if that ruling is upheld it exacerbates the problem that Mostchoice is being denied the opportunity to participate in its

---

available information.

own defense, and will most certainly be ambushed at trial as a result, and will have only heard the information for the first time at trial. Such a result prohibits communication and discussion about how the case should be handled and defended, and as a consequence deprives Mostchoice of the most basic part of due process, which is to have notice of the claims that have been brought.

Finally, as a result of the AEO designations made in this case, Mostchoice contends that it wasn't able to assist in the process of identifying what additional discovery is/was needed, or to assist its counsel in identifying follow-up questions in deposition, which may have already affected the ability of Mostchoice to have a fair trial in this matter.

IV.  Mostchoice Not Able to Prepare for Trial

In addition to the more obvious problem set forth above relating to assisting in the defense of its case, not allowing Mostchoice representatives access to these materials will cause three other known problems. First, Mostchoice cannot adequately prepare for examination of its own witnesses. Mostchoice possesses the technical understanding to assist counsel in preparing examinations that would refute the plaintiff's claims relating to its computer systems and lead quality. However, without knowing what the systems are or other AEO designated information (which covers virtually everything the plaintiff has produced, and a substantial amount of the plaintiff's deposition testimony) Mostchoice cannot assist its counsel. Second, and similarly, Mostchoice will be unable to assist its counsel in the preparation of cross-examination of Netquote's employees. Third, as a matter of human nature, the jury may well be prejudiced by expressions or body language of Mostchoice representatives who would be hearing or seeing information for the first time at trial, which may then affect the outcome of the trial.

V. Remedies

>For many years, the rules governing the conduct of litigation reflected the notion that a trial "was a battle of wits rather than a search for the truth," 8 C. Wright & A. Miller, Federal Practice and Procedure § 2001, at 14 (1970). Consequently, the courtroom was often the place in which a litigant first learned the details of his adversary's case. A basic shift in philosophy occurred with the advent of the discovery provisions of the Federal Rules of Civil Procedure. No longer were parties expected to embark upon a trial with only the barest knowledge of the facts and the hope that their superior advocacy skills would allow them to prevail. <u>Rather, the discovery rules were designed to ensure that a trial was "less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent</u>." United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S. Ct. 983, 986, 2 L. Ed. 2d 1077 (1958); accord, Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385, 388, 91 L. Ed. 451 (1947) ("(Civil) trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." (footnote omitted)). (emphasis added)
>
>***Koster v. Chase Manhattan Bank***, 93 F.R.D. 471, 473-474 (D.N.Y. 1982)

As currently constituted, the Court's protective order, combined with the plaintiff's AEO designations has resulted in secretive litigation. Much of the information contained in the documents marked as AEO the plaintiff simply doesn't want to the defendant to know, which is not the standard employed in the Order, which requires a showing of a "substantial risk of *serious* injury." [Dkt. #74 Section 2.5] (emphasis added).

It is not quite clear on what basis the Court previously rejected the suggestion that there are no third party experts in the on-line insurance lead generation industry,[3] but defendants have filed herewith the Affidavit of Martin Fleischmann, the President and C.E.O. of Mostchoice, affirming that there are no qualified experts in the on-line insurance lead generation industry who

---

[3] I can no more offer proof of a lack of qualified industry experts than I can offer proof that the tooth fairy doesn't exist.

are not affiliated with an existing competitor, and further deposes that even hiring individuals who are experts in the respective fields that are combined to make up the industry would be insufficient because of a lack of understanding as to how the various areas are interrelated.

Really, whether all of the information designated AEO is actually properly subject to such a designation is beside the point because the central question is "How little information about the plaintiff's claims is Mostchoice allowed to know before it has been deprived of due process?" It is not the defendants' position that there can be no such thing as a proper AEO designation, nor is it the contention that some of the information designated as AEO has been improperly designated, but the hardship created in requiring Mostchoice to litigate blindly is unacceptable and fundamentally unfair.

Mostchoice proposes as a remedy that the Court modify the protective order to allow necessary Mostchoice representatives, after the Court has ruled upon dispositive motions, or at the instant this case is first calendared for trial, to view the information produced in discovery with the AEO designation at the office of its counsel. The representatives will not be allowed to copy or remove the information. This would allow Mostchoice to participate in its defense, and keep them from using the information the plaintiff has prohibited them from seeing thus far.

VI.  Additional Matters

The Court has denied a request for additional discovery without prejudice, which is likely to be re-filed shortly. However, because of the secretive nature of the litigation, and the lack of expert witnesses available, Mostchoice contends that it is certainly possible that after reviewing the AEO materials in preparation for trial, it will result in additional information that Mostchoice was prohibited from asking during discovery because it has been handicapped by the plaintiff's

use of the protective order. To the extent that occurs and this Court denies Mostchoice the opportunity to revisit discovery of those issues, Mostchoice asserts that this too is a constitutional deprivation of its right to a fair trial, and trial process.

## Conclusion

Broad protective orders are premised on the notion that those orders allow parties to obtain and exchange discovery that may not be material, relevant, or used at trial. The plaintiff has clearly (and successfully) abused the AEO designation in the protective order to such a degree that it has inhibited the ability to assist counsel during litigation, and unless the order is modified, will preclude adequate trial preparation. Based upon the foregoing, the defendants respectfully request that the Court, either release the defendants from the protective order as was done in **THK Am., *supra*** or modify the protective order to reflect that upon either ruling of dispositive motions, or a month before a pre-trial order must be filed in the case, whichever is sooner, that the defendants' representatives can view AEO materials at the office of its counsel for the purpose of assisting with preparation for trial.

Dated this 21st day of November, 2007.

                                           **s/ Ryan Isenberg**
Ryan L. Isenberg, Esq.
Isenberg & Hewitt, P.C.
7000 Peachtree Dunwoody Road
Building 15, Suite 100
Atlanta, Georgia 30328
Telephone: 770-351-4400
Facsimile: 770-828-0100 (Fax)
Email: ryan@isenberg-hewitt.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2007, I served the foregoing Motion for Relief from Protective Order by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Heather Carson Perkins
Daniel D. Williams
Theresa T. Tate
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
dwilliams@faegre.com

                                                    **s/ Ryan Isenberg**