IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

**NETQUOTE INC, a Colorado corporation,**

    Plaintiff,

v.

**BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and**

**MOSTCHOICE.COM, Inc., a Georgia corporation**

    Defendants.

---

**DEFENDANT MOSTCHOICE.COM, INC.'S MOTION
FOR ADDITIONAL TIME TO OBTAIN NON-PARTY DISCOVERY,
TO CONTINUE THE FINAL PRE-TRIAL CONFERENCE, AND
TO IDENTIFY A REBUTTAL EXPERT WITNESS**

---

COMES, Now Defendant Mostchoice.com, Inc. and herein files this its Motion for Additional Time to Obtain Non-Party Discovery, to Continue the Final Pre-Trial Conference, and to Identify a Rebuttal Expert Witness and shows this Court the following:

### Introduction

The Court, having ruled on multiple motions at this time, is well aware of the basics of what this case is about. Consequently, Mostchoice will only refer to those facts critical to consideration of the instant motion, though certain information may be minimally repeated from previous filings.

dockets.Justia.com

In this motion, Mostchoice seeks additional time to obtain discovery from non-parties, and additional time to retain a rebuttal expert witness.

Pursuant to LR 6.1C, Mostchoice proposes that discovery be re-opened[1] through February 1, 2007 for the purpose of obtaining discovery from non-parties, and that Mostchoice have until March 28, 2007 to retain a rebuttal expert witness. Finally, Mostchoice requests that the Court reschedule the final pre-trial conference in this case from February 8, 2007 to May 18, 2007. To date, Mostchoice has not sought any extensions of time for additional discovery or to identify rebuttal expert witnesses.[2]

I. Non-Party Discovery

Mostchoice.com seeks to obtain documents from America Online and the two Netquote "national customers," it claims to have lost a result of the allegations in its complaint.

*A. AOL*

As has been noted in a previous Mostchoice filing [Dkt. #82] Netquote filed the instant action on October 31, 2006 in State Court against John Doe and used that filing to obtain subpoenas to serve on Juno (an internet service provider similar to AOL) for the purpose of identifying the user of the IP address that was submitting fictitious leads to Neqtuote. Netquote amended its complaint on January 4, 2007 naming Melissa Buschacher as a result of Juno's response.

---

[1] Mostchoice sought a discovery extension, which was denied without prejudice prior to the discovery period expiring [See Dkt. #104].

[2] Plaintiff obtained 2 extensions of time to disclose its expert witness, which naturally extended the time for Mostchoice to identify a rebuttal expert.

As the Court is aware, Mostchoice has filed a claim against the plaintiff for Click Fraud, which it has defined as occurring when "in PPC advertising when a person imitates a legitimate user of a web browser clicking on an ad, for the purpose of generating a charge per click without having actual interest in the target of the ad's link."

Included as a topic in Mostchoice's notice of deposition of Netquote was the identity of the plaintiff's IP addresses. When asked, Neqtuote's corporate designee Craig Shine testified that he did not know what those were, and he did not have a list with him (See Exhibit "A" Deposition of Craig Shine Page 86 Line 20 - Page 87 Line 4 taken on September 25, 2007). Netquote subsequently produced a list of IP Addresses on October 10. Using this information, Mostchoice was able to identify several thousand illegitimate clicks to its website, which were determined to have likely originated from Netquote.[3] Mostchoice seeks documents from AOL to verify its findings, and believes that with the IP addresses that were assigned by the proxy server will find additional click fraud associated with Netquote.

*B. National Account*

On November 16th Plaintiff deposed John Doria a former employee of SBLI, a national account plaintiff claims to have lost a result of Byrd's submissions. Doria testified substantially that (1) the decision to terminate its trial relationship with Netquote was the result of a cost-benefit analysis (2) that the leads received from Brandon Byrd was a "significant" factor in the decision (3) that it sought and was granted credit for leads that amounted to roughly three percent

---

[3] The methodology by which this determination was made is attached hereto as Exhibit "B."

(3%) of the leads they received and (4) that Doria was not the decision maker.[4]

Defendant Mostchoice seeks to serve SBLI with a subpoena to produce documents related to its analysis of the termination decision and the communication of that decision to Netquote. This serves the purpose of (1) resolving the apparent conflict between the testimony that the leads received were significant and a cost-benefit analysis which was not likely to have been impacted by the 3% even if everyone of the 3% were from Byrd and (2) determine if that cost benefit analysis, the result or its decision was communicated in writing to Netquote.

II.  Time to Retain Rebuttal Expert

Plaintiff retained Stephen Duree as an expert witness as early as July, 2007, and provided him with substantial data, notably in an electronic format (See Exhibit "C" Deposition of S. Duree Page 87 Lines 2-7, SD 77-78) Duree, and others working with him, used the data to create spreadsheets that allowed him to create a formula to reach his conclusions (See Exhibit "C" Deposition of S. Duree Page 30 Line 21 – Page 31 Line 2 ; Page 38 Lines 8-23).  Plaintiff converted these spreadsheets into *.pdf format and produced them on October 1st.

