# EXHIBIT "C"

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CIVIL ACTION NO. 07-cv-00630-DME-MEH

---

VIDEODEPOSITION OF:   STEPHEN A. DUREE
EXAMINATION DATE:     November 2, 2007

---

NETQUOTE INC., a Colorado corporation,

Plaintiff,

v.

BRANDON BYRD, an Internet user making use
of the IP Addresses 64.136.27.226 and
64.136.26.227, and,

MOSTCHOICE.COM, INC., a Georgia corporation,

Defendants.

---

      PURSUANT TO NOTICE, the videodeposition
of STEPHEN A. DUREE was taken at 9:25 a.m., on
November 2, 2007, at 3200 Wells Fargo Center,
1700 Lincoln Street, Denver, Colorado 80203,
before Patricia S. Newton, Registered
Professional Reporter and Notary Public in and
for the State of Colorado, said videodeposition
being taken pursuant to the Federal Rules of
Civil Procedure.

            Patricia S. Newton
    Registered Professional Reporter

1  information did you use and which parts were
2  yours?
3          A    Without the benefit of the
4  document so I can see all the columns, you are
5  testing a bit of my memory as opposed to the
6  ability to tell you in more definitive terms.
7  But in general, I am using the projection that is
8  set forth in Exhibit 14 to the Quist document
9  year by year out for seven years, I believe it
10 is, with discount -- with attrition of customers
11 -- they call it "decay factor" -- over that
12 seven-year period of time.  I believe they
13 incorporate a 25 percent discount factor for
14 value and they come back to the present value of
15 a revenue stream which turns out to be a 3.2
16 times value.
17         Q    Now, am I correct that the
18 document we're looking at, SD -19, was prepared
19 on some kind of spreadsheet program?
20         A    It was.
21         Q    Okay.  So if we were looking at
22 that electronically, there would be a formula
23 that -- if we looked behind the 3.1969 number,
24 that we would be able to see?
25         A    You would find that that number

1  is derived by other values on that schedule, but
2  you'd see the formulas themselves, yes.
3      Q  So as I understand it, the Quist
4  report assumes that the life span of NetQuote's
5  customers is seven years; is that correct?
6      A  It assumes that the decay factor
7  runs out that amount of time.  That's not to say
8  that every customer that is there will be gone in
9  seven years, but as a simplifying assumption,
10 that is the assumption they made.
11     Q  And that's based on represen-
12 tations from NetQuote's management?
13     A  That implicitly is true.
14     Q  Did you have an opportunity --
15 well, let me strike that.
16     Did you receive information from
17 NetQuote or from its counsel that would allow you
18 to determine the number of customers that in fact
19 have been with NetQuote for seven years?
20     A  I don't know if I -- if -- within
21 the computer media that I received, if I could
22 determine that number.  I know that several have
23 been because of the start dates that are
24 identified for some, but I don't believe I've had
25 access to media that addresses each and every

1  an assumption of rationality on the part of the
2  parties entering into the transaction?
3          A    It assumes that neither are under
4  a compulsion to sell or buy and that they're
5  informed of the relevant facts and circumstances.
6  Most of us would think that's rational, but I'm
7  not sure everybody would.
8          Q    All right.  Is the damage
9  calculation -- we talked about the little less
10 than a million dollars for HSBC and --
11         Well, let me ask:  Is there a similar
12 resulting number for all of the accounts that you
13 have quantified?
14              MS. PERKINS:  Object to the form,
15 confusing.
16         A    There is a mechanical determina-
17 tion of value for each account based on that
18 formula.  The conclusion I have reached is an
19 opinion in the aggregate and not with respect to
20 customer by customer.  But by the virtue of
21 mechanics and the arithmetic, there is a
22 pro-forma valuation for each one; albeit, it is
23 in the aggregate that my opinion is presented.
24         Q    (BY MR. ISENBERG)  Okay.  And let
25 me -- let me ask probably a little bit different

1  rounds to .0.  It's less than .1 of a percent.
2          Q    When were you engaged by
3  NetQuote?
4          A    At or about the time the date on
5  my engagement letter is.  I would say three
6  months before the report was issued, but I don't
7  have a good recollection.
8          Q    Were you provided with any
9  damages estimates or calculations from NetQuote
10 before you started doing any work?
11         A    No.  During that work, I received
12 Exhibit 205.
13         Q    Are you aware that NetQuote, in
14 its disclosures -- its mandatory disclosures in
15 this case, estimated its damages at $2 million?
16         A    I don't recall knowing about
17 mandatory disclosure, but that would be
18 consistent with Exhibit 205.
19         Q    All right.  I've handed you what
20 has been marked as Exhibits 206 and 207, and I
21 believe Exhibit 206 reflects credits issued in
22 dollar amounts to NetQuote's customers for 2007.
23         A    Yes.
24         Q    Would you look at -- I guess it
25 should be SD -242.

**Attachment – A**
Stephen A. Duree, CPA/ABV, MBA, CFE
sduree@duree.com
Larry M. Barton, CPA/ABV, DABFA
lmbarton@duree.com

## DUREE BARTON
Professional Corporation
Certified Public Accountants
1580 Logan Street, Suite 520
Denver, CO 80203-1941



Telephone (303) 293-9966
Fax (303) 293-9952
www.duree.com

# Documents

The following is a listing of documents, data and other information specifically considered in the process of our procedures and analysis to date in conjunction with this report. Documents and interview information identified in the body of our report may not be included in this listing.

| NO. | DOCUMENT DESCRIPTION | COMMENT |
|---|---|---|
| 1. | Meetings and telephone conferences with counsel | |
| 2. | Third Amended Complaint | |
| 3. | NetQuote's Response to Motion to Dismiss | |
| 4. | Quist Valuation April 14, 2006 Allocation of Purchase Price of NetQuote, Inc. as of August 16, 2005 (draft and final) | |
| 5. | NetQuote's First Set of Interrogatories to MostChoice.com | |
| 6. | NetQuote's Request for Production | |
| 7. | NetQuote's Second Set of Interrogatories to MostChoice.com | |
| 8. | NetQuote's Second Set of Requests for Production | |
| 9. | Data files provided by NetQuote Including:<br>- Duree Barton Mostchoice data.xls<br>- Sales Process changes since6-2006.xls<br>- MostChoice Malicious App Impact Raw data Level 2 – Accounts Not Affected by Apps With Monthly Revenue and Lead Credits .xlsx<br>- Juno Bad Apps Cost Summary 040207.xls<br>- Juno Bad Apps Cost Summary 092807.xls<br>- Report_MC_Affected Accounts_Statuses_20070920.xls<br>- Statement Summary 091107.xls<br>- MostChoice_Report_20070830.zip<br>- Final Quist Valuation_Revised Draft_Netquote 141_as of 08016005.pdf<br>- RevenueRefundSummary.xls | |

Attachment - A - Documents
Continued
Page 2

| NO. | DOCUMENT DESCRIPTION | COMMENT |
|---|---|---|
| 10. | Report from Shina Culberson – 07_058_NetQuote_Final_02282007.xls and related telephone conferences | |
| 11. | Meetings with NetQuote personnel including:<br>Greg Coccari<br>Craig Shine<br>Brian Ronney<br>John Marosi<br>Scott Hanyen | |
| 12. | E-mails between HSBC and NetQuote personnel and related Word and Excel documents | |