# EXHIBIT "D"

Dockets.Justia.com

# Ryan Isenberg

**From:** Ryan L. Isenberg, Esq. [ryan@isenberg-hewitt.com]
**Sent:** Wednesday, October 03, 2007 5:59 PM
**To:** 'Williams, Daniel D.'
**Subject:** Netquote v. Mostchoice

Please see attached.

Ryan L. Isenberg, Esq.
Isenberg & Hewitt, P.C.
7000 Peachtree Dunwoody Road
Building 15, Suite 100
Atlanta, Georgia 30328
770-351-4400 (Voice)
678-990-7737 (Fax)
www.isenberg-hewitt.com

October 3, 2007

Daniel D. Williams, Esq.
Faegre & Benson
1900 Fifteenth Street
Boulder, Colorado 80302         **VIA FEDERAL EXPRESS AND E-MAIL**

Re:   Netquote v. Mostchoice
      Discovery Issues

Dear Dan:

I am writing to address certain issues arising out of the conduct of discovery in this case.

**AEO Designation**

As I anticipated, your client has abused its use of the attorney's eyes only ("AEO") designation that was allowed in this lawsuit for customer lists, financial projections, and proprietary computer methods.

You have produced roughly 3,500 pages of documents in this litigation, and over half by far have been inappropriately designated as attorney's eyes only with most of the rest being designated as merely confidential. Approximately 1,450 pages of what appeared even to your client to be documents that were replicated at least three times don't contain any customer information, financial projections, or proprietary computer systems were marked as attorney's eyes only.[1]

---

[1] NQ designated pages

| | | |
|---|---|---|
| 388-636 | 248 | (AEO-HC) |
| 647-886 | 239 | (AEO-HC) |
| 898-1137 | 239 | (AEO-HC) |
| 1141-1287 | 146 | (C) |
| 1293-1533 | 240 | (AEO-HC) |
| 1768-2016 | 248 | (AEO-HC) |
| 2022-2261 | 239 | (AEO-HC) |

Further, certain documents including the HSBC report that is duplicated at least 4 times is designated as AEO confidential, confidential, and not designated at all (See NQ360, 382, etc.).

Approximately 420 or so e-mails were produced. Around 80 were not designated under the protective order, a little less than 80 were designated as confidential, and the remaining e-mails were designated as AEO confidential. While some of these e-mails may contain the name of a current customer, none contain actual customer lists, financial projections or proprietary computer filters.

For the documents discussed above, I am notifying you in writing that I object to the designation of attorneys eyes only. For current customer names who may appear in any document referred to above, excluding those discussed below, I will accept a redacted version that is marked as confidential in an effort to resolve this dispute without court intervention.

I would like the multi-page document that is numbered 2467-2495 produced in an electronic format. I would then propose to delete the name column, and in that state the document could be merely confidential.

I specifically object to the designation of documents NQ 2396-2398 as attorneys eyes only. They do not contain the names of any customers, financial projections, or proprietary computer systems.

**Deposition Responses**

There will be more to follow once I have received copies of the deposition transcripts, but the Netquote internet protocol address range was included as a topic on the notice and neither Mr. Shine, nor Mr. Marosi were aware of the information relating to the questions on that subject. I would therefore request that your client provide to me a complete list of all internet service providers from 2004 through the present and the internet protocol address range of the addresses used by Netquote from 2004 to the present.

**Discovery Responses**

I have still not received your client's gross revenue and profits for the past three years. Rather than debate about the form or what constitutes profit, your client can either produce the information in the same format as Mostchoice did, or simply provide its year end financial statements for 2005 and 2006, and its most recent year to date financial statement for 2007.

**Additional / Extension of Discovery**

As I indicated, I would like additional discovery depositions in this case, though I believe I have the right to take any deposition of any witness for purposes of preservation of testimony at trial if that witness resides more than 100 miles away from the courthouse. In Netquote's Rule 26 disclosures you have identified seventeen (17) people as having knowledge of facts related to this case and additional Netquote employees were identified as being the proper people at deposition other individuals were identified as having knowledge of facts related to this case. In addition, you have now identified 159 customers who are claimed to have terminated their relationship with Netquote because of Mr. Byrd's submissions.

Under the circumstances, their can be no question that the additional depositions I seek are within the scope of discovery, which leaves the only question of why I should not be allowed to take them. In a comment to FRCP 26(b)(2)(b) it is said that "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."

Rather than increase the number of depositions, I would propose that Mostchoice be allowed to take a total of 150 hours of non-expert depositions in this case including what has already been taken. This should provide sufficient additional time to depose the 159 customers that Netquote claims to have lost from the Byrd submissions.

I would further propose that discovery be extended through June, 2008 to accomplish the scheduling of these depositions. In addition to the depositions that are necessary to our investigation of your claim for damages, due to the refusal or failure to have identified Netquote's IP address range, Mostchoice needs additional time to analyze its database once that information is received.

Finally, I would propose that Mostchoice be allowed additional time to retain any expert witness(es) in light of the fact that despite having served discovery on Netquote in May, it wasn't until late September that Netquote has finally identified the customers it claims to have lost as a result of the the number of customers claimed to have been impacted was provide to me, though your expert, who appears to have been provided with electronic data, has had substantially more time to review and analyze that data, which in my view creates a handicap. This is notwithstanding the lack of production of the internet protocol address range information, which precludes my client from analyzing the full extent of all click fraud.

Daniel D. Williams, Esq.
October 3, 2007
Page 4

---

I will look forward to discussing these matters further should you choose to do so. However, because of my schedule (I have a conference on Friday October 5 out of state, and a AAA arbitration on October 9) I will not be available until you are hear for the continued Mostchoice depositions for such a discussion.


Sincerely,


Ryan L. Isenberg