## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

## NETQUOTE'S RESPONSE TO MOSTCHOICE'S SECOND MOTION FOR ADDITIONAL DISCOVERY

Plaintiff NetQuote, Inc. ("NetQuote"), through undersigned counsel, responds to Defendant MostChoice.com, Inc.'s Motion for Additional Time to Obtain Non-Party Discovery, To Continue the Final Pre-Trial Conference and To Identify a Rebuttal Expert Witness, Dkt. # 124 ("Second Motion"), as follows:

### INTRODUCTION

In its prior motion to extend the discovery period for this case, MostChoice asked for a sweeping seven-month extension to the discovery cut-off date and a similar extension to the date to file motions for summary judgment. (MostChoice.com, Inc.'s Motion for Leave to Take Additional Depositions, for Additional Time To Complete Written Discovery, and To Modify the Scheduling Order Accordingly, p. 8 (Dkt. # 93) ("First Motion").) This Court granted the

motion in part and denied it in part. (Dkt. # 104.) For its Second Motion, MostChoice seeks again to extend fact discovery, this time for five months to permit it to designate a rebuttal expert and for two-and-a-half months for it to take non-party discovery. MostChoice also seeks to delay the final pre-trial conference for three-and-a-half months. The Second Motion, like the first, fails to establish good cause for the extraordinary relief requested.

The Second Motion should be denied for the following reasons:

*First*, MostChoice requests additional time to take non-party discovery relating to its remaining counterclaim and NetQuote's damages, but it does not provide any valid reason why this discovery could not have been completed by the November 20, 2007 discovery cut-off date. After ignoring its own counterclaim through much of discovery, MostChoice, only now that discovery has closed, shows interest in pursuing it. With respect to its request for discovery from SBLI relating to NetQuote's damages, MostChoice does not explain why it did not issue the subpoena it now proposes between October 1, 2007, when NetQuote disclosed the damages it was seeking because of SBLI's termination of its account with NetQuote, and discovery's close almost two months later. That MostChoice chose not to do so then is not good cause to amend the Scheduling Order now.

*Second*, MostChoice seeks a five month extension for it to offer a rebuttal expert, arguing that NetQuote's expert took a similar amount of time to prepare a report and that it was somehow unable to retain an expert because NetQuote produced its expert's working papers as static images rather than as Microsoft Excel files. But even in this Second Motion, MostChoice *still* does not claim to have retained – or even identified – a damages expert. MostChoice fails to provide any cogent reason why an expert could not have provided an analysis of NetQuote's

damages claim with the static copy of NetQuote's report that was produced on October 1, 2007. To the extent that the arithmetic formulas in the spreadsheets MostChoice complains about really would be necessary for a rebuttal expert to examine – and given the nature of the spreadsheets, that is highly unlikely – MostChoice could have made all other required disclosures under Fed. R. Civ. P. 26(a)(2) and then supplemented its timely-filed expert report after receipt of the Excel files. The fact that MostChoice chose not to do so demonstrates that the real issue here is not formulas in spreadsheets but rather that MostChoice did not decide that it actually wanted to retain a damages expert until after the deadline for it to do so had passed. Such changes in litigation strategy are not good cause for amendments to the Scheduling Order.

*Third*, there is absolutely no reason to delay the final pre-trial conference in this matter. This case is a straightforward one that can and should be brought to trial within a year, as contemplated by Judge Ebel's Pretrial and Trial Procedures. There is no valid case management reason for the relief MostChoice seeks. The sole effect of the proposed delay would be for MostChoice to postpone the date when it is enjoined from sabotaging NetQuote's customer relationships and marketing to those customers and when MostChoice is forced to pay for the damage it has caused.

## ARGUMENT

### I. THE LEGAL STANDARD GOVERNING AMENDMENTS TO THE SCHEDULING ORDER.

The Scheduling Order in this action provides that it may be amended "only upon a showing of good cause." Scheduling Order ¶ 13 (Dkt. # 26); *accord* Fed. R. Civ. P. 16(b) (order shall not be modified "except upon a showing of good cause"). To meet the "good cause" standard for extending discovery deadlines, the moving party must "demonstrate that the

deadline cannot be met with due diligence." *Treat v. Am. Furniture Warehouse, Co.*, 2007 WL 2175186 at *2 (D. Colo. Jul. 26, 2007); *accord Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). This Court has explained that the "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Hannah v. Roadway Express, Inc.*, 200 F.R.D. 651, 654 (D. Colo. 2001).

## II. MOSTCHOICE LACKS GOOD CAUSE FOR ITS REQUEST TO TAKE ADDITIONAL NON-PARTY DISCOVERY.

### A. There Is No Good Cause To Extend the Fact Discovery Deadline To Permit Non-Party Discovery Concerning MostChoice's Counterclaim.

