# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

## NETQUOTE'S RESPONSE TO MOSTCHOICE'S MOTION TO MODIFY PROTECTIVE ORDER, OR FOR RELIEF FROM PROTECTIVE ORDER

Plaintiff NetQuote, Inc. ("NetQuote"), through undersigned counsel, responds to Defendant MostChoice.com, Inc.'s ("MostChoice") Motion to Modify Protective Order, or for Relief from Protective Order, Dkt. # 112 ("Motion"), as follows:

### INTRODUCTION

MostChoice is, once again, trying to circumvent the Protective Order. MostChoice ignores that the Protective Order already contains mechanisms to deal with the two issues it raises in its motion: challenges to confidentiality designations and the use of designated materials for trial preparation and at trial. (*See* Protective Order ¶¶ 11, 16 (Dkt. # 74).) Rather than use those mechanisms, MostChoice advocates that the Protective Order to be jettisoned in its entirety, or in the alternative that its protections be waived during trial preparation.

The plain-vanilla Protective Order in this case does not infringe on Defendants' Due Process rights.  MostChoice cites no authority for its claim that protecting highly confidential and proprietary competitive business information from a business competitor during litigation could constitute a Due Process violation.   Moreover, contrary to MostChoice's assertions, the Protective Order does not prevent access to discovery materials.  In fact, it allows access to protected material by MostChoice's attorneys, counsel's paraprofessionals and staff, and retained expert witnesses and litigation support vendors.  (*Id.* ¶ 5.)

## ARGUMENT

### I. THIS COURT NEED NOT DECIDE THE DUE PROCESS ISSUE.

The Due Process Clause is not infringed by the Protective Order in this case.  MostChoice cites no case law that holds that, in the context of competitors, restricting an opposing party's access to trade secrets or other confidential research, development, or commercial information amounts to a Due Process violation.  Likewise, MostChoice cites no authority for the proposition that the process afforded under the current Protective Order is insufficient.[1]  The Protective Order does indeed provide sufficient process.  MostChoice simply ignores the Protective Order's detailed processes for challenges to attorney's eyes only designations and for use of confidential information during trial preparation and at trial.  That MostChoice chooses to ignore the available processes does not render those processes insufficient.

---

[1]  MostChoice cites several cases in its Due Process argument, but a reading of the cases reveals that none of them actually hold that a Protective Order is a Due Process violation. (*See* Mot. at 2-3.)

2

Moreover, this Court need not reach the constitutional Due Process issue because a narrower ground for decision exists. "A constitutional issue should not be addressed if a case can be disposed of on a less far-reaching ground." *Rocky Mountain Christian Church v. Board of County Comm'rs*, 481 F. Supp. 2d 1213, 1222 (D. Colo. 2007) (citing *U.S. v. Gonzales*, 150 F.3d 1246, 1254 (10th Cir. 1998)). Here, the Protective Order outlines processes for challenging designations and for providing access to designated materials for trial. (Protective Order ¶¶ 11, 16.) MostChoice, having failed to exhaust those processes, should not be heard to raise a constitutional challenge to this Court's order.

## II. NETQUOTE HAS DESIGNATED DOCUMENTS IN GOOD FAITH AS PERMITTED UNDER THE PROTECTIVE ORDER.

MostChoice relies upon mistaken, and at times embellished, factual predicates for its claim that NetQuote has over-designated materials as attorney's eyes only. MostChoice claims that NetQuote has over-designated thousands of pages of documents. (Mot. at 3.) NetQuote disagrees with MostChoice's ever changing claims about the number of documents or number of pages designated as attorney's eyes only.[2] In fact, to date NetQuote has so designated less than 140 of its documents. MostChoice alleges that "the plaintiff has in bulk just marked documents as attorney's eyes only without consideration as to whether they actually contained customer lists, proprietary computer information, or financial projections that served as the basis for the ability to make such a designation." (*Id.*) To the contrary, each page of NetQuote's document production was reviewed by an attorney who carefully considered the appropriate designation as

---

[2] *Compare* Defendants' Response to Plaintiff's Motion to Maintain Highly Confidential Designation of Documents NQ 160-204 p. 1 (Dkt. # 95 ) (claiming that NetQuote designated approximately 6,500 pages as attorneys eyes only), *with* Motion to Modify Protective Order, or for Relief from Protective Order p. 2 (Dkt. # 112) (claiming that NetQuote designated approximately 5,200 pages as attorneys eyes only).

