## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

### NETQUOTE'S REPLY IN SUPPORT OF ITS MOTION TO REOPEN DEPOSITIONS AT THE FEDERAL COURTHOUSE

Plaintiff NetQuote, Inc. ("NetQuote"), through undersigned counsel, submits this Reply in support of its Motion To Reopen Depositions at the Federal Courthouse (Dkt. # 100) ("Motion") and in further support of its motion states as follows:

### INTRODUCTION

MostChoice's Response to Plaintiff's Motion To Reopen Depositions (Dkt. # 129) ("Response") demonstrates exactly why reopening these depositions, and doing so at the federal courthouse, is necessary. The Response shows that MostChoice is planning on being evasive at trial both about Michael Andrew's knowledge and about document authentication issues. Reconvening the depositions as NetQuote proposes will prevent MostChoice from abusing the discovery process to try to escape responsibility at trial for its conduct.

**ARGUMENT**

I.      **NETQUOTE NEEDS TO CONTINUE THE ANDREW DEPOSITION.**

MostChoice argues that the Andrew deposition does not need to be re-opened because Andrew already has testified that "he knew nothing of what Byrd was doing." (Resp. 3.) The reason Andrew's deposition needs to be reopened is that Andrew's testimony disclaiming knowledge of MostChoice's fraud appears to be false, and the documents NetQuote needs to confront Andrew with to prove that the testimony is false were not produced until days and weeks *after* Andrew's deposition. (Mot. 4.)

MostChoice's Response ignores entirely, for example, the 29 documents produced weeks after the Andrew deposition, which show that, in the Fall of 2006, Andrew had ever-increasing information about that fraud. (*Id.*) As for the September 6, 2006 e-mail that MostChoice withheld until the week after Andrew's deposition (*see* Mot. Ex. B), MostChoice tries to explain it away on two theories. First, notwithstanding that it was produced in response to a request for documents relating to MostChoice's attack on NetQuote, MostChoice theorizes that "[t]he e-mail at issue makes no reference to Netquote, Brandon Byrd or what would be done with the information." (Resp. 4.) NetQuote seeks to re-open the Andrew deposition to test this far-fetched theory that the e-mail could relate to something other than MostChoice's submissions of bogus leads to NetQuote. Second, MostChoice attempts to set forth an innocent explanation for the document. It claims that "denial of service attack" meant something special to Levy and Andrew. (Resp. 4-5.) NetQuote seeks to probe the plausibility of that claim through cross-examination of Andrew.

Moreover, the Response ignores completely the next sentence of the September 6, 2006 e-mail, in which Andrew was told to "[r]andomly pick streets so that it does not look contrived

2

and make sure the streets are short names that are easy to enter." (Mot. 4 & Ex. B.) That sentence cannot be squared with MostChoice's assertion that Andrew "knew nothing" about the use to which the street addresses and area codes he was assembling would be put, and NetQuote seeks the opportunity to cross examine Andrew on this discrepancy at deposition so that the testimony of this out-of-state witness can be offered at trial.[1]

## II. NETQUOTE NEEDS TO CONTINUE THE MOSTCHOICE RULE 30(b)(6) DEPOSITION.

### A. Questions About MostChoice's Inadequate Document Production Remain.

MostChoice attempts to deflect responsibility for its withholding of responsive documents by noting NetQuote's supplementation of its document production. But MostChoice can cite not one example of any material document it received late. NetQuote seeks to continue the Rule 30(b)(6) deposition of MostChoice to determine if, in light of MostChoice's highly material late-produced documents, there are other documents that should now be produced that MostChoice has been withholding without justification.

### B. The Fraud May Have Started Before MostChoice Previously Admitted.

MostChoice contends that NetQuote has no need to depose MostChoice about the timing of the commencement of the fraud in light of the newly-produced documents because the documents may be "consistent with the project beginning in early October." (Resp. 7) The September 6, 2006 e-mail expresses great urgency for "the project" to start immediately, as do other of the late-produced e-mails. Speculation in the Response that there may be an innocent explanation for this timing discrepancy is no reason to deny NetQuote the ability to cross-examine MostChoice on it.

