## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

## BRIEF IN SUPPORT OF NETQUOTE'S MOTION FOR SUMMARY JUDGMENT ON MOSTCHOICE'S COUNTERCLAIM

### INTRODUCTION

After being sued by NetQuote, Inc. ("NetQuote") for orchestrating a business sabotage campaign involving the submission of thousands of fraudulent insurance quotation requests to NetQuote's websites, MostChoice brought a counterclaim alleging that NetQuote had engaged in an internet "click fraud" campaign against MostChoice. MostChoice's tit-for-tat fraud claim fails as a matter of law for the following reasons:

*First*, the conduct MostChoice alleges is not actionable as common-law fraud. While the term "click fraud" is used colloquially in various on-line industry circles, it is not a legal cause of action, nor would it constitute a species of common-law fraud.

*Second*, there is no evidence whatsoever that NetQuote employees clicked on MostChoice's paid advertisements for any improper purpose. While MostChoice has evidence that NetQuote employees clicked on MostChoice's advertisements about two dozen times a year in two separate years, the unrebutted record shows that this small number of clicks through to MostChoice's website was for the concededly proper purpose of seeing the content of MostChoice's website. Indeed, MostChoice's President and CEO, Martin Fleischmann, admitted in his deposition that clicking though a search engine on-line advertisement periodically to see a website's content is not an improper use of the on-line advertisement.

**STATEMENT OF UNDISPUTED FACTS**

The following facts are undisputed:

NetQuote and MostChoice are direct business competitors in the on-line insurance lead generation industry. (Coccari Decl. ¶ 2, attached as Ex. 1.) Both companies maintain and advertise free websites in which consumers can fill out applications to request insurance quotations. (*Id.* ¶ 3.) Both companies use paid advertisements on internet search engines (such as Google and Yahoo) to direct internet traffic to their websites. (*Id.* ¶¶ 5, 6; Second Amended Counterclaim ("Counterclaim") ¶¶ 10, 11 (Dkt. # 87).) Both companies sell the applications completed on their websites to limited numbers of insurance agents, who then compete for the business of the consumer applicants. (Coccari Decl. ¶ 4.)

MostChoice's Second Amended Counterclaim alleges three causes of action against NetQuote. (Dkt. # 87.) By stipulation, on December 6, 2007 MostChoice voluntarily dismissed two of its three causes of action, alleging defamation and tortious interference with contract. (Dkt. # 139.)

In its sole remaining counterclaim, MostChoice alleges that NetQuote employees engaged in "click fraud" against it. (Counterclaim ¶¶ 9-31.) MostChoice contends that "click fraud" occurs when a computer user clicks on a company's on-line advertisement "without having actual interest in the target of the ad's link." (*Id.* ¶ 15.)

MostChoice explains that it pays for its search engine advertisements on a "per click" basis – in other words, it pays a set fee anytime a computer user clicks on a MostChoice advertisement on Yahoo, Google, or a similar search engine. (*Id.* ¶ 10.) MostChoice has pre-set daily limits on the number of clicks it will pay for each day. (*Id.* ¶ 27.)

MostChoice claims that NetQuote employees repeatedly clicked on MostChoice's paid advertisements. (*Id.* ¶¶ 24, 25.) It claims that NetQuote clicked through to MostChoice's advertisements for the purpose of exhausting MostChoice's daily supply of pay-per-click advertisements. (*Id.* ¶¶ 27, 28.)

The Counterclaim attaches lists of clicks that MostChoice contends are fraudulent. Specifically, MostChoice attaches two lists of click records from computer IP addresses used by NetQuote. This first list contains records of 25 clicks between October 2004 and August 2005. (*Id.*, Ex. A.) The list shows that the vast majority of the clicks occurred on separate days over this eleven-month period, and the maximum number of clicks in any given day was three (on July 28, 2005).[1] The second list shows 27 clicks between January 2007 and September 2007, again with the vast majority showing only a single click on any given day and again with no more than three clicks on any one day. (*Id.*, Ex. B.)

---

[1] MostChoice's list shows four clicks on November 29, 2004, but two of the entries for that date are duplicates. The data on rows 4 and 6, and on rows 5 and 7, are exactly the same. Correcting for this duplication, Exhibit A shows only 23 separate clicks, with two clicks on November 29, 2004.

MostChoice did not depose any NetQuote witness as to the reasons why they clicked on MostChoice's paid advertisements, nor does any document produced in the case discuss the purpose of NetQuote employees' visits to MostChoice's website through MostChoice's on-line advertisements. In the accompanying declaration, however, NetQuote Chief Executive Officer Gregg Coccari explains the reason for NetQuote employees to have clicked on MostChoice's paid advertisements. Specifically, Coccari explains that, as part of their normal business activities, some NetQuote employees seek to determine what advertisements competitors are placing on Google, Yahoo, and similar search engines. They click on the advertisements to see what the content is that is displayed on the web pages to which the paid advertisements redirect consumers. (Coccari Decl. ¶ 8, attached as Ex. 1.)

