# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

---

### DECLARATION OF GREGG COCCARI IN SUPPORT OF NETQUOTE'S MOTION FOR SUMMARY JUDGMENT ON MOSTCHOICE'S COUNTERCLAIM

---

I, Gregg Coccari, declare and state as follows:

1. I am the Chief Executive Officer of NetQuote, Inc. ("NetQuote"). I have personal knowledge about the subjects set forth in this Declaration based on my duties and responsibilities at NetQuote.

2. NetQuote is in the on-line insurance lead generation business. MostChoice.com, Inc. ("MostChoice") is an Atlanta-based company in the same business. MostChoice competes directly with NetQuote.

3. NetQuote owns and operates websites that permit consumers shopping for insurance to complete applications on its websites requesting insurance quotation requests. NetQuote explains to the consumers that it will forward their applications to several insurance

agents who will compete for the consumers' business. NetQuote's service is free to the consumers seeking insurance. MostChoice similarly maintains a website that solicits consumers to fill out applications for insurance at no charge.

4. NetQuote provides the applications it receives to limited numbers of insurance agents that have expressed an interest in the type of application submitted. The agents pay NetQuote a pre-determined fee of approximately $1 to $15 for each application, depending on the type of insurance sought. The insurance agents who purchase NetQuote's leads then compete for the consumers' business, which provides a valuable shopping experience for the consumer. I understand that MostChoice likewise sells the insurance leads it aggregates to insurance agents for the agents to solicit business from the insurance consumers.

5. NetQuote purchases advertisements on internet search engines such as Google and Yahoo to direct computer users to its website.

6. Like NetQuote, MostChoice purchases advertisements on various search engines. A sample of one of MostChoice's advertisements from Google is attached as Ex. A. The advertisement does not contain any terms or conditions restricting its use. When a computer user clicks on the MostChoice advertisement, the user is re-directed to a specially-tailored page on MostChoice's website depending on the search term used in Google. Before being sent to the MostChoice website, the computer user is not asked to agree to any restrictions on the use of the advertisement or MostChoice's website.

7. NetQuote, like other companies in the on-line insurance lead generation industry, periodically looks to see what advertisements its competitors have listed on Google, Yahoo, and other search engines. Specifically, on occasion, NetQuote's employees type various search

terms into search engines to see whose advertisements appear in addition to NetQuote's. Its employees sometimes click through on the advertisements.

8. To my knowledge after investigation for purposes of this lawsuit, I have found no instance in which any NetQuote employee has ever clicked on a MostChoice advertisement for the purpose of causing MostChoice to exceed some daily limit on the number of times its advertisements can be displayed each day. I have found no evidence that any employee at NetQuote misused any MostChoice advertisement. The reason NetQuote employees have occasionally clicked on MostChoice's advertisements is to see what the substantive content is that is on MostChoice's website that is linked to the its advertisement.

Executed on December 17, 2007.

                                              Gregg Coccari
                                              Chief Executive Officer
                                              NetQuote, Inc.





Tuesday, Dec 18, 2007 02:05 PM