IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

**NETQUOTE INC, a Colorado corporation,**

    Plaintiff,

v.

**BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and**

**MOSTCHOICE.COM, Inc., a Georgia corporation**

    Defendants.

## REPLY BRIEF

COMES NOW, Mostchoice.com, Inc. and files this its Reply Brief to the Response filed by Netquote to Plaintiff's Motion for Relief from the protective order and shows this Court the following:

<u>I.  Netquote Attempts to Misdirect the Issue</u>

Netquote's claim that Mostchoice should have to utilize the process set forth in the protective order before the Court can consider the constitutional issue misses the point of Mostchoice's motion. The issue is not whether every document has been properly designated as attorney's eyes only.  Certainly, Mostchoice does contend that Netquote (as anticipated) was in fact the proverbial fox allowed to guard the hen house by over-designating documents as Attorneys Eyes Only.  This designation has been described as being "for a small discrete group of "extremely confidential" documents within the larger category of confidential materials. It was

never intended to be the most frequently used designation. Rather, it was intended to be used for extremely sensitive trade secrets and, thus, to be used sparingly*." THK Am. v. NSK Co.*, 157 F.R.D. 637, 641 (D. Ill. 1993). In other words, this designation is properly left to trade secrets akin to the Colonel's secret recipe or the formula for Coca Cola, and not mundane and routine documents.

However, the fundamental problem that has arisen is that by designating virtually every relevant document as Attorneys Eyes Only, the protective order as applied to Mostchoice in this case, has deprived it of the ability to assist its counsel in its own defense, and will result in Mostchoice being unfairly surprised at trial, without regard to whether the designations are in fact inappropriate. Mostchoice to this day is only aware of 2 of the 159 customers that Neqtuote claims it lost as a result of the conduct that Netquote attributes to Byrd's submissions, and Mostchoice hasn't seen any support for Netquote's claim for damages. Essentially what has happened in this case is analogous to a slip and fall plaintiff claiming a million dollar damages and the Court allowing her to conceal the nature of her injury until trial, while pre-trial disclosure would have allowed the defendant to determine whether "victim" was in a car wreck both the week before and after she fell.

II. Semantics

Netquote claims that it designated only 140 "documents" as Attorneys Eyes Only. However, this attempt to deflect the number of pages designated as Attorneys Eyes Only is pure semantics. Virtually all of the "documents" produced were data extracted from Netquote's computer database and accounting systems, and merely labeling several hundred pages of that data as a single document, which is apparently what Netquote is doing, does not address the issue

of the number of pages that were produced with the Attorney's Eyes Only Designation.

Netquote complains that Mostchoice hasn't been consistent with the number of pages actually designated as Attorney Eyes Only. As Mostchoice has noted in previous filings, counting them is a waste of time. However, Netquote produced just over 2,500 pages of documents at the time this motion was filed[1] with a Bates' stamp designation of "NQ" and just over 3,700 pages of documents with a Bates' stamp designation of "SD." Mostchoice shouldn't be tasked with counting the number of pages produced that have the attorney's eyes only designation, and Netquote cannot be allowed to simply say that it has designated a mere 140 "documents." Since Netquote is obviously attempting to demonstrate to the Court something that is patently false, Mostchoice will appear at the hearing with all of the documents designated as Attorneys' Eyes Only, unless before then Netquote produces a log that shows just how many pages were in fact so designated.

III. Marosi Testimony Demonstrates the Problem

Mostchoice asserted as an example of Netquote's abuse of the protective order, the designation of certain testimony of John Marosi, one of Netquote's Technology Directors. In that particular instance, Netquote's counsel designated as Attorneys Eyes Only information about Netquote's web platform that was publicly available. Netquote does not now refute that the information was publicly available, but simply argues that Mostchoice should have brought this

---

[1] Since then, Netquote has produced another 2,300 pages, all of which appear to have been designated as Attorneys Eyes Only. (I have only cursorily scanned the box, and not reviewed each document)

matter to their attention.[2]  Netquote's counsel could have verified that the information was available on the internet, but instead used the circumstance as an opportunity to continue its exclusion of Mr. Levy from the room so that he could not assist in the defense of this case.

Isn't it the least bit suspicious that Neqtuote's counsel claims to have carefully reviewed every document designated as Attorneys Eyes Only, and never bothered to ask whether certain information that was represented as being in the public domain, was in fact publicly available. Doesn't the failure to make an inquiry into a simple matter raise doubts as to whether the protective order is being used to protect Netquote, or to harm Mostchoice's ability to defend itself.

V.  Levy's Unique Ability to Serve as an Expert

Netquote's complaint is fact and industry specific.  It claims fraud based on a complex system of lead filtering that it alleges required advanced evasion techniques.  Netquote's claims that Mostchoice could simply hire a computer forensics expert is belied by the issues in this case.  As demonstrated, Mr. Levy is uniquely able to understand the filtering system that Netquote has in place and being aware of the system that Mostchoice uses, which he created, he is in fact the only person who would be able to understand the technical aspects of Netquote's systems and assist counsel in determining what additional information would allow Mostchoice to argue that Netquote's systems are not complex, and did not require any sort of advanced familiarity with the industry to submit false leads for the purpose of reverse engineering the plaintiff's customer list.

[Signature on next page]

---

[2]In fact, I stated on the record the information was publicly available on the internet. (Marosi Deposition Page 25 Lines 7-8)

Dated this 21st day of December, 2007.

                                    **s/ Ryan Isenberg**
                                    Ryan L. Isenberg, Esq.
                                    Isenberg & Hewitt, P.C.
                                    7000 Peachtree Dunwoody Road
                                    Building 15, Suite 100
                                    Atlanta, Georgia 30328
                                    Telephone: 770-351-4400
                                    Facsimile: 770-828-0100 (Fax)
                                    Email: ryan@isenberg-hewitt.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December, 2007, I served the foregoing Reply Brief by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Heather Carson Perkins
Daniel D. Williams
Theresa T. Tate
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
dwilliams@faegre.com

                                    **s/ Ryan Isenberg**