# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

## DECLARATION OF STEPHEN A. DUREE IN SUPPORT OF NETQUOTE'S RESPONSE TO MOTION TO EXCLUDE EXPERT TESTIMONY

I, Stephen A. Duree, declare and state as follows:

1. I am a principal with Duree Barton Professional Corporation. I have personal knowledge about the subjects set forth in this Declaration based on my work as a retained expert in this case and my education and professional experience.

2. As part of my analysis of NetQuote's damages resulting from the conduct of Defendants MostChoice.Com, Inc. and Brandon Byrd, I considered data contained in the "Allocation of the Purchase Price of NetQuote, Inc." prepared by Quist Valuation (the "Quist Report"). A true and correct copy of the Quist Report is attached to Defendants' Motion to Exclude Expert Testimony as Exhibit A-23.

3. The Quist Report was prepared in connection with the acquisition of NetQuote by its current owner and corporate parent, NetQuote Holdings, Inc. ("NQH").

4. Quist performed the analysis set forth in the Quist Report in order to assist NQH in allocating the price NQH paid for NetQuote to the assets acquired. This task was undertaken for the purpose of recording fair value of the acquired assets on NetQuote's balance sheet and was required by Generally Accepted Accounting Principles ("GAAP").

5. Specifically, Financial Accounting Standards Board Statement No. 141 ("FASB No. 141") requires that when "the amounts of goodwill and intangible assets acquired are significant in relation to the purchase price paid, disclosure of other information about those assets is required, such as the amount of the goodwill reportable by segment and the amount of the purchase price assigned for each major intangible asset class." (*See* Financial Accounting Standards Board Current Text, *Accounting Standards as of June 1, 2007*, Section B51, Business Combinations (FAS 141) (2007/2008 ed), excerpt attached as Exhibit A.)

6. The analysis in the Quist Report was not undertaken for purposes of this litigation. Instead, it was prepared as part of NetQuote's ordinary business operations and financial reporting obligations.

7. Quist's conclusions on the appropriate allocation of the purchase price were, in turn, included in NetQuote's 2005 year end balance sheet as the value of the assets as of their August 2005 acquisition.

8. I understand that PriceWaterhouse Coopers ("PWC"), a Big 4 accounting firm, audited the 2005 financial statements and concluded that the financial statements fairly stated

NetQuote's assets and liabilities and results of operations in accordance with GAAP. I further understand that PWC remains NetQuote's independent auditor.

9. Further, I understand that PWC reviewed and evaluated the Quist Report as part of its audit of NetQuote.

10. Before incorporating data from the Quist Report into my methodology in this case, I independently considered the reasonableness of the data from the Quist Report which I considered using. Based upon my education and experience, including my experience with preparing and evaluating the results of analyses like that contained in the Quist Report, I concluded the Quist Report was reliable.

11. I routinely rely upon analyses such as that contained in the Quist Report in my professional work.

12. Accounting industry professional guidance, to which I am subject as a Certified Public Accountant, expressly permit reliance upon analyses like the Quist Report. Specifically, Statement of Auditing Standards No. 73 ("SAS No. 73") permits reliance upon the work of a specialist like Quist. A copy of AU Section 336 of the American institute of Certified Public Accountants' Professional Standards, which incorporates SAS No. 73, is attached as Exhibit B.

13. I consider Quist to be a highly reputable business valuation firm. Quist is also viewed as highly respectable and reliable in the accounting industry.

14. I consider PWC to be a highly reputable accounting firm. PWC is viewed as highly respectable and reliable in the accounting industry.

15. I considered the data I used in my analysis from the Quist Report to be reliable for use in my methodology because:

3

- the Quist Report was prepared prior to MostChoice's attack on NetQuote;

- the Quist Report was prepared for NetQuote's ordinary business operations and financial reporting;

- Quist is a nationally recognized and highly reputable business valuation firm;

- PWC, is a highly reputable accounting firm;

- reliance on analysis such as that contained in the Quist Report is permitted by relevant accounting industry professional standards, including SAS No. 73;

- I interviewed Quist personnel and satisfied myself that they had appropriately conducted the analysis required by FASB No. 141;

- I have regularly relied upon the types of information contained in the Quist Report in my 35 plus years as a CPA and consultant; and

- I confirmed that PWC reviewed, evaluated and relied upon the Quist Report in the audit of NetQuote's 2005 financial statements.

16. I independently considered the reasonableness of the seven-year decay or customer attrition rate used by Quist for existing customer relationships before applying it in my methodology. In addition to the reasons for reliance set forth above, I independently concluded that a seven-year decay rate was reasonable based upon my experience in business valuation of businesses similar to NetQuote. In my experience, customer relationships in such businesses are typically assigned decay or attrition periods ranging from 5-10 years.

17. A decay factor for customer relationships is analogous to the assignment of a useful life for a tangible asset, such as a class or group of computer equipment, over which period of time the asset will be depreciated. Continuing with the example of the class of computer equipment, an individual piece of equipment may be assigned a seven-year useful life, but remain in service for a greater or lesser period of time in reality. The assignment of such a useful life to the asset class or group, in accordance with GAAP, is a simplifying assumption for purposes of accounting for the asset and its depreciation.

18. The seven-year decay factor is not to say every customer will persist for seven years, or that all customers will cease to be customers after seven years, but rather that a seven-year attrition period is reasonable.

19. I considered the reasonableness of the sales projections and business risk discount rate, applied by Quist in the Quist Report and reviewed and evaluated by PWC, before applying them in my methodology. I concluded that the sales projections and business risk discount rate were within a range of reasonableness based upon my years of business valuation, accounting and auditing experience.

20. Implicit in the analysis performed by Quist is a conclusion that NQH paid a reasonable sum to acquire NetQuote. In addition, I have confirmed that NetQuote has not recognized impairment to the value of the assets acquired since their acquisition. Although an evaluation of the purchase price NQH paid for NetQuote was not within the scope of my evaluation, the fact that NetQuote has not recognized impairment to the value of the assets acquired, as it would be required to do under GAAP if the asset values were impaired, suggests

that NQH paid a reasonable price to acquire NetQuote under the circumstances existing in at or about the date of the acquisition.

21. I considered both the credits NetQuote issued to customers and the terms on which customers purchased in constructing my overall methodology. I took these items into consideration by applying a significant discount in the quantification phase of my analysis to account for the possibility that customer losses occurred for reasons other than MostChoice's conduct.

22. I understand that MostChoice contends that the Common Stock Valuation of NetQuote Holdings, Inc. (the "Common Stock Valuation Report") supports its contention that NQH overpaid to acquire NetQuote. That Report does not purport to value NetQuote as a whole or to value its customer relationships. Rather, that Report was prepared pursuant to FASB No. 123(R), which requires that the cost of share-based payments (such as employee stock options) be valued and recognized as an expansion on the financial statements.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 3, 2008.

_____
Stephen A. Duree
Duree Barton Professional Corporation

fb.us.2507776.05