IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

 Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

 Defendants.

---

### REPLY IN SUPPORT OF NETQUOTE'S MOTION FOR SUMMARY JUDGMENT ON MOSTCHOICE'S COUNTERCLAIM

---

Plaintiff NetQuote, Inc. ("NetQuote"), in reply to MostChoice.com, Inc.'s Response To Plaintiff NetQuote's Motion for Summary Judgment ("Resp.") (Dkt. # 170), states as follows:

### INTRODUCTION

MostChoice presents no evidence – by affidavit, deposition excerpt, interrogatory response, or otherwise – to support two required elements of its fraud claim: (1) misrepresentation and (2) justifiable reliance. Because MostChoice failed to carry its burden, NetQuote is entitled to summary judgment on MostChoice's Counterclaim. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). MostChoice's new allegation that NetQuote clicked on its advertisements thousands of times – which NetQuote emphatically denies – likewise is not supported by any admissible evidence, and in any event is irrelevant to the purely legal question posed by NetQuote's motion.

MostChoice also asks this Court to permit its counterclaim to survive under the theory that the claim falls within the scope of "intentional tort" as recognized by Restatement (Second) of Torts. MostChoice has not brought a cause of action on such a theory. And even if it had, Georgia law has not adopted this tort. Moreover, MostChoice offers no evidence to support its claim that NetQuote has committed a necessary element of the tort – unjustifiable conduct. Thus, this new theory for relief cannot save MostChoice's counterclaim.

I. **MOSTCHOICE PROVIDES NO EVIDENCE OF ANY MISREPRESENTATION.**

MostChoice cites no case in which "click fraud" has been held to be common-law fraud. MostChoice relies on *In re Miva, Inc., Sec. Litig.*, 511 F. Supp. 2d 1242 (M.D. Fla. 2007), in which the plaintiffs alleged *securities fraud* based on statements that the defendants had made to the market in press releases, public securities filings and investor conference calls. *Id.* at 1250-58. *Miva* has nothing to do with the question whether click fraud could be common-law fraud.

MostChoice next argues that NetQuote's fraud claim is "virtually identical" to MostChoice's. (Resp. 2.) Its argument ignores the crucial difference between the parties' claims. MostChoice admits that it "submitted fictitious applications" to NetQuote's websites containing false information. (*Id.*) In other words, MostChoice's conduct involved lying to NetQuote thousands of times. MostChoice does not allege – much less introduce evidence to create a fact dispute – that NetQuote lied to it when its employees clicked on MostChoice's paid advertisements, and for good reason: a computer user makes no representation at all – by words or deeds – when the user clicks on one of MostChoice's advertisements.

MostChoice argues inconsistently that "there is no dispute that NetQuote employees have clicked [on MostChoice's advertisements for a reason other than] an interest in MostChoice's

2

services." (Resp. 2.) But MostChoice then concedes that it is permissible to click on its advertisements even if a computer user does not wish to use MostChoice's services by completing an application. (Resp. 3.)

NetQuote put before this Court evidence that its clicks on MostChoice's advertisements were for the purpose of viewing the content on MostChoice's website linked to the advertisements. (Mot. Ex. 1, Coccari Decl. ¶¶ 6-8.) MostChoice's Chief Executive Officer agreed at deposition that viewing the website's content is a valid use of the website. (Mot. Ex. 2, Fleischmann Dep. 105:22-106:17.) Because MostChoice submits no affidavits or other evidence to the contrary, the undisputed record shows that NetQuote clicked on MostChoice's paid advertisements for legitimate purposes not involving any misrepresentations. Accordingly, NetQuote is entitled to summary judgment.

## II. MOSTCHOICE POINTS TO NO EVIDENCE OF JUSTIFIABLE RELIANCE.

MostChoice contends that the question of justifiable reliance must be presented to the jury and cannot be resolved as a matter of law. (Resp. 3-4.) While justifiable reliance generally is an issue to be decided by a jury, a party cannot avoid summary judgment unless the party introduces "some evidence" to show that its reliance was justifiable. *Dyer v. Honea*, 557 S.E.2d 20, 24 (Ga. Ct. App. 2001) ("Although questions of due diligence often must be resolved by the trier of fact, that is not always the case."). Having introduced no evidence of justifiable reliance at all, MostChoice's fraud claim fails.

## III. THERE IS NO ADMISSIBLE EVIDENCE OF THE ALLEGED THOUSANDS OF CLICKS ON MOSTCHOICE'S ADVERTISEMENTS.

MostChoice offers a one-page, unsigned document written by an anonymous MostChoice author to support its new theory that NetQuote is "believed" to have clicked on

3

MostChoice's paid advertisements "over 8,000" times. (Resp. 4 & Ex. A p. 4.) Even if the number of clicks on MostChoice's advertisements were legally relevant, the document, which amounts to nothing more than speculation that some user of AOL might be a NetQuote employee, would not qualify as admissible evidence to create a genuine dispute of fact. *See, e.g.*, *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.").

