IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

## NETQUOTE'S SUR-REPLY TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY

Plaintiff NetQuote, Inc. ("NetQuote"), through counsel, respectfully submits its Surreply to the Motion to Exclude Expert Testimony (the "*Daubert* Motion") filed by Defendants MostChoice.com, Inc. and Brandon Byrd (collectively, "MostChoice").

### INTRODUCTION

Neither the Expert Witness Report of Mark Zyla ("Zyla"), submitted by MostChoice in support of its *Daubert* Motion,[1] nor his deposition testimony provide any basis for excluding the expert opinions of Stephen A. Duree ("Duree"). Rather, Zyla offers merely a critique of Duree's methodology and alternative damages calculation. Such a challenge does not go to the

---

[1] On October 1, 2007, Duree issued his Report on NetQuote's Damages Resulting from Byrd/MostChoice Submission of Malicious Applications to NetQuote and the Related Effects on NetQuote and its Business ("Duree Report"). On December 14, 2007, MostChoice filed its *Daubert* Motion. On January 22, 2008, after receiving two extensions of the deadline for disclosing its expert, MostChoice produced its Expert Witness Report (the "Zyla Report"). On January 23, 2008, MostChoice submitted the Zyla Report to the Court, and on February 4, 2008, the Court gave NetQuote leave to file this sur-reply.

admissibility of Duree's opinions under *Daubert*. It creates a "battle of expert witnesses" for the jury to decide and, accordingly, MostChoice's *Daubert* Motion should be denied.

**ANALYSIS**

**A.      Use of the Quist Report**

      **1.      Zyla's Testimony Demonstrates that Duree's Use of the Quist Report Was Appropriate.**

Zyla and MostChoice generally take issue with Duree's use of the Quist Report in his analysis. (Zyla Report, filed January 23, 2008 Docket No. 191.) Although Zyla raises three issues with how Duree used the Quist Report, discussed below, he does not have any criticism for the Quist Report itself or question its fundamental reliability for determining the financial statement value of NetQuote's customer relationships. Indeed, Zyla testified that:

- Quist is a reputable valuation firm, (*id.*, Zyla Tr. at 124:10-12, excerpts attached as Exhibit 1)[2];

- He has no criticism of the Quist Report, (Zyla Tr. at 153:23-25);

- The analysis in the Quist Report was incorporated into and carried forward on NetQuote's audited financial statements, (*id.*, Zyla Tr. at 123:18-22), the accuracy of which management and third parties (such as investors and lenders) are entitled to rely upon, (*id.*, Zyla Tr. at 147:13-148:24);

- Quist would have conducted procedures and analysis to validate the data and assumptions used to reach its valuation conclusions (*id.*, Zyla Tr. at 89:2-25);

- Pricewaterhouse Coopers, which audited NetQuote's financial statements, is a reputable auditor, (*id.*, Zyla Tr. at 123:13-15), and would have vigorously tested the Quist Report's conclusions, (*id.*, Zyla Tr. at 117:3-118:21, 119:10-17);

- The Quist Report provides reliable evidence for the value of NetQuote's customer relationships. (*id.*, Zyla Tr. at 123:13-15).

Thus, the testimony of MostChoice's own expert further demonstrates that Duree's reliance on the Quist Report as part of his analysis was justified. *See In re Sulfuric Acid*

---

[2] Excerpts of Mr. Zyla's testimony attached hereto are from the rough draft of the deposition transcript, as a final transcript is not yet available.

*Antitrust Litig.*, 235 F.R.D. 646, 653 (N.D. Ill. 2006); *see also Bauman v. Centex Corp.*, 611 F.2d 1115, 1120 (5th Cir. 1980) *B.J. Tidwell Indus., Inc. v. Diversified Home Prods.*, 2007 WL 3118300 at *2 (W.D. Tex. Oct. 19, 2007).

### 2. Zyla's Specific Criticisms of Duree's Analysis Do Not Go to Admissibility.

Zyla also raises three specific issues with how Duree used of the Quist Report, none of which provide a basis for exclusion. First, he contends that Duree used financial statement values for customer relationships, which are based on a "market participant" assumption, without consideration of the value of the customer relationships to NetQuote itself. (Zyla Report at 2.) Zyla conceded, however, that concern would be alleviated either if (1) NetQuote assigned the same value to its customer relationships as a market participant, or (2) if Duree explicitly had considered the hypothetical difference between the values. (Ex. 1, Zyla Tr. at 99:18-100:8.)

Second, Zyla contends that Duree did not consider whether a customer that existed as of the date of the Quist Report should have been assigned a shorter life because of the passage of time between the Quist Report and Duree's analysis. (Ex. 1, Zyla Tr. at 106:1-8.) Zyla concedes that this criticism does not apply to customers who joined NetQuote after the date of the Quist Report, and testified that he didn't have an opinion on the impact this criticism may have on the analysis. (*Id.*, Zyla Tr. at 107:11-25.)

