IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado corporation,

    Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

MOSTCHOICE.COM, INC., a Georgia corporation,

    Defendants.

## NETQUOTE'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO TAKE PRESERVATION DEPOSITIONS

Plaintiff NetQuote, Inc. ("NetQuote"), through counsel, respectfully submits this Response to MostChoice.com, Inc.'s ("MostChoice") Motion for Leave to Take Preservation Depositions (the "Motion").

### INTRODUCTION

Dissatisfied with this Court's denials of both its motion to take 150 additional hours of depositions and its motion to reconsider the first denial, MostChoice now mounts a third attempt to exceed the limits of the Scheduling Order and the Federal Rules of Civil Procedure—this time under the guise of "preservation depositions."

Even if a distinction exists between discovery depositions and preservation depositions generally, the depositions that MostChoice seeks here are discovery depositions that are outside both the numerical and time limitations set forth in the Scheduling Order and the Federal Rules.

Moreover, even if these depositions could be viewed as preservation depositions, MostChoice fails to make the showing required for the Court to permit these depositions. Accordingly, MostChoice's Motion should be denied.

## ANALYSIS

### I. THE COURT HAS RULED AGAINST MOSTCHOICE ON THIS ISSUE TWICE.

As MostChoice concedes, it previously sought leave to take additional depositions, including the 157 local account customers it seeks leave to depose by the present Motion. (Mot. at 2.) Specifically, on October 18, 2007, MostChoice filed Defendant Mostchoice.com's Motion for Leave to Take Additional Depositions, for Additional Time to Complete Written Discovery, and to Modify the Scheduling Order Accordingly, requesting 150 hours of deposition time to depose the 157 local agents identified in NetQuote's expert report. (Dkt. # 93.) On November 14, 2007, this Court denied that request because MostChoice failed to demonstrate good cause for the additional depositions, as required under the Scheduling Order ¶ 13, (Dkt. # 26), and Rule 16(b). (Minute Order (Dkt. # 104).)

On November 21, 2007, MostChoice filed its Motion for Reconsideration of Defendants' Motion for Additional Depositions. (Dkt. # 111.) This Court denied the Motion for Reconsideration, holding that "Defendants provided no binding case support nor persuasive arguments for the grant of 150 additional hours for depositions in this three-party case." (Order on Mot. for Reconsideration (Dkt. # 122).) MostChoice appealed neither the Court's November 13, 2007 Order denying the original motion to take additional depositions, nor the November 28, 2007 Order denying reconsideration.

MostChoice once again seeks to revisit the issue. But as discussed below, nothing has changed since it filed its original motion. Notwithstanding the Court's admonition that it would

2

be important to talk with the witness before filing a motion, MostChoice has not contacted any of the proposed deponents. As a result, MostChoice is just rearguing its earlier motions. Reconsideration under Rule 59 is both a time sensitive and an extraordinary remedy that is not supported by MostChoice's present Motion. Had MostChoice wanted Judge Ebel to re-examine the issue, it could have filed a Rule 72 objection. MostChoice has waived such an appeal by failing to make a timely objection.

      **A.    MostChoice Presents No Extraordinary Circumstances to Justify Its Untimely Motion for Reconsideration as Required Under Rule 59.**

No matter what it is called, MostChoice's Motion is really a motion to alter the Court's November 13 and November 28, 2007 rulings under Fed. R. Civ. P. 59(e). Under Rule 59(e), however, a motion to alter or amend a judgment must be filed no later than 10 days after the entry of the challenged order or judgment. MostChoice's present Motion is an untimely challenge to the Court's earlier rulings.

In addition, reconsideration under Rule 59(e) is reserved for extraordinary circumstances, such as where the court has misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the party presented for determination. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000); *Sithon Mar. Co. v. Holiday Mansion*, 177 F.R.D. 504, 505 (D. Kan. 1998). MostChoice presents no such extraordinary circumstances. For that reason alone, the Motion should be denied.

      **B.    MostChoice Waived Appeal of the Issue by Failing to File a Timely Objection Under Rule 72.**

Moreover, the proper procedural vehicle to challenge the Court's rulings would have been the timely filing of an objection, as permitted by Fed. R. Civ. P. 72. MostChoice had ten

3

days to object to either or both rulings, but chose not to do so.  MostChoice may not now re-raise the issue.

