IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

**NETQUOTE INC**, a Colorado corporation,

    Plaintiff,

v.

**BRANDON BYRD**, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and

**MOSTCHOICE.COM, Inc.**, a Georgia corporation

___

**REPLY BRIEF IN SUPPORT OF
MOTION FOR LEAVE TO TAKE PRESERVATION DEPOSITIONS**
___

    COMES NOW, Mostchoice.com, Inc. ("Mostchoice") and files this its Reply Brief in Support of its Motion for Leave to Take Preservation Depositions and shows this Court the following:

<u>I. Expected Testimony of Proposed Deponents</u>

*A. Local Agents*

    Netquote makes two somewhat related assertions in its response that are patently false and not supported by law. First, Netquote claims that Mostchoice can't make a showing as to what the proposed witnesses will testify to when deposed. Second, Netquote's expert witness actually intends to testify that certain of the agents left for reasons that are either not supported by the Netquote customer service records ("Goldmine") or are flatly contradicted by them. Either way, Netquote's position is wholly without merit.

Counsel for Mostchoice has reviewed Netquote's Goldmine records and proffers that each agent is likely to testify consistent with the notes and communications contained in the Goldmine system as it relates to that agent.[1]

After reviewing these documents, which represent approximately 4,000 pages,[2] it appears that of the 157 identified local accounts, approximately 5-7 are likely to testify that they terminated as a result of receiving bad leads that may or may not be proven by Netquote as being related to Netquote's allegations in this case. The rest of the local agents would testify that they no longer did business with Netquote because Netquote terminated them for non-payment or collection issues, left because of something Netquote did, or simply retired, changed employers, or just did not want to purchase leads.

Both parties are in possession of the Goldmine records and there should be no reason to expect that the local agents will testify contrary to those records. Consequently, both parties should know what these witnesses would say if deposed. However, Netquote proposes to have its expert witness testify as a proxy on behalf of the local agents, and based on his supplemental report will testify **contrary** to most of the Goldmine records. Therefore, the issue is not necessarily whether Mostchoice knows what the agents will say, but that Mostchoice does know what Netquote's expert intends to say about why each of the agents terminated. And, because

---

[1] These documents have not only been reviewed thoroughly, but have been summarized by counsel, but it would seem inappropriate as a standard to require counsel to share his mental impressions of that summary, when the documents speak for themselves. It would further seem an undue burden on the Court to file these 4,000 pages in support of this motion. This is especially true in light of the Court's prior decision to grant a motion that was unsupported by more than the arguments of Netquote's counsel.

[2] After de-duplicating and in some cases de-triplicating documents.

Netquote's expert will essentially testify on behalf of 143 other people about why they are no longer Netquote customers it would raise serious due process concerns if Mostchoice is not allowed to rebut that testimony with the real reason the local agents terminated, which would otherwise be known as "the truth," which is the purpose of trial.   See **Mathews v. United States**, 485 U.S. 58, 72 (U.S. 1988) ("*The very nature of a trial is a search for truth*," citing **Nix v. Whiteside**, 475 U.S. 157, 165 (1986).[3]  Frankly, the only reason Netquote is so vehemently opposed to allowing Mostchoice to present the testimony of its former customers, is that it is well aware that their reasons for leaving have nothing to do with the allegations in its complaint, and it would be troublesome if Mostchoice is allowed to prove that.

Netquote has jumped on the Court's inquiry about whether or not Mostchoice attempted to interview the local agents, but cites no legal authority in support of that proposition.  It would seemingly defy logic to have such a requirement because the argument would go something like this: *A call is made to the witness residing in Virginia.  Witness will you come to trial in Colorado?  Answer: Yes*.  At this point, Netquote would argue that no preservation deposition is necessary because the witness would appear to be available to come to trial to testify.  Then, later when told to show on the trial date, the witness has a change of heart, changes jobs, or for whatever reason just changes his mind.  At that point, there is no way to get the witnesses testimony because he can't be compelled to attend the trial.  So, as demonstrated above, and as

---

[3]Netquote asserts that Mostchoice is somehow trying to argue contradictory positions by claiming that its expert's testimony is far fetched and needing the ability to present the testimony of these witness to contradict the same.  However, these are entirely consistent positions because the best method for ascertaining the truth, and demonstrating that Duree's proposed opinions are indeed far fetched, if he is allowed to testify at trial, is to have the local agents who Duree will be attempting to testify for in Court to testify for themselves.

discussed in the initial motion, the doctrine of availability is not applicable to taking a preservation deposition.

B. *Other Former Netquote Customers*

As part of the instant motion, Mostchoice attached an exhibit that contained both the names of these proposed witnesses as well as the expected testimony. It is of course not surprising that Netquote objects to allowing Mostchoice an opportunity to call witnesses to trial whose testimony would be to the effect that the overwhelming majority of Netquote's leads are garbage and are otherwise indistinguishable from the leads it claims caused harm that were submitted by Mostchoice.

