IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00630-DME-MEH

NETQUOTE, INC., a Colorado Corporation

       Plaintiff,

v.

BRANDON BYRD, an internet user making use of the IP Addresses 64.136.27.226 and 64.136.26.227, and
MOSTCHOICE.COM, INC., a Georgia corporation,

       Defendants.

_____

**ORDER**
_____

Plaintiff NetQuote has moved for injunctive and other equitable relief against MostChoice for false advertising in violation of § 43(a)(1)(B) of the Lanham Act. NetQuote points to three allegedly false statements made by MostChoice in its online advertising: (1) that MostChoice's leads are "Better Than NetQuote Leads"; (2) that MostChoice's leads are "[f]rom a solid company . . . [n]ot a 'fly by night' company like most lead companies"; and (3) that MostChoice's leads are better because they are subject to "Extensive Filtering for Highest Lead Quality." (See Pl. Ex. 140 & 141.) This court finds that NetQuote has failed to meet its burden of proof and DENIES this claim.

### I. Elements of a Lanham Act Claim

Section 43(a)(1)(B) of the Lanham Act provides:

> Any person who . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). To state a claim under the Lanham Act, NetQuote must establish the following five elements:

> (1) [MostChoice] made a false or misleading description of fact or representation of fact in a commercial advertisement about [its] own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) [MostChoice] placed the false or misleading statement in interstate commerce; and (5) [NetQuote] has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Zoller Labs., LLC. v. NBTY, Inc., 111 Fed. App'x 978, 982 (10th Cir. Oct. 12, 2004) (unpublished). NetQuote bears the burden of establishing each of these elements by a preponderance of the evidence. See World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1140 (10th Cir. 2006).

## II. Falsity

The Lanham Act prohibits advertising that is either literally false or technically true, but nonetheless misleading. See 15 U.S.C. § 1125(a)(1)(B) (prohibiting the use of "any . . . false or misleading description of fact") (emphasis added); Scotts Co. v. United Industries Corp., 315 F.3d 264, 273 (4th Cir. 2002) ("For liability to arise under the false advertising provisions of the Lanham Act, the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse

consumers given the merchandising context."). This court finds that NetQuote has failed to prove either the literal or implied falsity of MostChoice's statements.

### A. Literal Falsity

NetQuote does not spend must effort arguing that the "Better Than NetQuote Leads" statement was literally false. (See Pl. Br. at 5-6 (pointing only to the "fly by night" and "extensive filtering" statements in its discussion of literal falsity).) This approach makes sense in light of the evidence at trial, which tends to support MostChoice's claim that its leads were "better." For example, NetQuote admitted that it uses affiliate leads, and deposition testimony shown at trial indicated that affiliate leads tend to be poorer quality. On the other hand, MostChoice repeatedly asserted, and NetQuote failed to disprove, that MostChoice did not use affiliate leads during the time that these ads were online. The fact that MostChoice did not use affiliate leads also supports its claim that its leads are more carefully filtered than NetQuote's leads, as selecting the source of the lead itself can be viewed as a filtering process. Further, MostChoice established at trial that NetQuote sent each of its leads to a greater number of agents than MostChoice did, thereby diluting any single agent's likelihood of closing the sale from a particular lead. The market confirms that MostChoice leads are "better" by allowing MostChoice to command a higher price for its leads. NetQuote has failed, therefore, to prove that this statement was literally false.

NetQuote has also failed to prove, by a preponderance of the evidence, the literal falsity of MostChoice's claims that MostChoice's leads are "[f]rom a solid company . . . [n]ot a 'fly by night' company like most lead companies" and that MostChoice's leads

are subject to "Extensive Filtering." (See Pl. Ex. 140 & 141.) NetQuote presented no evidence establishing the falsity of MostChoice's claim that MostChoice is not a "fly by night" company. Further, although NetQuote has certainly shown that it is not a "fly by night" company, it presented no evidence to disprove MostChoice's claim that "most" lead companies are "fly by night" companies, and, in any event, this statement is entitled to some leeway as "puffery." Similarly, NetQuote has failed to prove that MostChoice's leads are not subject to "extensive filtering." In fact, MostChoice demonstrated that, unlike NetQuote, it does not purchase affiliate leads, which suggests that it may be more careful in selecting the leads it sell to its agents, and NetQuote did not establish that MostChoice's filtering was not extensive. NetQuote has failed to show, therefore, that these statements were literally false.

### B. Implied Falsity

NetQuote has also failed to prove, by a preponderance of the evidence, that any of MostChoice's statements were impliedly false. NetQuote argues that the "Better Than NetQuote Leads" statement is misleading because MostChoice's deceptive submissions to NetQuote for insurance quotes is what caused MostChoice's leads to be better, and this fact needed to be disclosed to prevent that statement from being misleading. However, to prove the implied falsity of the "Better Than NetQuote Leads" statement, NetQuote has the burden of demonstrating that, but for MostChoice's false submissions, MostChoice's leads would not have been "Better Than NetQuote Leads." NetQuote has failed to carry that burden. On the contrary, as discussed above, the evidence at trial showed that, even before MostChoice began submitting false

-4-

applications on NetQuote's website, MostChoice did not purchase affiliate leads, sold its leads to fewer agents, and commanded a higher price for its leads.  Further, the false submissions represented such a small percentage of NetQuote's total leads that, although actionable for their effect on specific agents who received those false leads, it is unlikely those false submissions materially affected the overall quality of NetQuote's leads.  Thus, NetQuote failed to show that the reason MostChoice's leads were better was because of MostChoice's false submissions for insurance quotes to NetQuote.