Because the documents were produced in *.pdf, and not in native format as required under FRCP § 34,[5] Mostchoice has been deprived of the ability to know and understand what the

---

[4]The transcript has not been received yet, and this is based on my recollection of the deposition.  The 3% is a calculation based upon actual numbers used during the deposition.

[5]FRCP 34(b)

Unless the parties otherwise agree, or the court otherwise orders:

  (i) a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request;
  (ii) if a request does not specify the form or forms for producing electronically stored

opinions of the expert were based upon. The files, as produced, did not contain the embedded formulas that demonstrate the calculations that support the analysis. Mostchoice requested the documents in electronic format on October 3rd (See Exhibit "D"). Only on November 8th did the Plaintiff agree to produce the excel spreadsheets, and then indicated they were not available until after December 3rd when the expert returns from vacation (See Exhibit "E").

Only in the excel format can the calculations be tested. As a consequence there was nothing to provide to an expert, other than the 3,500 pages of *pdf documents. The Court should keep in mind that it took roughly five months for the plaintiff's expert to come up with his opinions, and that was with the ability to manipulate the raw data so it could be organized for his purposes. Under the scheduling order in place, Mostchoice only had one month to identify a rebuttal expert. As it turns out though, without the formulas and electronic spreadsheets, it would have taken several months for a rebuttal expert to analyze the data.[6]

With the spreadsheets and formulas, Mostchoice can have an expert review that information within a month (though not likely this month considering its already December).

Had Netquote provided the excel spreadsheets on October 1, or even in response to the October 3rd letter, then Mostchoice would have had the ability to have them reviewed by an expert for the purpose of rebuttal, and not allowing Mostchoice additional time to retain a

---

information, a responding party must produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable; and
  (iii) a party need not produce the same electronically stored information in more than one form.

[6] Among the reason for requesting the documents in electronic format are the size of the font of some of the documents. See Exhibit "F" filed under seal as an example.

rebuttal expert witness does nothing more than reward Netquote for not producing the documents in an electronic format as required, and unfairly punishes Mostchoice without reason.

III. Anticipated Claims of Prejudice

In the event the plaintiff raises claims of prejudice in its response, and should the Court rule on this motion prior to any Reply Brief being filed, Mostchoice incorporates by reference Section V. of its Reply Brief [Dkt. #105] relating to its prior request for additional discovery.

III. Scheduling Order

> Once a deadline established the scheduling order has passed, a party must demonstrate good cause to extend the deadline. Fed. R. Civ. P. 16(b). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . ***EEOC v. Joslin Dry Goods Co.***, 2007 U.S. Dist. LEXIS 49739 (D. Colo. 2007) (internal citations omitted).

> The fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established in the scheduling order has expired constitutes good cause to extend that deadline ***Stanerson v. Colo. Blvd. Motors, Inc.***, 2006 U.S. Dist. LEXIS 80124 (D. Colo. 2006) (internal citation omitted).

While there is no request to amend pleadings, the request made by the defendant is the result of learning information late in the discovery process. The IP addresses were not provided until October 10th which required substantial database analysis by Mostchoice. The depositions of the national accounts were only taken on November 16th and it was then that defendant Mostchoice learned that additional documents were needed.

With respect to the additional time to retain a rebuttal expert witness, the data necessary to have the expert review still has not been received, and the defendant would certainly not have

been able to have anyone review the 3,500 pages of documents produced within the original thirty days allowed in the current scheduling order and use that information to form an opinion.

Finally, it is worth noting that Defendant Mostchoice, as a matter of courtesy consented to two extensions of time requested by the plaintiff to disclose its expert witness, first in August while during the settlement conference in this case, and again in September, this despite the plaintiff having actually retained its expert as early as July, and perhaps sooner.

While it is most unfortunate that this courtesy appears to have been a one way street, the additional time the plaintiff needed for its expert to complete his analysis demonstrates that the thirty days allowed in the scheduling order was woefully inefficient. Further, had the plaintiff disclosed that its expert needed three months to prepare his report with electronic data that hadn't even yet been produced in paper form, it would have alerted the defendant to the fact that it would take approximately four months to have an expert analyze the data and issue an opinion, and would have allowed the defendant to demand an equal amount of time.

## Conclusion

Based upon the foregoing, Mostchoice contends that it has demonstrated good cause for additional time to obtain non-party discovery and identify a rebuttal expert witness, and respectfully requests the Court grant this motion.

[Signature on next page]

Dated this 30th day of November, 2007.

                                    **s/ Ryan Isenberg**
                                    Ryan L. Isenberg, Esq.
                                    Isenberg & Hewitt, P.C.
                                    7000 Peachtree Dunwoody Road
                                    Building 15, Suite 100
                                    Atlanta, Georgia 30328
                                    Telephone: 770-351-4400
                                    Facsimile: 770-828-0100 (Fax)
                                    Email: ryan@isenberg-hewitt.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2007, I served the foregoing Motion for Relief from Protective Order by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Heather Carson Perkins
Daniel D. Williams
Theresa T. Tate
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
dwilliams@faegre.com

                                    **s/ Ryan Isenberg**