On June 15, 2007, MostChoice asserted two counterclaims against NetQuote, and it amended the counterclaims and added an additional one on August 6, 2007. (Dkt. ## 33, 62.) After conducting very little discovery with respect to any of the counterclaims, MostChoice voluntarily dismissed two of them on November 27, 2007. (Dkt. # 121.)

MostChoice now seeks leave to issue a non-party subpoena to AOL after the discovery cut-off to try to find some support for its sole remaining counterclaim, alleging click fraud. But there is no reason MostChoice could not have served its subpoena between the filing of its "click fraud" counterclaim on June 15, 2007 and the discovery cut-off date of November 20, 2007. (Dkt. # 71.)

MostChoice claims its proposed extension is necessary because, when it asked what IP addresses NetQuote uses at a Rule 30(b)(6) deposition on September 25, 2007, NetQuote's corporate representative replied that he had not memorized the various 10-digit IP addresses that NetQuote uses. (Second Mot. p. 3.) That argument fails for the following reasons.

First, while MostChoice argues that it needed the IP addresses to determine what non-party discovery it would pursue, it does not explain why it did not send an interrogatory to NetQuote in the summer of 2007 asking for the IP addresses. Had it done so, it could have had the information within 30 days. Second, NetQuote did not delay in providing the IP addresses once they were requested. As MostChoice admits, when it requested the list of NetQuote IP addresses (for the first time) at the September 25, 2007 deposition, NetQuote produced the list less than three weeks later on October 10, 2007. (*Id.*) Third, MostChoice offers no reason at all why it could not have issued its subpoena to AOL in the intervening six weeks between when it received the IP addresses from NetQuote *on October 10, 2007* and the discovery cut-off. Because MostChoice failed to act with "due diligence," there is no "good cause" to grant the relief it requests. *Treat*, 2007 WL 2175186 at *2.[1]

### B. There Is No Good Cause To Extend the Fact Discovery Deadline To Permit Non-Party Discovery Concerning Damages.

MostChoice also requests a discovery extension to issue a document subpoena to SBLI, one of the two national accounts NetQuote lost as a result of MostChoice's barrage of bogus insurance quotation requests through NetQuote's websites. On November 16, 2007, NetQuote took the deposition of John Doria, a former SBLI executive who had lead responsibility for

---

[1] In support of its motion, MostChoice contends that "several thousand" clicks on MostChoice's paid on-line advertisements were improper and "have likely originated from NetQuote." (Second Mot. p. 3 & Ex. B.) But the support for this statement, a one-page document apparently written by MostChoice or MostChoice's counsel, does not connect any NetQuote IP address with any of the allegedly improper clicks. (*Id.* at Ex. B.) Rather, the document speculates that various AOL users are NetQuote employees based on unsubstantiated assumptions. Such speculation is wrong, and if it were deemed admissible evidence, NetQuote would disprove it. The fact of the matter is that MostChoice has not one shred of admissible evidence that NetQuote or any of its employees clicked on MostChoice's paid on-line advertisements thousands of times as MostChoice now alleges.

5

SBLI's relationship with NetQuote. It took the deposition to preserve Mr. Doria's testimony for trial because Mr. Doria is outside of the subpoena power of this Court, and MostChoice conducted a cross-examination. MostChoice now seeks a second opportunity to attempt to refute Mr. Doria's testimony.

There is no reason MostChoice could not have issued a document subpoena to SBLI prior to the close of fact discovery and before Mr. Doria's deposition. MostChoice had been on notice as to the magnitude of NetQuote's damages claim with respect to SBLI for seven weeks between the date of NetQuote's expert disclosures on October 1, 2007 and the deposition on November 16, 2007. On October 18, 2007, ***NetQuote*** served a Notice of Subpoena attaching a document subpoena that it had issued to SBLI. (Attached as Ex. A.) Counsel for NetQuote subsequently provided the results from that subpoena to counsel for MostChoice. After consulting with MostChoice's counsel concerning the proposed date for a deposition of Mr. Doria, NetQuote noticed the deposition for November 16, 2007. (Notice attached as Ex. B.) MostChoice failed to issue its own subpoena to SBLI: (1) after learning the amount of NetQuote's damages claim on October 1, 2007; (2) after receiving a copy of NetQuote's subpoena to SBLI on October 18, 2007; and (3) after receiving a notice of deposition for Mr. Doria on November 7, 2007. Its lack of diligence in preparing for Mr. Doria's deposition is not "good cause" to issue a document subpoena after the close of fact discovery.