3

specified under this Court's Order on Plaintiff's Motion for Protective Order and the Protective Order. (Dkt. ## 73, 74.)

MostChoice attempts to bolster its argument by attaching documents produced by NetQuote with different levels of designation. (Mot. at 3.) What MostChoice fails to note is that the discrepancy in designation applies only to e-mail attachments that were designated based on whether materials in the text of the e-mails themselves were highly confidential. Thus, when the document was produced as an attachment to an e-mail that was properly designated confidential or attorney's eyes only, both the e-mail and its attachment were so designated. When the parties met and conferred regarding various confidentiality designations, counsel for NetQuote explained this to counsel for MostChoice. At that time, counsel for MostChoice agreed that there was no need to change the designations because MostChoice had access to a copy of the attachment that was not designated attorney's eyes only. While MostChoice contents that NetQuote's designations were haphazard, the reality is that they were based on a careful, document-by-document analysis.

MostChoice also objects to the designation of deposition testimony as attorney's eyes only. Specifically, MostChoice objects to the designation of testimony regarding the software platform that NetQuote uses as attorney's eyes only claiming that this information is available to the general public. (*Id.* at 4.) This is but another example of MostChoice refusing to utilize the challenge mechanism in the Protective Order. During the deposition, NetQuote's counsel proposed that this information be designated attorney's eyes only until such time as MostChoice's counsel informed counsel for NetQuote what the basis of his belief was that the information was publicly available. (Exhibit A, Marosi Dep. 24:16-25:14, Sept. 26, 2007.)

Before filing its Motion, MostChoice had not approached NetQuote with any such information or requested a meet and confer to discuss the designation. MostChoice does not explain why it cannot resolve the alleged problems it identifies through self help under the current Protective Order.

**III. THE CURRENT PROCESS AS OUTLINED BY THE PROTECTIVE ORDER IS EFFECTIVE.**

**A. MostChoice Has Not Shown That Michael Levy Is the Only Possible Consulting Expert for MostChoice.**

MostChoice first argues that the Protective Order should be jettisoned because MostChoice Chairman Michael Levy is uniquely qualified to serve as a consulting expert to assist MostChoice with this litigation. MostChoice contends that "there are no qualified experts in the on-line lead generation industry who are not affiliated with an existing competitor." (Mot. at 6-7.) But the affidavit of another MostChoice officer submitted in support of the motion, Martin Fleischmann, does not so attest. Fleischmann states only that Levy is one of "a few" individuals who would qualify as an expert. (Fleischmann Aff. ¶ 7 (Dkt. 112-2).) And in any event, it is not plausible to suggest that MostChoice could not satisfy its needs with a computer forensics expert, of which there is of course no shortage.

It is particularly troubling that MostChoice is pressing so hard specifically for Levy to have personal access to NetQuote's highly confidential information. Levy, the co-founder of MostChoice, is the architect of MostChoice's campaign to send thousands of bogus insurance quotation requests to NetQuote. (Exhibit B, Levy Dep. 136:13 – 139:22, Sept. 5, 2007; Fleischmann Dep. 88:10 - 90:15, Oct. 11, 2007.) Whatever the need for some corporate representative of MostChoice to have limited access to the attorney's eyes only information prior

5

to trial, there is no good reason to give such access to Levy, who has admitted at deposition that he is the individual who conceived and implemented the surreptitious "project" MostChoice launched against its business competitor NetQuote.