---

[1] In its Response, MostChoice does not offer to bring Andrew to Colorado for trial.

### C. MostChoice Is Attempting To Abuse Rule 34 To Make Document Authentication as Difficult as Possible.

MostChoice's Response initially claims that MostChoice "sent two forms of electronic data" to NetQuote, but that claim overstates MostChoice's compliance with NetQuote's discovery requests. (Resp. 7.) MostChoice later concedes that it merely "made [files] available for NetQuote to copy." (Resp. 8.) MostChoice claims that it cannot authenticate the printed copies of the documents NetQuote made at its own expense when the documents were "made . . . available" as linked computer files. It offers a list of reasons for its refusal to authenticate these copies of its own documents, including that "[t]he documents are not what they purport to be," "no one is familiar with the documents," "no one has specific knowledge as to what [the documents in MostChoice's database] are," and with respect to Byrd's e-mails, "Byrd testified that he didn't read" them. (Resp. 8 n.10, 9.; *accord* Resp. 10 ("neither Byrd nor MostChoice can authenticate documents that no one has seen or paid attention to before").) It is wholly inappropriate for MostChoice to tell NetQuote to copy MostChoice's files and then refuse to authenticate them based on a claimed ignorance as to what MostChoice's own files are or that it does not like the format NetQuote used to copy the files.

As for MostChoice's claim that file structure information is lost when an electronic record is reduced to paper, (Resp. 8), there is no reason the jury should be denied the ability to consider printed copies of the web pages and e-mails MostChoice made available for inspection and copying. Giving the jury a paper copy of the documents to use in its deliberations is the most clear and straightforward way to make voluminous documents accessible to the jury.

MostChoice contends that the documents it made available for copying were "altered" when they were "distilled by the plaintiff from HTML to PDF," because various metadata were not captured. (Resp. 3 & n.2, 8.) But that is the case with every paper copy of an electronic

document.  MostChoice's objection is equivalent to objecting to the admission of a copy of an e-mail printed on paper because the e-mail had been stored electronically.

MostChoice attaches to its Response printouts of metadata from the .pdf images of its documents to show that the "creation date[s]" and other metadata in NetQuote's copies differ from the original documents.  (Resp. 8 & Ex. B.)  But NetQuote did not ask MostChoice to authenticate any metadata in the .pdf copies that it made.  It merely asked for MostChoice to authenticate the static images of the documents that MostChoice made available for copying.  So that its Request for Admission would be clear, NetQuote specifically Bates-stamped the pages it sought to have authenticated and asked MostChoice to admit to the authenticity of the Bates-stamped pages.  (Mot. Ex. D.)  The metadata printout MostChoice attaches to its Response has no Bates number on it because it was not part of the Request for Admission.  (Resp. Ex. B.) MostChoice cannot add material to a Request for Admission and then deny the Request based on its own revision.

MostChoice claims that its tactics were authorized by Fed. R. Civ. P. 34(b)(2)(E), which permits electronic documents to be produced in native form and provides that "[a] party need not produce the same electronically stored information in more than one form."  But the Rule does not prohibit this Court from specifying other means of production when necessary to ensure that discovery proceeds efficiently and that it is not abused.  The rule provides that the default format of documents to be produced and the number of formats it is to be produced in apply "[u]nless otherwise stipulated or ordered by the court."  *Id.*  In light of MostChoice's admitted refusal to authenticate its electronic documents after making them available for inspection and copying, this Court is fully authorized to exercise its discretion as to the format for the document production.  *See Lawson v. Sun Microsystems, Inc.*, 2007 WL 2572170 (S.D. Ind. Sep. 4, 2007)

5

(rejecting claimed "inconvenience" and requiring electronic documents to be produced a second time in a different format).