At his deposition, MostChoice's President and Chief Executive Officer, Martin Fleischmann, agreed that it is a "legitimate use[] of using the MostChoice website . . . to just see what the content is on MostChoice's website." (Fleischmann Dep. 105:22-106:7, attached as Ex. 2). He continued that MostChoice's website is "a free and open site," "anybody can visit our site at any time." (*Id.*)

## ARGUMENT

### I. LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is an absence of any issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323

(1986). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

To be a "genuine" factual dispute, there must be more than a mere scintilla of evidence. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the court "must view the record in a light most favorable to the parties opposing the motion for summary judgment," *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991), "unsupported conclusory allegations … do not create a genuine issue of fact." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004). "Summary judgment may be granted if the evidence is merely colorable or is not significantly probative." *Vitkus*, 11 F.3d at 1539.

## II. CLICKING ON A COMPETITOR'S ON-LINE ADVERTISEMENT IS NOT FRAUD.

MostChoice frames its counterclaim as one for "Click Fraud," and it contends that the claim is governed by Georgia law. (Counterclaim, 2 & ¶ 8.)[2] No published Georgia case recognizes the tort of "click fraud." The few cases from any jurisdiction that discuss "click fraud" make clear that the claims are brought under other recognized causes of action. *See, e.g.*, *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 499 (S.D.N.Y. 2007) (claims by alleged "click fraud" victim for breach of contract, unjust enrichment, negligence, and civil conspiracy); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 231-32 (E.D. Pa. 2007) (claims

---

[2] For purposes of this Motion only, NetQuote does not challenge MostChoice's assertion that Georgia common law governs the Counterclaim.

5

by alleged "click fraud" victim for breach of express or implied contract).  NetQuote has located no case from any jurisdiction that recognizes "click fraud" as a cognizable cause of action.

In its Counterclaim, MostChoice does not allege any alternative common law or statutory theory other than, presumably, fraud.  To state a claim for fraud under Georgia law, a plaintiff must prove five elements:  (1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages.  *See, e.g.*, *Collins v. Regions Bank*, 639 S.E.2d 626, 628 (Ga. Ct. App. 2006), *cert. denied* (Feb. 26, 2007); *Klusack v. Ward*, 507 S.E.2d 1, 2  (Ga. Ct. App. 1998).  Summary judgment is proper on a fraud claim if the evidence is insufficient "as to only one of these elements."  *Collins*, 639 S.E.2d at 628.  Here, there is no evidence to support at least two of the elements of fraud:  (1) a false representation or (2) justifiable reliance.

### A. A Click On a Search Engine Advertisement Is Not a False Representation.

While NetQuote disputes that it clicked on any MostChoice advertisement for an improper purpose – and as is explained in Section III, *infra*, there is no evidence that it did so – such activity would not be "fraud" in any event because it does not involve a misrepresentation.  A "misrepresentation" can include "both words that are untrue and any other conduct that amounts to an assertion not in accordance with the truth."  Restatement (Second) Torts § 525 cmt. b (1977) ("words or conduct asserting the existence of a fact constitute a misrepresentation if the fact does not exist"); *accord Marshall v. York*, 302 S.E.2d 711, 714 (Ga. Ct. App. 1983) ("misrepresentation" for fraud claim premised on prior pattern of payment); Ga. Code Ann. § 23-2-56 ("Fraud may be consummated by signs or tricks, or through agents employed to deceive, or by any other unfair way used to cheat another.").

A click on a MostChoice advertisement is not a representation, either by words or deeds. MostChoice's advertisements do not require users to agree to any terms prior to clicking on them. (Ex. 1, Coccari Decl. ¶ 6 and Tab A) (sample advertisement).) MostChoice makes its advertisements available to the public in the most open manner possible – on an unrestricted basis on the world-wide web. Because "click fraud" does not involve the making of any misrepresentation – or indeed the making of any representation at all as to the purpose for the click through to MostChoice's website – the conduct MostChoice claims NetQuote committed does not qualify as fraud.

Moreover, MostChoice itself explains that, when a user clicks on one of its on-line advertisements, the user seeks only to be "taken to a page on [MostChoice's] website." (Counterclaim ¶ 15.) Thus, to the extent that the click could be interpreted to be a representation, the representation is that the computer user wants to be taken to MostChoice's website. MostChoice cannot, and does not, contend that, when NetQuote employees clicked on the MostChoice advertisements, they were not actually requesting to be directed to MostChoice's website. Nor is there any dispute that, after clicking on the MostChoice advertisement, they were in fact re-directed to MostChoice's website.

### B. MostChoice Can Point To No Evidence That It Justifiably Relied on any Alleged Representation Made by Clicking on its Advertisements.