Even if the document had been converted into an affidavit of a MostChoice employee, it still would not be admissible. The document contains a set of assumptions attempting to link one or more AOL accounts to NetQuote based on opinions as to what is "highly likely" in the computer industry and technical opinions regarding use of various versions of computer software. (Resp. Ex. A p. 4 at ¶¶ 13, 15, 17.) Such opinions could be admissible only as expert testimony, but MostChoice has not designated expert witnesses to testify about computer technology, and Exhibit A to MostChoice's response does not purport to be authored by any such experts *See* Fed. R. Evid. 701, 702.[1]

## IV. "INTENTIONAL TORT" WAS NOT PLEADED, IS NOT A RECOGNIZED CAUSE OF ACTION, AND WOULD NOT BE SATISFIED IN THIS CASE.

MostChoice argues that, even if clicking on its paid advertisements is not fraud, it is still actionable as "intentional tort" as defined by Restatement (Second) Torts § 870. (Resp. 4-5.) The Counterclaim does not contain a cause of action for "intentional tort." A claim not actually pleaded cannot preclude entry of summary judgment. *See Bd. of Trs. of Trucking Employees of N.J. Welfare Fund, Inc. v. Kero Leasing Corp.*, 377 F.3d 288, 296 & n.7 (3d Cir. 2004) (cause of

---

[1] Simultaneously with its Response, MostChoice filed a motion for relief pursuant to Fed. R. Civ. P. 56(f) in light of its outstanding subpoena to AOL. As NetQuote explains in its Response to the Rule 56(f) Motion, which is being filed concurrently with this Reply Brief, on January 14, 2008, AOL responded to the subpoena by informing MostChoice that it has no responsive documents.

action not set forth in complaint cannot serve as basis to deny summary judgment); *accord Bishop v. Romer*, 1999 WL 46688, at *3 (10th Cir. Feb. 3, 1999); *Clark v. Sierra*, 837 F. Supp. 1179, 1181 (M.D. Fla. 1993).[2]

Furthermore, as MostChoice itself concedes, "intentional tort" has not been recognized under Georgia law, which is the law that MostChoice has pleaded as the governing law, (Counterclaim, 2, Dkt. # 87). (Resp. 5.) MostChoice provides no good reason why this Court should create a tort not recognized under Georgia law.[3]

Finally, MostChoice acknowledges that "intentional tort" requires proof that the conduct "was not justifiable under the circumstances." (Resp. 5 (quoting Restatement (Second) of Torts § 870).) NetQuote submitted a declaration explaining that the clicks on MostChoice's advertisements were for a permissible business purpose. (Mot. Ex. 1 Coccari Decl. ¶¶ 6-8.) Having failed to provide any rebuttal declaration or other evidence, MostChoice has not established a genuine dispute of fact that NetQuote's clicks on its websites were for an unjustifiable purpose.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in NetQuote's opening brief, summary judgment on MostChoice's Counterclaim should be granted in NetQuote's favor.

---

[2] Arguing to the contrary, MostChoice cites *Pacificare v. Martin*, 34 F.3d 834, 838 (9th Cir. 1994), but the language it cites is from a dissent and is specifically rejected by the majority opinion. (Resp. 4.)

[3] Georgia appears to recognize a version of this tort much narrower than that set forth in the Restatement. The version it recognizes, called "tortious misconduct," applies only in the "invitee-invitor relationship." *See* W.E. Shipley, *Prima Facie Tort*, 16 A.L.R.3d 1191 § 3(b) (1967).

Dated: January 18, 2008                    Respectfully submitted,

  /s Daniel D. Williams
Daniel D. Williams
Teresa Taylor Tate
FAEGRE & BENSON LLP
1900 Fifteenth Street
Boulder, Colorado 80302
Tel: (303) 447-7700 / Fax: (303) 447-7800
E-mail:    dwilliams@faegre.com
             ttate@faegre.com

David W. Stark
Heather Carson Perkins
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Tel:  (303) 607-3500 / Fax:  (303) 607-3600
E-mail:    dstark@faegre.com
             hperkins@faegre.com

**Attorneys for Plaintiff NetQuote, Inc.**

# CERTIFICATE OF SERVICE

I certify that on this 18th day of January, 2008, I electronically filed the accompanying **REPLY IN SUPPORT OF NETQUOTE'S MOTION FOR SUMMARY JUDGMENT ON MOSTCHOICE'S COUNTERCLAIM** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Ryan L. Isenberg, Esq.
ISENBERG & HEWITT, P.C.
7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
Atlanta, GA 30328
ryan@isenberg-hewitt.com



/s Daniel D. Williams