Third, Zyla contends that the seven year decay period used in the Duree Report is not based on any quantitative analysis. Notwithstanding Zyla's contention, MostChoice has still offered no evidence that a seven-year decay factor was inappropriate so as to render Duree's entire methodology unreliable. Indeed, Zyla testified that he had no opinion on what an appropriate decay period might be and testified as to the procedures that he would expect Quist,

3

as a reputable valuation firm, to have applied in quantifying the decay period. (*Id.*, Zyla Tr. at 114:19-24; 109:20-111:3.)

Most fundamentally, it is for the jury to determine the appropriateness of Duree's use of these assumptions. Both the reasonableness of assumptions underlying an expert's damages analysis and another expert's criticisms are matters for the jury to consider in weighing evidence. *Humetrix, Inc. v. Gemplus, U.S.A.*, 268 F.3d 910, 919 (9th Cir. 2001); s*ee also* Weinstein's Federal Evidence § 7-205[3] (noting that "experts often disagree" and the court's *Daubert* analysis does not "extend to an analysis of which, among two competing and contradictory expert opinions, is the more reliable or helpful"). Accordingly, Zyla's criticism provides no basis on which to exclude Duree's opinions.

**B.      Zyla's Criticisms of Duree's Causation Analysis Provide No Basis for Exclusion**

Zyla next criticizes Duree's analysis for supposedly assuming causation as to the 159 lost accounts. Significantly, Zyla testified that he has no opinion on whether any of the individual affected accounts actually terminated their relationship with NetQuote as a result of MostChoice's conduct. (Ex. 1, Zyla Tr. at 129:21-23.) Zyla also testified that, although he may have analyzed it differently, he would have considered the same data relied upon by Duree in his analysis. (*Id.*, Zyla Tr. at 140:18-142:5.) Thus, at most, Zyla's opinions go to the weight of Duree's opinions, but not their admissibility. *Crow v. Marchand*, 506 F.3d 13, 18 (1st Cir. 2007) (holding that objections to the factual underpinnings of the expert's investigation go to the weight but not admissibility of proffered expert testimony); *Humetrix, Inc.*, 268 F.3d at 919.

**C.      Zyla's Criticism of Duree's Valuation Methodology Provide No Basis for Exclusion**

Finally, Zyla takes issue with Duree's assumption in the quantification phase that certain costs should be excluded in calculating the value of the lost customer relationships. Duree

calculated the present value of the revenue stream of NetQuote's existing customer relationships before related costs in arriving at a multiplier that was applied to each customer's average monthly revenue to calculate the value of the customer's relationship. (Ex. A-22 to *Daubert* Motion, Duree Report at SD0019.) Duree excluded costs in this calculation because there was no evidence that NetQuote would experience cost savings as a result of losing these customers. (*Id*.) While Zyla disagreed with this assumption, Zyla could not identify any cost saving that NetQuote realized as a result of losing customers and conceded that there may be circumstances where he would conclude it was appropriate to exclude these costs. (*Id.*, Zyla Tr. at 134:4-11, 136:2-6.) Ultimately, it is for the jury to determine whether Duree or Zyla applied a better analysis. *Humetrix, Inc.*, 268 F.3d at 920.

## CONCLUSION

For the reasons set forth above and in NetQuote's Response, the *Daubert* Motion should be denied.

Dated: February 22, 2008

Respectfully submitted,

*s/ Heather Carson Perkins*

| | |
|---|---|
| David W. Stark | Daniel D. Williams |
| Heather Carson Perkins | Teresa Taylor Tate |
| FAEGRE & BENSON LLP | FAEGRE & BENSON LLP |
| 3200 Wells Fargo Center | 1900 Fifteenth Street |
| 1700 Lincoln Street | Boulder, Colorado 80302 |
| Denver, Colorado 80203 | Tel: (303) 447-7700 / Fax: (303) 447-7800 |
| Tel: (303) 607-3500 / Fax: (303) 607-3600 | E-mail: dwilliams@faegre.com |
| E-mail: dstark@faegre.com | ttate@faegre.com |
| hperkins@faegre.com | |

# CERTIFICATE OF SERVICE

I certify that on this 22nd day of February, 2008, I electronically filed the accompanying **NETQUOTE'S SUR-REPLY TO DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

Ryan L. Isenberg, Esq.
ISENBERG & HEWITT, P.C.
7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
Atlanta, GA 30328
ryan@isenberg-hewitt.com

*s/ Veronica Thomas*

fb.us.2633898.02