The Tenth Circuit has adopted the "firm waiver rule," which provides that a litigant waives appellate review of both the factual and legal determinations in a magistrate judge's report and recommendations where the litigant fails to file timely objections under Rule 72(b). *In re Key Energy Res., Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000) (citing *Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999)).  The interests of justice—the only exception to the firm waiver rule that could conceivably apply here—do not justify the relief MostChoice requests.  *Id.*  The Tenth Circuit has held that, in cases where the party is represented by counsel, the court should focus on the facts that purport to excuse the lack or untimeliness of the filing of objections.  *Id.*  MostChoice makes absolutely no argument explaining why it failed to file a timely objection to this Court's November orders.  Therefore, the firm waiver rule bars revisiting the Court's orders now.

**II.  THE DEPOSITIONS MOSTCHOICE PROPOSES ARE REALLY DISCOVERY DEPOSITIONS.**

MostChoice attempts to circumvent this Court's earlier rulings by recasting the depositions it seeks to take as preservation depositions.  (Mot. at 3-4.)  In reality, the depositions MostChoice requests are late discovery depositions.

**A.  MostChoice is Seeking Discovery From the Local Accounts and Other Witnesses it Seeks to Depose—Not Trial Testimony.**

Although the Federal Rules draw no such distinction, some courts draw a practical distinction between discovery depositions and preservation (or trial) depositions.  *See Estenfelder v. Gates Corp.*, 199 F.R.D. 351 (D. Colo. 2001); *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, 2007 WL 2935818, at *2 (D. Colo. Oct. 5, 2007); *Vaughn v. Stevenson*, 2007 WL 460959 (D.

4

Colo. Feb. 7, 2007). "[I]n a trial deposition, the parties are simply seeking a means for introducing the deponent's testimony at trial, and discovery is a matter of secondary concern, or not a concern at all." *Estenfelder*, 199 F.R.D. at 355 (internal quotations omitted). In contrast, a discovery deposition is intended to gather evidence which may or may not be used at trial.

In determining whether a deposition is a discovery deposition or a preservation deposition, courts look to a number of factors. *Id.* Courts consider whether the witness can be relied upon to voluntarily appear at trial as a threshold question. *See id.* at 352; *Vaughn*, 2007 WL 460959, * 4 (considering the circumstances that make it unreasonable to present the witness live at trial). Courts also consider the purpose for which the deposition is being taken, whether the moving party knows what the deponent will testify to, and whether the deponent is the moving party's own witnesses. *Estenfelder*, 199 F.R.D. at 355.[1]

Where, as here, the moving party cannot make a showing regarding the deponent's expected testimony, the deposition should be viewed as a discovery deposition masquerading as a deposition to preserve testimony for trial. The same is true when the party seeks the deposition of an opposing party or an un-friendly witness. *Id*; *accord Prince Lionheart, Inc.*, 2007 WL 2935818, at * 2 ("[A]s Defendant is attempting to depose a friendly witness, and as Defendant already knows the content of Ms. King's testimony, the Court holds that this is a trial deposition and not for the purpose of discovery.") Late requested third-party depositions are also viewed with skepticism:

---

[1] *Accord Vaughn*, 2007 WL 460959, at * 4 (stating that "where a party seeks leave to conduct a deposition of a previously-undeposed witness for purposes of testimony preservation, the Court will require a showing: (i) of circumstances that make it unreasonable to present the witness live at trial; (ii) that the witness' testimony is both substantial, relevant, and not reasonably available from another witness or item of evidence; (iii) that permitting the deposition will not result in undue prejudice, substantively or economically, to the opposing party; and (iv) of sufficient constraints to be placed on the scope and duration of the deposition to minimize inconvenience, expense, and the prejudice to the witness and the opposing party").

5

> Where a party makes a tactical decision during discovery to refrain from deposing a non-party witness who is beyond the subpoena power of the court, but who has relevant information to offer in the case, that party takes the risk that the testimony will not be presented at trial if the witness does not voluntarily appear.