Finally, while no attempt was made to contact the 157 local agents, these other former Netquote customers were either contacted by counsel or directly by Mostchoice employees before identification in the supplemental discovery response that is attached as the exhibit to the instant motion.

C. *No Tactical Decision Made*

No matter what argument is made, the Federal Rules cannot be applied as an arbitrary limit on the number of witnesses that a party may call to testify at trial. Mostchoice has made no tactical decision to sit quietly at a deposition of any of the proposed deponents. Mostchoice has not refused to attend any deposition, or noticed a deposition that was later withdrawn, which are some of the issues discussed in **Estenfelder v. Gates Corp.**, 199 F.R.D. 351, 355 (D. Colo. 2001) and **Vaughn v. Stevenson**, 2007 U.S. Dist. LEXIS 8864 (D. Colo. 2007) and the cases cited therein.

II.  Cost, Expense, and Delay is Netquote's fault

Any complaints about cost or delay are attributable to Netquote.  It is Netquote that has made the far reaching claims that it lost 157 local agents.  Oh, wait a minute . . . it seems to be 111 now.  Perhaps if we wait a little longer, Netquote will just admit that the agent terminations had little if anything to do with receiving Byrd's submissions, which were indistinguishable from those that are normally received from Netquote.

III.  Failure to "cease and desist" does not seem to be a problem.

Netquote claims that it would be prejudiced by allowing a perceived delay in getting this case to trial in Mostchoice is allowed to take these depositions.  However, such a claim is yet again contrary to the evidence.  The conduct that forms the basis of Netquote's complaint stopped voluntarily in July, 2007.  What is left apparently is only Netquote's complaint that its customers are so easily swayed to leave Netquote that the mere receipt of an occasional e-mail from Mostchoice's marketing e-mail database will continue to cause the kind of serious harm that would entitle them to some sort of injunctive relief on a tort claim.  However, as Netquote's expert has reduced the number of local accounts that were affected since he issued his report, the only conclusion that can be reasonably drawn is that Netquote continues to not suffer any harm at the hands of Mostchoice.

IV.  Waiver

This argument raised by Netquote is nothing more than a red herring.  The Court plainly denied discovery to take depositions because this was a "three party case," and the Court felt that such additional and substantially wasn't justified in case with only three parties.  There was no ruling on the issue of taking depositions for use at trial, though certainly had Mostchoice been

allowed to take the depositions it would have assisted in resolving much of this case on summary judgment because Mostchoice would have been able to demonstrate why the agents actually left.

V.  Claim that Mostchoice Disregards Deadlines is Ridiculous (and Irrelevant)

Netquote contends that "Mostchoice has demonstrated a consistent disregard for deadlines." (Resp. at 10). However, this is most certainly not true. Rather, as a matter of courtesy, every time in this case Netquote asked for an extension it was granted. The courtesy was not returned leaving Mostchoice no choice but to seek relief from the Court to obtain necessary extensions.

Second, the Goldmine documents should have been produced long before December 13th. They were subject to initial disclosure requirements [*F.R.C.P.§ 26(a)(1)(A)(ii) requires a copy--or a description by category and location--of all documents, electrically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment*]. The documents at issue are Netquote's documents and its expert is relying upon them to support Netquote's claims. Further, the documents were responsive to Requests for Document Numbers 1, 3, and 4 served in May, 2007. Yet, it was only after discovery expired, and practically speaking after dispositive motions were due that these documents were produced. Another thousand or so pages of documents were served even after that, and some other sporadic documents were also "discovered" after depositions. While this issue is not at all relevant to the one before the Court, to the extent Netquote seeks to complain about Mostchoice's "disregard" of deadlines, it should be pointed out that Netquote may too live in a glass house.

**Conclusion**

The result of the Court not allowing depositions would be staggering. It would be a ruling that the number of depositions contained in the Federal Rules controls the number of witnesses a party can compel to attend trial, and would constitute a ruling that Mostchoice had to choose between obtaining witness testimony and discovering information about Netquote's claims. Finally, such a ruling would allow the situs of a trial to determine what witnesses Mostchoice could and could not call. All of these are arbitrary and plainly abusrd results that are contary to due process and the search for truth. As inconvenient as it may or may not be, Mostchoice must be allowed to present those witnesses on its behalf whose testimony have bearing on the matters in this case.

This 5th day of March, 2008.

                                                                          **s/ Ryan Isenberg**
Ryan L. Isenberg, Esq.
Isenberg & Hewitt, P.C.
7000 Peachtree Dunwoody Road
Building 15, Suite 100
Atlanta, Georgia 30328
Telephone: 770-351-4400
Facsimile: 770-828-0100 (Fax)
Email: ryan@isenberg-hewitt.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5${}^{th}$ day of March, 2008, I served the foregoing Reply Brief in Support of Motion for Leave to take Preservation Depositions by electronic delivery, as an attachment to an email, to the following counsel of record:

David W. Stark
Heather Carson Perkins
Daniel D. Williams
Theresa T. Tate
FAEGRE & BENSON LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
dwilliams@faegre.com

                 **s/ Ryan Isenberg**