NetQuote has also failed to demonstrate the implied falsity of the "fly by night" and "extensive filtering" statements.  NetQuote has not shown that either of those statements contained a negative implication about NetQuote.  NetQuote is not specifically mentioned in conjunction with either of these claims, and this court finds that a reasonable consumer reading these ads would not think these statements were commenting specifically on NetQuote's product.

### III.  Other Elements

NetQuote's failure to prove the falsity of MostChoice's statements is a sufficient ground for this court to deny NetQuote's requested relief.  This court further finds, however, additional reasons to deny NetQuote's requested relief.

#### A.  Consumer Confusion

NetQuote provided little to no evidence of consumer confusion at trial, and this court finds that NetQuote has failed to prove, by a preponderance of the evidence, that any agents were actually misled by these advertisements or that these advertisements

were likely to mislead agents. Some of NetQuote's agents were confused by the false leads, but that confusion stemmed from the false leads, not from the advertisements. NetQuote provided only very vague and unconvincing evidence that any agents would have been likely to see these advertisements. This court gives no weight to that vague evidence. NetQuote also provided no evidence that agents actually focused on the statements in dispute and were confused thereby. Nor did NetQuote put on evidence to show that a reasonable agent would be confused by these statements. NetQuote has failed, therefore, to demonstrate that those advertisements "actually deceive[d] or ha[d] the tendency to deceive a substantial segment of its audience." Zoller Labs., 111 Fed. App'x at 982.

Instead of providing direct evidence of consumer confusion, NetQuote seeks to rely on two presumptions to circumvent the need for establishing consumer confusion. Namely, NetQuote argues it should be exempt from proving consumer confusion because: (1) it brought a claim for literal falsity; and (2) it demonstrated that MostChoice acted with the intent to deceive consumers. NetQuote is correct that the law recognizes these presumptions. See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002) ("[O]nce a court deems an advertisement to be literally false, the movant need not present evidence of consumer deception."); Scotts Co., 315 F.3d at 281 (stating that "a conclusion that a defendant intended to deceive triggers a presumption of consumer confusion that relieves a Lanham Act plaintiff of any obligation to present evidence of likely confusion").

NetQuote has failed to demonstrate that it is entitled to either of these presumptions of consumer confusion. NetQuote's failure to prove literal falsity has

already been discussed above. This court further finds that NetQuote has failed to prove, by a preponderance of the evidence, that MostChoice intended to mislead NetQuote's agents when placing these advertisements online. As discussed above, neither the "fly by night" or "extensive filtering" statements was a comment on NetQuote's product, so there is no reason to think that MostChoice intended to confuse consumers about NetQuote's product by making those statements. Second, NetQuote has failed to prove that MostChoice made the "Better Than NetQuote Leads" statement with the intent to confuse consumers. As discussed above, the evidence at trial supported MostChoice's claim that its leads were "better," even before MostChoice began submitting false applications on NetQuote's website. There is no evidence that, after MostChoice began submitting those false applications, its claim of superiority was designed to mislead or confuse consumers about NetQuote's product. MostChoice seemingly intended to lure NetQuote customers to MostChoice, but that is not enough to demonstrate an intent to mislead those customers. NetQuote is not, therefore, entitled to a presumption of consumer confusion in this case. Without the aid of these presumptions, NetQuote's failure to prove consumer confusion is fatal to its claim.

### B. Injury

NetQuote has not shown any actual or likely injury resulting from MostChoice's advertisements. It presented no evidence that its agents ever visited the site, or that anyone was influenced against purchasing NetQuote's leads as a result of seeing those advertisements. A Lanham Act plaintiff may be able to seek injunctive relief without evidence of injury if it can demonstrate literal falsity. See Balance Dynamics Corp. v.

Schmitt Industries, Inc., 204 F.3d 683, 693 (6th Cir. 2000) ("[M]ost of the circuits have ruled that when a statement is literally false, a plaintiff need not demonstrate actual customer deception in order to obtain relief under the Lanham Act."). Because this court finds that NetQuote has failed to demonstrate the literal falsity of MostChoice's statements, it is not entitled to injunctive relief. Further, even if NetQuote had proved literal falsity, it would not be entitled to an accounting or disgorgement without proof of actual injury. See id. ("[T]he 'literal falsity' rule has never permitted a plaintiff to recover marketplace damages without other proof that such damages occurred."). NetQuote has failed to prove any injury, so it is not entitled to any such relief.

**IV. Conclusion**

For the forgoing reasons, it is hereby **ORDERED** that NetQuote's claim for false advertising under the Lanham Act is **DENIED**.

DATED THIS  15th   day of December, 2008.

BY THE COURT:

*s/ David M. Ebel*

U. S. Circuit Court Judge