**III. MOSTCHOICE LACKS GOOD CAUSE FOR ITS REQUEST FOR A FIVE-MONTH EXTENSION TO THE DEADLINE TO DISCLOSE REBUTTAL EXPERTS.**

MostChoice's contention that it delayed retaining an expert because it received various spreadsheets created by NetQuote expert Stephen A. Duree in .pdf format is not plausible. The

6

truth of the matter is that MostChoice did not decide that it wanted to hire an expert until after the date when its rebuttal disclosures were due, and it is now seeking to use a manufactured discovery dispute in an attempt to buy more time.

In its first motion to extend the date for it to hire a rebuttal damages expert, MostChoice candidly admitted that it still had not decided even *whether* it would be retaining an expert. (First Mot. p. 9 ("***should MostChoice choose*** to retain an expert" (emphasis added)); *accord* Letter from R. Isenberg, Esq. p. 3 (attached to Second Mot. as Ex. D) (requesting that "Mostchoice be allowed additional time *to retain* any expert witness(es)" (emphasis added)); Scheduling Order ¶ 8(d)(1) ("Defendants . . . are unable to presently anticipate the need for an expert witness.").) In its Second Motion, MostChoice still does not claim that it has actually hired an expert or that any expert it has retained has requested to see Mr. Duree's spreadsheets in Microsoft Excel format. Rather, MostChoice asserts without any support whatsoever that the production of Mr. Duree's spreadsheets as .pdf files is preventing a yet-to-be-determined MostChoice rebuttal expert from preparing the required Rule 26(a)(2) disclosures. MostChoice's argument boils down to a claim that good cause exists to extend the date for rebuttal expert disclosures by five months based on speculation as to what an expert that it has not yet hired might need to prepare a rebuttal expert report.

MostChoice's claimed difficulties in using the version of Mr. Duree's spreadsheets produced by NetQuote appear to be invented. As an initial matter, MostChoice rightfully does not contend that all 3500 pages of documents produced in .pdf format are Excel spreadsheets. (Second Mot. p. 5.) Many of these documents were static images that Mr. Duree received on paper or as .pdf files and they do not exist in Excel format. And the spreadsheets themselves,

one of which MostChoice attaches as Ex. F to its motion, show that many of the "formulas" MostChoice claims to need are nothing more than the simple summing of the data above to reach various subtotals. MostChoice's challenge to Mr. Duree's expert testimony has not focused on any alleged arithmetic errors in his spreadsheets, but on a questioning of his overall methodology. MostChoice does not explain why the documents produced to date would have been insufficient for a rebuttal expert to provide any opinions as to methodological issues underlying Mr. Duree's report.[2]

MostChoice also misstates the timeline for its request for Mr. Duree's spreadsheets in electronic form. MostChoice claims that it made the request on October 3, 2007, and it attaches a letter sent to undersigned counsel on that date. But the letter MostChoice attaches does ***not*** request that the spreadsheets Mr. Duree created be produced in Excel format. (*See* Letter from R. Isenberg, Esq. at 3, attached as. Ex. D to Second Mot.) Counsel for NetQuote's recollection is that the request for Mr. Duree's spreadsheets in Excel format was made for the first time at Mr. Duree's deposition on November 2, 2007, which was ***after*** the deadline for MostChoice to have made any rebuttal expert disclosures.

MostChoice's contention that Fed. R. Civ. P. 34(b)(ii) required the spreadsheets to be produced in a different manner also is without merit. That rule specifically allows documents to be produced "in a form or forms that are reasonably usable." NetQuote did so, and in response to the request from MostChoice's counsel, it has now produced the documents twice, both as static images and as Microsoft Excel files.

---

[2] MostChoice complains as well about the font size for the spreadsheets. (Second Mot. p. 5 n.6). This concern would have been resolved had MostChoice printed the spreadsheets on larger paper, as Mr. Duree recommended during his deposition. (Duree Depo 48:10-15, attached as Ex. C.)

8

MostChoice, on the other hand, has made no disclosure at all pursuant to Fed. R. Civ. P. 26(a)(2). It has not identified the name of any rebuttal expert witness as required under Rule 26(a)(2)(A); nor has it disclosed any qualifications of any such expert witness as required under Rule 26(a)(2)(B); nor has it disclosed the opinions of any such expert witness, including any opinions concerning any subject other than the specific calculations in the spreadsheets. MostChoice cannot possibly blame its failure to make such disclosures on the manner in which Mr. Duree's spreadsheets were produced because the formulas in the spreadsheets would be irrelevant to most of the required disclosures. Had MostChoice truly believed that it needed the formulas embedded in Mr. Duree's spreadsheets for its expert to analyze them, MostChoice could have made all other required disclosures under Rule 26(a)(2) and then supplemented its expert report pursuant to Rule 26(e) upon receipt of an Excel version of the spreadsheets.