### B. MostChoice Should Be Required To Utilize the Processes Already Set Forth in the Protective Order.

MostChoice next claims that the Protective Order should be modified based on alleged over-designation of documents. MostChoice conveniently ignores that it has not utilized the procedure set forth in the Protective Order to address this claim. Indeed, while MostChoice argues that the Protective Order's process for challenging designations does not work, the history here is the exact opposite. When it is actually employed, that process is effective and provides all of the relief MostChoice claims to need.

When the procedure for challenging a designation has been used by the parties, it has been effective. For example:

- The parties met and conferred on October 12, 2007 regarding the designation of a variety of NetQuote documents produced as attorney's eyes only. The parties were able to reach a resolution on many of the documents and agreed to continue to meet and confer regarding any remaining concerns. (Exhibit C, Letter dated Oct. 15, 2007 from T. Tate to R. Isenberg.)

- NetQuote has voluntarily redacted its expert report so MostChoice counsel could share the document with MostChoice representatives. (*See* Exhibit D, e-mail correspondence dated Oct. 16, 2007 from T. Tate to R. Isenberg.)

- NetQuote accepted MostChoice counsel's proposed redactions to a number of NetQuote's attorney's eyes only documents so that they may be designated confidential allowing greater access to the document. (Exhibit E, e-mail correspondence dated Oct. 24, 2007 from T. Tate to R. Isenberg.)

- MostChoice brought a formal challenge to a NetQuote designation, to which NetQuote responded as required. (*See* Dkt. # 90.) This Court granted NetQuote's motion to maintain. MostChoice responded by filing an objection to the Order, which Judge Ebel overruled. (*See* Dkt. ## 97, 98, 123.)

Likewise, MostChoice's request for a modification to the Protective Order to allow MostChoice officers or employees access to NetQuote's highly confidential proprietary information during trial preparation ignores the process the Protective Order already establishes to address this issue. The Protective Order already provides that:

> Counsel for the Parties shall confer on such procedures as are necessary to protect the confidentiality of any documents, information and transcripts used in the course of any Court proceedings, and shall incorporate such procedures, as appropriate, in the pretrial order.

(Protective Order ¶ 11.)

To give MostChoice's officers and employees unfettered access to all highly confidential materials produced in discovery would inappropriately jeopardize NetQuote's proprietary information. The Protective Order properly contemplates establishing procedures for handling attorney's eyes only documents while negotiating the proposed pretrial order because when the proposed pretrial order is prepared, the parties will have winnowed the relevant set of documents to those that they actually intend to designate as trial exhibits. There is no need for the Court to preempt the process set forth in the Protective Order and in so doing, permit the revelation of all materials produced in discovery when the parties will shortly undertake the task of limiting the scope of relevant documents to trial exhibits, and any procedures for limited access to highly confidential documents can be limited to the exhibits that may actually be used at trial.

## **CONCLUSION**

For the foregoing reasons, NetQuote requests that MostChoice's Motion to Modify Protective Order, or for Relief from Protective Order, be denied.

Dated:  December 11, 2007                    Respectfully submitted,


*s/Daniel D. Williams*_____
Daniel D. Williams
Teresa Taylor Tate
FAEGRE & BENSON LLP
1900 Fifteenth Street
Boulder, Colorado 80302
Tel: (303) 447-7700 / Fax: (303) 447-7800
E-mail:    dwilliams@faegre.com
           ttate@faegre.com

David W. Stark
Heather Carson Perkins
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Tel:  (303) 607-3500 / Fax:  (303) 607-3600
E-mail:    dstark@faegre.com
           hperkins@faegre.com

**Attorneys for Plaintiff NetQuote, Inc.**

# CERTIFICATE OF SERVICE

I certify that on this 11th day of December, 2007, I electronically filed the accompanying **NETQUOTE'S RESPONSE TO MOSTCHOICE'S MOTION TO MODIFY PROTECTIVE ORDER, OR FOR RELIEF FROM PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Ryan L. Isenberg, Esq.
ISENBERG & HEWITT, P.C.
7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
Atlanta, GA 30328
ryan@isenberg-hewitt.com

*s/Daniel D. Williams*_____