The relief NetQuote seeks will prevent this Court from having to determine whether documents have been "altered" as MostChoice alleges. Because MostChoice believes that something significant was lost when the documents it made available for copying were copied in .pdf format, NetQuote's proposed relief would allow MostChoice to solve its own objection by printing out whatever information from each electronic record MostChoice believes is necessary to render the document complete and bringing it to the deposition. At the deposition, MostChoice can be examined to authenticate the documents it is producing by explaining what they are and how they came into MostChoice's possession.

**III.     THE DEPOSITIONS SHOULD BE RECONVENED AT THE FEDERAL COURTHOUSE IN COLORADO.**

The Response contains a spirited defense of MostChoice Chairman Michael Levy's behavior during depositions. (Resp. 10-11.) That MostChoice regards such behavior as acceptable and routine in litigation demonstrates why court supervision is required for these depositions. Holding the depositions at the federal courthouse will emphasize the solemnity of the proceeding and will provide easy access to the Court should the disruptions continue.

MostChoice's alternative proposal that the depositions be conducted over the telephone would not be effective for two reasons. First, meaningful cross-examination often requires in-person confrontation. Second, using the relative informality of a teleconference is likely to exacerbate the lack of seriousness with which MostChoice's corporate designee has regarded deposition proceedings in this matter.

**IV. MOSTCHOICE'S PROPOSAL TO DELAY THE DEPOSITIONS UNTIL THE FINAL PRETRIAL CONFERENCE WOULD PREVENT ADEQUATE PREPARATION FOR THE CONFERENCE.**

MostChoice requests that, if the depositions are to be reconvened, they occur at the time of the final pretrial conference in this matter. That date is too late because, by the final pre-trial conference, the parties are to have identified all trial exhibits and undertaken other trial preparation tasks. NetQuote seeks to have these depositions completed in a timeframe that will allow it submit the proposed pretrial order by January 29, 2008, as required by this Court's rules.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in the Motion, NetQuote's Motion To Reopen Depositions at the Federal Courthouse should be granted.

Dated: December 17, 2007　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　 /s Daniel D. Williams_____
　　　　　　　　　　　　　　　　　　　　　Daniel D. Williams
　　　　　　　　　　　　　　　　　　　　　Teresa Taylor Tate
　　　　　　　　　　　　　　　　　　　　　FAEGRE & BENSON LLP
　　　　　　　　　　　　　　　　　　　　　1900 Fifteenth Street
　　　　　　　　　　　　　　　　　　　　　Boulder, Colorado 80302
　　　　　　　　　　　　　　　　　　　　　Tel: (303) 447-7700 / Fax: (303) 447-7800
　　　　　　　　　　　　　　　　　　　　　E-mail:　dwilliams@faegre.com
　　　　　　　　　　　　　　　　　　　　　　　　　　ttate@faegre.com

　　　　　　　　　　　　　　　　　　　　　David W. Stark
　　　　　　　　　　　　　　　　　　　　　Heather Carson Perkins
　　　　　　　　　　　　　　　　　　　　　FAEGRE & BENSON LLP
　　　　　　　　　　　　　　　　　　　　　3200 Wells Fargo Center
　　　　　　　　　　　　　　　　　　　　　1700 Lincoln Street
　　　　　　　　　　　　　　　　　　　　　Denver, Colorado 80203
　　　　　　　　　　　　　　　　　　　　　Tel: (303) 607-3500 / Fax: (303) 607-3600
　　　　　　　　　　　　　　　　　　　　　E-mail:　dstark@faegre.com
　　　　　　　　　　　　　　　　　　　　　　　　　　hperkins@faegre.com

　　　　　　　　　　　　　　　　　　　　　**Attorneys for Plaintiff NetQuote, Inc.**

## CERTIFICATE OF SERVICE

I certify that on this 17th day of December, 2007, I electronically filed the accompanying **NETQUOTE'S REPLY IN SUPPORT OF ITS MOTION TO REOPEN DEPOSITIONS AT THE FEDERAL COURTHOUSE** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Ryan L. Isenberg, Esq.
ISENBERG & HEWITT, P.C.
7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
Atlanta, GA 30328
ryan@isenberg-hewitt.com


                                                 */s Daniel D. Williams*