MostChoice contends in its Counterclaim that various clicks on its website were illegitimate because, while generally 15 to 30 percent of the visitors to its website fill out requests for insurance quotations, none of the clicks through the IP addresses used by NetQuote resulted in completed applications. (*Id.* ¶¶ 20-21.) To the extent that MostChoice's contention is that for a click through a paid search engine link to its website to be legitimate, the user must

7

then complete a MostChoice insurance application, its own counterclaim refutes the notion that its reliance on such a representation would be justifiable.

MostChoice itself concedes in its Counterclaim that only 15 to 30 percent of the persons who visit its site through its pay-per-click advertising actually complete an application. (*Id.* ¶ 20.)[3] In other words, the vast majority of persons who use MostChoice's paid advertisements *do not* complete applications. On MostChoice's own evidence, it would be unjustifiable for MostChoice to rely on the fact of a click on its advertisement as an agreement that a computer user will fill out an application – MostChoice knows that, most of the time, such representations would be false. *See, e.g.*, Restatement (Second) Torts § 541 (1977) ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him."); *Stanley v. Wal Mart Stores, Inc.*, 839 F. Supp. 430, 434-35 (N.D. Tex. 1993) (dismissing fraud claim as a matter of law because the plaintiff believed when the representation was made that it was false).

Indeed, when asked at deposition whether "everyone who visits the MostChoice website and does not fill out an application is committing click fraud," MostChoice President and CEO Fleischmann responded "[o]f course not." (Ex. 2, Fleischmann Dep. 104:21-24.) Because MostChoice has no evidence that it justifiably relied on a click through its website as a representation that the user would complete an application, its counterclaim fails as a matter

---

[3] At deposition, MostChoice's Fleischmann admitted that MostChoice's actual conversion rate of paid clicks to applications is lower than what MostChoice alleged in its Counterclaim. Fleischmann admitted that only "roughly 5 to 25 percent of the persons who click through Yahoo or Google on paid search looking for MostChoice actually fill out an application." (Ex. 2, Fleischmann Dep. 111:2-6.)

law. *See Collins*, 639 S.E.2d at 628 (affirming grant of summary judgment based on lack of evidence of justifiable reliance).

**III. EVEN IF "CLICK FRAUD" WERE A TORT, THERE IS NO EVIDENCE THAT NETQUOTE COMMITTED CLICK FRAUD AGAINST MOSTCHOICE.**

MostChoice's Counterclaim fails for the additional reason that there is no evidence that NetQuote committed click fraud against MostChoice. At deposition, Fleischmann admitted that "anybody can visit [MostChoice's] site at any time" because "it's a free and open site," and that browsing on the site is a legitimate use of MostChoice's website. (Ex. 2, Fleischmann Dep. 105:22 – 106:7.) NetQuote's employees periodically have clicked on MostChoice's paid advertisements for the permissible purpose of seeing what the content was that MostChoice posted on its website to accompany its search engine advertisements. (Ex. 1, Coccari Decl. ¶¶ 7, 8.) There is no documentary evidence or deposition testimony that the clicks MostChoice identifies were for any purpose other than legitimate interest by NetQuote employees in determining what content MostChoice had placed on its "free and open" website.

Moreover, MostChoice's description of this alleged "click fraud" campaign is not plausible. MostChoice contends that NetQuote clicked on its advertisements to exhaust MostChoice's daily limits on the number of times its advertisements would be displayed on various search engines each day. (Counterclaim ¶¶ 27, 28.) But it identifies only 25 clicks in 2004-2005, and 27 clicks in 2007, with most of the clicks occurring on separate days. (Counterclaim, Exs. A & B.) It would make no sense that these clicks, which amounted to a few a month with very few on the same day, could possibly have been made as part of a campaign to exhaust MostChoice's daily supply of clicks because they are too few. There simply is no evidence of any click on MostChoice's paid advertisements for any improper purpose.

9

## CONCLUSION

For the reasons set forth above, summary judgment should be granted in NetQuote's favor on MostChoice's sole remaining counterclaim.


Dated: December 18, 2007    Respectfully submitted,


 */s Daniel D. Williams*
Daniel D. Williams
Teresa Taylor Tate
FAEGRE & BENSON LLP
1900 Fifteenth Street
Boulder, Colorado 80302
Tel: (303) 447-7700 / Fax: (303) 447-7800
E-mail:    dwilliams@faegre.com
            ttate@faegre.com

David W. Stark
Heather Carson Perkins
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Tel: (303) 607-3500 / Fax: (303) 607-3600
E-mail:    dstark@faegre.com
            hperkins@faegre.com

**Attorneys for Plaintiff NetQuote, Inc.**

# CERTIFICATE OF SERVICE

I certify that on this 18th day of December, 2007, I electronically filed the accompanying **BRIEF IN SUPPORT OF NETQUOTE'S MOTION FOR SUMMARY JUDGMENT ON MOSTCHOICE'S COUNTERCLAIM** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Ryan L. Isenberg, Esq.
ISENBERG & HEWITT, P.C.
7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
Atlanta, GA 30328
ryan@isenberg-hewitt.com

                                                     */s Daniel D. Williams*