*Integra Lifesciences I, Ltd. v. Merck KgaA*, 190 F.R.D. 556 (S.D. Cal. 1999) (cited with approval by *Estenfelder*, 199 F.R.D. at 353 (stating that a tactical decision not to depose a witness within the discovery time frame implied that the lawyers sought the depositions outside of the discovery cutoff for ulterior purposes)); *accord Vaughn*, 2007 WL 460959, at * 4 ("leave to conduct a preservation deposition may not be appropriate where the party seeking it had the opportunity to depose a witness during the discovery period and chose not to").

MostChoice runs afoul of all of these guidelines for distinguishing between a discovery and preservation deposition. First, MostChoice makes no showing as to the expected testimony of the 157 local agents because, by MostChoice's counsel's candid admission at the February 20, 2008 Final Pretrial Conference, MostChoice has not contacted any of the local agents to ascertain the content of their testimony. (Final Pretrial Conference Tr. 25, February 20, 2008, excerpt attached hereto as Exhibit A.) Given this admission, MostChoice simply cannot dispute that the depositions of the local agents are geared toward discovery. Second, these depositions are discovery depositions because MostChoice doesn't know whether the witnesses are friendly to it or not. Finally, there can be no dispute that MostChoice is seeking these depositions long after the discovery cutoff.

### B. MostChoice's Arguments Miss the Point.

MostChoice's contention that its failure to conduct any interviews because it did not know the identity of the local agents before December 13, 2007, is without merit. First, accepting MostChoice's assertion, MostChoice still offers no justification for its failure to

6

conduct a single local agent interview between December 13, 2007 and the Final Pretrial Conference some two months later.  Second, MostChoice ignores that it had information about NetQuote's agents as a direct and intended result of Byrd's malfeasance.  MostChoice has produced screen shots and databases during the course of discovery detailing the agent names and contact information collected as a result of Byrd's false submissions.  Likewise, MostChoice's counsel was aware of the identities of the local agents significantly impacted by its false submissions on October 1, 2007, when it received NetQuote's expert report.

MostChoice argues that it needs these additional depositions as its only means to refute NetQuote's causation evidence.  MostChoice contends that NetQuote's expert evidence of causation is inadequate and goes so far as to label it "far fetched," while simultaneously arguing that it requires over a hundred additional depositions to refute it.  (Mot. 3.)  MostChoice cannot have it both ways.  If MostChoice is correct that the record as it currently exists shows that NetQuote's causation evidence is "far fetched," then these additional depositions are wholly unnecessary and MostChoice has all of the evidence it needs to present its case to the jury on a question for which it does not have the burden of proof.

MostChoice already has had the opportunity to cross-examine NetQuote and non-party witnesses as to causation.  For example, non-party deponents Mary Bro, Paul Goot, and John Doria, as well as NetQuote employee Scott Streigel, all provided testimony supporting the conclusion that MostChoice's conduct caused the loss of the two national accounts that represent approximately half of NetQuote's lost-customer damages claim.  Moreover, MostChoice already has deposed NetQuote witnesses about the responses of the local accounts to MostChoice's barrage of false applications through NetQuote's systems.  MostChoice wants more depositions now because the testimony taken to date strongly supports NetQuote's damages claim.

7

In addition to the 157 local agents, MostChoice lists eight other non-party witnesses it seeks to depose. (Mot. at 6-7, Exhibit A.) MostChoice concedes that the witnesses "would be substantially cumulative of each other," and, therefore, seeks only to depose three of the eight for use at trial. (*Id*. at 7.) And while MostChoice claims that it knows how each of the eight will testify, the fact that MostChoice cannot identify which three it will depose belies the fact that the depositions are for discovery purposes. (Mot. at 6.) MostChoice does not offer any explanation for the need to depose these non-party witnesses outside of the discovery deadlines. Thus, because there still is no good cause to allow additional discovery depositions, the Motion should be denied.

Finally, MostChoice's argument that the Court is arbitrarily limiting the number of witnesses it may present at trial is without merit. As discussed above, all of the depositions MostChoice seeks are for discovery purposes. The limitations on discovery are provided for in the Federal Rules of Civil Procedure and the parties moreover agreed to a ten-deposition limit in the Scheduling Order. Because the depositions requested are outside both the limits of discovery permitted under the Federal Rules and the Scheduling Order, and are untimely, MostChoice's Motion should be denied.