Finally, MostChoice does not show good cause as to why it would need until "March 28, 200[8]" to produce an expert report. (Second Mot. p. 2.) MostChoice contends that, because NetQuote retained its damages expert over the summer in advance of making its October 1, 2007 expert disclosure, MostChoice should now be permitted an additional five months for it to make expert disclosures. (*Id.* p. 4-5.) MostChoice would have this Court penalize NetQuote for proceeding diligently and retaining an expert early in the litigation.

It is commonplace for a party to retain a potential rebuttal expert prior to receipt of an opposing party's expert report so that a rebuttal expert can be in a position to draft a rebuttal report immediately upon receipt of the expert's report and within the timeframe contemplated by the scheduling order governing the case. Had MostChoice not wanted to follow this procedure, it could have raised the issue at the scheduling conference in this matter and requested an

extensive lag time between receipt of Plaintiff's damages expert report and the required disclosure of any rebuttal expert testimony. It failed to pursue either of these options and instead has requested an enormous delay to the case schedule that would require a delay of the trial in this matter. Such conduct is not the type of "due diligence" required to demonstrate "good cause" for an amendment to a scheduling order. *Treat*, 2007 WL 2175186 at *2.

## IV. THERE IS NO VALID REASON TO POSTPONE THE FINAL PRE-TRIAL CONFERENCE IN THIS MATTER.

MostChoice requests that the final pretrial conference in this case be continued from February 5, 2008 to May 18, 2008.[3] As NetQuote explained in response to MostChoice's First Motion, this is not a case in which the damage inflicted is complete and the only issues for the Court are to determine liability and to set a damages award. NetQuote also seeks injunctive relief to prohibit conduct that MostChoice refuses to stop. (Resp. to First Mot. p. 3-4 & accompanying Ex. A-D (Dkt. # 99).) In its November 13, 2007 Reply brief, MostChoice did not dispute that it continues to market to the NetQuote agents whose identities it discovered through the bogus submissions, but it contended that it had stopped making additional false submissions. (Reply p. 5-6 (Dkt. # 103) ("the undersigned counsel clearly represented to the plaintiff, through its counsel, that its activities had ceased").) But just a week after making that representation to the Court, MostChoice produced additional documents, one of which shows that as recently as November 20, 2007, MostChoice founder Michael Levy sent yet another request for an insurance quotation to NetQuote. (Attached as Ex. D.) NetQuote seeks as early a trial date as possible so

---

[3] MostChoice's motion states that it wishes to postpone the final pretrial conference "from February 8, 2007 to May 18, 2007." (Second Mot. p. 2) The final pretrial conference currently is set for February 5, 2008, not February 8, 2007. (Scheduling Order p. 10 (Dkt. # 26).) MostChoice presumably is seeking to have the conference postponed until May 18, 2008, not May 18, 2007.

10

that MostChoice's destructive conduct of sending bogus insurance quotation requests to NetQuote and marketing to the agents whose identities it discovers from the bogus submissions can be enjoined permanently.

Moreover, MostChoice's requested delay cannot be squared with Judge Ebel's Pretrial and Trial Procedures. The Pretrial and Trial Procedures provide: "Scheduling should be planned with the assumption that all cases will go to trial within one year of filing, absent extraordinary circumstances." (Pretrial and Trial Procedures of Circuit Judge Ebel p. 1.) This action is not the type of extraordinary case that should require additional time for discovery – it is a three-party case with three remaining claims for relief and one remaining counterclaim.

## **CONCLUSION**

For the foregoing reasons, NetQuote requests that MostChoice's Second Motion for Additional Discovery be denied.

Dated: December 7, 2007          Respectfully submitted,

    */s Daniel D. Williams*
Daniel D. Williams
Teresa Taylor Tate
FAEGRE & BENSON LLP
1900 Fifteenth Street
Boulder, Colorado 80302
Tel: (303) 447-7700 / Fax: (303) 447-7800
E-mail: dwilliams@faegre.com
          ttate@faegre.com

David W. Stark
Heather Carson Perkins
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Tel: (303) 607-3500 / Fax: (303) 607-3600
E-mail: dstark@faegre.com
hperkins@faegre.com

**Attorneys for Plaintiff NetQuote, Inc.**

# **CERTIFICATE OF SERVICE**

      I certify that on this 7th day of December, 2007, I electronically filed the accompanying **NETQUOTE'S RESPONSE TO MOSTCHOICE'S SECOND MOTION FOR ADDITIONAL DISCOVERY** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

    Ryan L. Isenberg, Esq.
    ISENBERG & HEWITT, P.C.
    7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
    Atlanta, GA 30328
    ryan@isenberg-hewitt.com


                                                    */s Daniel D. Williams*