### III. A BALANCING OF THE FACTORS WEIGHS AGAINST ALLOWING MOSTCHOICE ADDITIONAL DEPOSITIONS AT THIS LATE DATE.

Even if the Court were to accept MostChoice's characterization of the requested depositions as being for purposes of preservation instead of for discovery, MostChoice has still failed to meet the standard for obtaining the depositions. In determining whether to allow a late preservation deposition, a court should balance four factors: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that

party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order. *Estenfelder*, 199 F.R.D. at 356. None of these factors favors the additional depositions.

First, permitting MostChoice to depose third-parties at this late date will result in prejudice to NetQuote. MostChoice admits that its request will result in "substantial cost and time." (Mot. at 7.) A great deal of time and expense will be involved in preparing for the depositions, deposing the witnesses, and reviewing the testimony. Moreover, MostChoice proposes that it be permitted to conduct depositions until 30 days before trial, thereby burdening NetQuote with simultaneously preparing for and conducting depositions while also preparing for trial. (Proposed Order Granting Defendants' Motion for Leave to Take Preservation Depositions ¶ 6.) Finally, the likely delay in getting the case to trial that permitting this large number of depositions would cause would also result in further prejudice to NetQuote, because MostChoice refuses to cease and desist from its wrongful conduct.

Second, it is noteworthy that the cases cited by MostChoice involved requests for depositions of between one and four witnesses. *See Estenfelder*, 199 F.R.D. at 352 (allowing the moving party to take preservation depositions of its four former employees); *Odell v. Burlington N. R.R.*, 151 F.R.D. 661, 663 (D. Colo. 1993) (permitting three preservation depositions); *Prince Lionheart, Inc.*, 2007 WL 2935818, at * 1 (permitting one preservation deposition). This is a far cry from the 157 local agent depositions and 8 non-party depositions MostChoice requests. (Mot. at 6-7.) Allowing MostChoice 165 additional depositions at this late date will necessarily disrupt the orderly and efficient trial of this case. *See Prince Lionheart, Inc.*, 2007 WL 2935818,

at * 3 (finding that it was unlikely that allowing <u>one</u> preservation deposition will disrupt the trial date) (emphasis added).

Finally, MostChoice has demonstrated a consistent disregard for deadlines.[2] It should not now be rewarded with additional excessive and untimely discovery. Moreover, as discussed in Part I, *supra*, this issue has already been fully briefed and decided by this Court twice. MostChoice should not be permitted to come back for a third bite at the apple and avoid the mandates of the discovery deadlines and limits of the case. On balance, the factors weigh in favor of not allowing MostChoice to proceed with 165 late third-party depositions.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Leave to Take Preservation Depositions should be denied.

Dated: March 3, 2008

Respectfully submitted,

*s/Heather Carson Perkins*

| | |
|---|---|
| David W. Stark | Daniel D. Williams |
| Heather Carson Perkins | Teresa Taylor Tate |
| FAEGRE & BENSON LLP | FAEGRE & BENSON LLP |
| 3200 Wells Fargo Center | 1900 Fifteenth Street |
| 1700 Lincoln Street | Boulder, Colorado 80302 |
| Denver, Colorado 80203 | Tel: (303) 447-7700 / Fax: (303) 447-7800 |
| Tel: (303) 607-3500 / Fax: (303) 607-3600 | E-mail: dwilliams@faegre.com |
| E-mail: dstark@faegre.com | ttate@faegre.com |
| hperkins@faegre.com | |

---

[2] MostChoice contends that NetQuote produced documents after the discovery cut-off, (Mot. at 3), but fails to note that the records were produced in response to its late discovery request and within the time allotted by this Court.

# CERTIFICATE OF SERVICE

I certify that on this 3rd day of March, 2008, I electronically filed the accompanying **NETQUOTE'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO TAKE PRESERVATION DEPOSITIONS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

>Ryan L. Isenberg, Esq.
>ISENBERG & HEWITT, P.C.
>7000 Peachtree Dunwoody Road, Bldg 15, Suite 100
>Atlanta, GA  30328
>ryan@isenberg-hewitt.com

>*s/Heather Carson Perkins*